# Exhibit A

**WHOLESALE BROKER AGREEMENT**

THIS WHOLESALE BROKER AGREEMENT ("Agreement") is made and entered into as of 4/14/2020, between United Shore Financial Services, LLC, a Michigan limited liability company, d/b/a United Wholesale Mortgage ("UWM"), with its office located at 585 South Blvd E., Pontiac, MI 48341, and America's Moneyline, Inc. ("Broker") with its principal offices located at 42 Calle Mattis, , SAN CLEMENTE, CA, 92673.

RECITALS:

WHEREAS, UWM is engaged in the business of, among other activities, purchasing and/or funding mortgage loans on residential real estate and reselling such loans in the secondary mortgage market; and

WHEREAS, Broker is engaged in the business of taking applications for residential mortgage loans; assisting borrowers in pre-qualifying for mortgage loans; selecting a mortgage product and completing an application; and processing those applications on behalf of others in exchange for a fee or other consideration; and

WHEREAS, during the term of this Agreement, UWM will advise Broker of UWM's various FHA, VA, USDA, conventional, jumbo and/or non-agency mortgage loan products as well as select bond program mortgage loan products, and Broker intends, from time to time, to offer to UWM for potential purchase and/or funding certain FHA, VA, USDA, conventional, jumbo and/or non-agency mortgage loans as well as select bond program mortgage loans which fall within the parameters of UWM's mortgage loan products;

NOW, THEREFORE, in consideration of the mutual agreements and covenants hereinafter set forth, and other good and valuable consideration, the receipt and legal sufficiency of which is hereby severally acknowledged, UWM and Broker hereby agree as follows:

**ARTICLE I**
**DEFINITIONS**

All words and phrases defined in this Article I (except as herein otherwise expressly provided or unless the context otherwise requires) shall, for the purposes of this Agreement, have the following respective meanings:

**1.01. "Agreement"** means this Wholesale Broker Agreement and any written amendments or modifications hereto which are made in accordance with the terms of this Wholesale Broker Agreement.

**1.02. "Bond Authority"** means a federal, state or local authority established for the purpose of making residential Mortgage Loans to low and moderate income borrowers and issuing bonds or other obligations to fund such loans.

**1.03. "Bond Program"** means a qualified single family residential Mortgage Loan program of a local, state or federal housing authority under which residential Mortgage Loans are made available to low and moderate income borrowers at below market interest rates and/or upon other terms and conditions favorable to the borrowers.

**1.04. "Borrower"** means the person or persons who submit a Mortgage Loan Application to Broker, receive a Mortgage Loan, and are liable on a Mortgage Note to UWM.

**1.05. "Closing"** means the funding of a Mortgage Loan by UWM.

**1.06. "Complaint"** means a consumer communication of dissatisfaction regarding a product, service and/or participant in the loan process.

**1.07. "Defect"** means a breach in any respect of any representation or warranty herein contained with respect to a Mortgage Loan or any failure by Broker to comply with any covenant or condition herein contained with respect to a Mortgage Loan which could reasonably be expected to result in a loss or damage to UWM or a subsequent purchaser of such Mortgage Loan.

**1.08. "Defective Loan"** means any Mortgage Loan that has a Defect.

**1.09. "FHA"** means the Federal Housing Administration.

**1.10. "Freddie Mac"** means the Federal Home Loan Mortgage Corporation or any successor thereto.

**1.11. "FIRREA"** means the Financial Institutions Reform, Recovery and Enforcement Act of 1989.

**1.12. "Fannie Mae"** means the Federal National Mortgage Association or any successor thereto.

**1.13. "Formal Complaint"** means a Complaint received via: (i) any means from any state or regulatory agency, including but not limited to Attorney General offices, Congressman offices, and the Consumer Financial Protection Bureau; and (ii) electronic mail, fax, or letter that is addressed to the Chief Executive Officer, Branch Manager, President or other member of Broker's senior management.

**1.14. "Ginnie Mae"** means the Government National Mortgage Association or any successor thereto.

**1.15. "Mortgage"** means a valid and enforceable Mortgage, Deed of Trust, or other Security Instrument creating a first or second lien upon described real property improved by a one-to-four family residential dwelling, which secures a Mortgage Note.

**1.16. "Mortgage Documents"** means all documents and instruments required by UWM and applicable law pertaining to a particular Mortgage Loan.

**1.17. "Mortgage Loan"** means a loan to individuals which is secured by a Mortgage and is subject to this Agreement.

**1.18. "Mortgage Loans"** means each and every Mortgage Loan, which is subject to this Agreement.

**1.19. "Mortgage Loan Application"** or **"Mortgage Loan Applications"** means an application for a Mortgage Loan processed by Broker in accordance with the lending requirements of UWM, including but not limited to those contained in the UWM Guide, the terms of this Agreement, all applicable governmental regulations, and the generally accepted practices and procedures within the mortgage industry.

**1.20. "Mortgage Note"** means a written promise to pay a sum of money at a stated interest rate during a specified term that is secured by a Mortgage.

**1.21. "Mortgagor"** means the obligor on a Mortgage Note.

**1.22. "Repurchase"** means the obligation of the Broker to purchase a Mortgage Loan from UWM which was previously transferred and/or sold to UWM by the Broker.

**1.23. "RESPA"** means the Real Estate Settlement Procedures Act of 1974 (12 U.S.C. 2601, et seq.), as amended from time to time.

**1.24. "Servicing Rights"** or **"Servicing"** means the rights, title, and interest in and to the servicing of the Mortgage Loans and the maintenance and servicing of the escrow accounts, along with the right to receive the servicing fee income and any and all ancillary income arising from or connected with all such Mortgage Loans.

**1.25. "Training and Information Services"** means the training, marketing and/or information services provided to Broker in furtherance of Broker's business, including but not limited to licensing related training and/or discounts, sample communications and/or related templates.

**1.26. "Underwrite"** or **"Underwriting"** means the examination of a Borrower's application, credit history, income and financial resources for the purpose of determining whether to extend credit to such Borrower.

**1.27. "USDA"** means the United States Department of Agriculture or any successor thereto.

**1.28. "UWM Guide"** means all verbal procedures and requirements delivered by UWM or its representatives as well as those procedures and requirements contained on UWM's website and all links incorporated therein, including but not limited to EASE, as amended from time to time.

**1.29. "VA"** means the United States Department of Veterans Affairs.

## ARTICLE II
## PURCHASE & FUNDING OF LOANS

**2.01. Purchase and/or Funding of Loans by UWM.** UWM agrees to consider purchasing and/or funding certain Mortgage Loans from Broker, provided that all of the following requirements are met:

(a) Upon payment by UWM of the purchase price for each such Mortgage Loan so purchased and/or funded, all rights, title and interest in and to said Mortgage Loan shall be assigned and transferred by the Broker to UWM free and clear of all claims, liens and encumbrances whatsoever.

(b) Each Mortgage Loan shall be transferred and/or sold to UWM on a "servicing released" basis meaning that Broker shall release, transfer, convey and assign in a form and manner acceptable to UWM, all of Broker's rights, title and interest in and to the Mortgage Loan, including, without limitation, the right to provide mortgage servicing in connection therewith.

(c) All FHA, VA, conventional, USDA, jumbo, non-agency and select Bond Program Mortgage Loans shall be closed in the name of UWM, unless another name is specifically authorized by UWM in writing in advance of closing; and

(d) All such Mortgage Loans shall meet UWM's lending requirements, including but not limited to those contained in the UWM Guide, and any other terms and conditions required by UWM, in its sole and absolute discretion, which may be amended from time to time.

**2.02. UWM Loan Requirements.** UWM will advise Broker from time to time regarding the types of FHA, VA, USDA, conventional, jumbo and/or non-agency Mortgage Loan products it is interested in considering purchasing and/or funding (individually a **"Mortgage Loan Product"** and collectively the **"Mortgage Loan Products"**), including, without limitation, information concerning interest rates, loan limits, loan-to-value, ratios, points, fees and underwriting requirements. Any commitment from UWM to Broker to purchase and/or fund any Mortgage Loan or Mortgage Loans or Mortgage Loan Applications will be issued in accordance with UWM's current lending policies and shall be in UWM's sole and absolute discretion. Such commitment must be in writing and be signed by an authorized employee of UWM and the terms of such commitment will be applicable only to the Mortgage Loan or Mortgage Loans specified therein. UWM may, in its sole and absolute discretion, cancel or discontinue any of the Mortgage Loan Products, with or without notice to the Broker. UWM will attempt to give advance notice of such changes but shall have no obligation to do so. Broker agrees to follow all practices and procedures required by UWM, as modified from time to time, including but not limited to those contained in the UWM Guide, as well as those required under applicable law.

**2.03. Pricing of Loans; Lock-in Rates.**

(a) UWM will provide price protection for the Mortgage Loans which it agrees to purchase and/or fund hereunder in the form of a written lock-in confirmation pursuant to its lock-in policies and in accordance with UWM's lending requirements. The time at which the interest rate for a Mortgage Loan is locked in shall be at Broker's option, provided, however, a Mortgage Loan with a locked in interest rate must be presented to UWM for purchase and/or funding before the expiration of the lock-in period. For purposes of the Agreement, the "lock-in period" shall be determined in accordance with UWM's lending requirements. If a Mortgage Loan is not presented for funding by UWM within the lock-in period, such Loan may be re-priced at the sole option of UWM. The transfer or sale by Broker of a Mortgage Loan locked in by UWM during the lock-in period to another entity, shall constitute a violation of the Agreement, and the Broker shall be liable, and promptly indemnify UWM, for any loss sustained as a result thereof by UWM. In addition, Broker shall notify UWM immediately should any commitment by UWM for a locked-in Mortgage Loan be canceled, withdrawn, or otherwise determined not to be set for purchase and/or funding by UWM.

(b) Broker will deliver the underwriting package to UWM not later than ten (10) calendar days prior to the expiration of the lock-in period.

**2.04 Broker's Fees.** Subject to all other provisions of this Agreement, including Section 7.18, broker's fee shall be payable by UWM when a Mortgage Loan is closed and funded by UWM and Broker has: (a) obtained in writing from UWM a firm commitment for UWM's interest rate, discount rate and ancillary fees; (b) successfully negotiated with the borrower(s) any fees in excess of UWM's fees for the Mortgage Loan; and (c) negotiated a spread premium fee from UWM for the Mortgage Loan, if applicable. UWM's pricing is published on a daily basis and is often adjusted several times throughout the day and reflects market conditions, the efficiency of UWM's operations and the value of the services (including Training and Information Services) that UWM provides. All pricing is subject to change without notice and no Mortgage Loan is price protected until UWM has issued a written lock confirmation. Broker shall not be entitled to any fee if a Mortgage Loan does not fund, regardless of the reason. In the event that any fees negotiated by Broker exceed those payable under applicable law, UWM may reduce such fees to a level which is in compliance with applicable law, without notice to Broker. Broker's fees are payable only after UWM has first deducted all of its fees and charges from the loan proceeds. If the mortgagor(s) fails to make any one (1) or more of the first three (3) mortgage payments due on his/their Mortgage Loan by the last day of the month in which the payment is due, then Broker shall promptly reimburse UWM for all amounts paid by UWM to Broker in connection with said Mortgage Loan.

## ARTICLE III
## DUTIES, WARRANTIES & REPRESENTATIONS

**3.01. Duties of Broker.** The Broker shall exercise its best efforts in connection with the performance of the following duties:

(a) Broker shall take Mortgage Loan Applications in accordance with applicable law at its offices in its own name through its employees and agents;

(b) Broker shall comply with all procedures established by UWM from time to time for the submission of Mortgage Loan Applications under the Mortgage Loan programs made available to Broker, including but not limited to those contained in the UWM Guide;

(c) Broker shall confirm whether each Mortgage Loan Application meets the terms, conditions and requirements established by UWM with respect to the Mortgage Loan programs;

(d) After securing the requisite authority from the applicant(s), the Broker shall secure financial and credit information from the applicant(s) and analyze the income and indebtedness of the applicant(s) to determine the maximum reasonable Mortgage Loan obligations that the applicant(s) can bear;

(e) Broker shall: (i) educate the applicant(s) in regard to the home buying and financing process; (ii) advise the applicant(s) about the different Mortgage Loan programs made available by UWM; and (iii) explain to the applicant(s) how the closing costs and monthly payments would vary under the each of the Mortgage Loan programs for which the applicant(s) may be eligible;

(f) Broker shall also: (i) verify the employment of the applicant(s); (ii) verify the deposits required; (iii) initiate requests for mortgage loan verifications and payoffs; (iv) order an appraisal of the property through an approved appraisal management company, as required; (v) order the necessary title commitment; (vi) order a mortgage survey of the property, as required; (vii) provide the applicant(s) with all notices and disclosures required by law; and (viii) assist UWM in obtaining any additional information reasonably required by UWM in order to consider the Mortgage Loan Applications and/or facilitate the closing of all Mortgage Loans;

(g) Broker shall communicate with the applicant(s), real estate agent(s), and UWM in an effort to keep them informed as to the status of the application and/or the Mortgage Loan transaction and any changes in the terms of a Mortgage Loan within a reasonable time, and if UWM and other lenders represented by Broker deny credit to the applicant, Broker will prepare and deliver to the applicant a denial notice meeting all requirements of applicable law;

(h) Broker shall assist the applicant(s) in understanding and clearing credit problems;

(i) Broker shall notify UWM via electronic mail sent to theadvocate@unitedshore.com within five (5) business days of receipt of any Formal Complaint relating to a loan application submitted to, underwritten and/or closed by UWM and provide a copy of the Formal Complaint received;

(j) Broker shall perform such closing services as shall be reasonably required by UWM; and

(k) Broker shall further: (i) maintain, and will ensure that its employees and agents maintain, the confidentiality of all non-public personal information collected in connection with Mortgage Loan Applications; (ii) comply, and will ensure that its employees and agents comply, with all applicable privacy laws and other laws with respect to the completion and processing of Mortgage Loan Applications; (iii) maintain an information security program; and (iv) originate and process each Mortgage Loan in full compliance with applicable law, the requirements of investors, and other written communications of UWM, including but not limited to those contained in the UWM Guide.

(l) Broker agrees that it will not use for its own benefit or the benefit of any other person or entity, will hold in complete confidence in compliance with applicable law, and will not disclose to any person or entity (other than Broker's employees or agents who need access to the Confidential Information, as defined below, for the purpose of assisting Broker in fulfilling its obligations hereunder): (a) the confidential information relating to UWM which it has acquired or which it may acquire during the term of this Agreement; (b) any information that it has received or which it may receive during the term of this Agreement from UWM, its employees or agents of a confidential nature; (c) all notes, documents or materials prepared by Broker, its employees or agents which contain, reflect or are based upon, in whole or in part, the information described in subparagraphs (a) and (b) above (collectively the "Confidential Information"). UWM makes no representations or warranties of any kind, express, implied or statutory, with respect to the Confidential Information. Broker will return to UWM or destroy upon demand, all Confidential Information acquired by Broker, its employees or agents, including all copies thereof. Broker will ensure that its employees and agents comply with the terms of this paragraph.

**3.02. Duties of UWM.** UWM shall exercise commercially reasonable efforts in connection with the performance of the following duties:

(a) UWM shall Underwrite or cause to be Underwritten every Mortgage Loan submitted by Broker under this Agreement, provided, however, UWM shall have no obligation to issue a commitment for or close a Mortgage Loan which it determines, in its sole and absolute discretion, does not meet UWM's Underwriting requirements;

(b) UWM shall: (i) issue a loan approval if the Mortgage Loan Application complies with all UWM requirements, including but not limited to those contained in the UWM Guide, and UWM elects to accept a Mortgage Loan Application; or (ii) issue a notice of rejection in compliance with law if UWM determines that any Mortgage Loan Application submitted hereunder does not meet its Underwriting standards, in its sole and absolute discretion;

(c) UWM shall duly consider each and every Mortgage Loan Application submitted by Broker and may rely upon the materials and information supplied to it by the Broker as well as the authenticity and accuracy of all signatures appearing on documents and instruments delivered to UWM; and

(d) Upon the issuance of a commitment in UWM's name to the Borrower, UWM shall generally proceed with Closing of the Mortgage Loan in accordance with the terms and conditions set forth in the commitment to the Borrower but UWM reserves the right, in its sole and absolute discretion, to cancel the purchase and/or funding of any Mortgage Loan or Mortgage Loans for any reason which UWM determines to be material, in its sole and absolute discretion.

(e) UWM agrees to supply such Training and Information Services as it believes in its reasonable discretion will be productive and feasible to provide.

**3.03. Broker Warranties & Representations.** Broker hereby warrants, represents and covenants to UWM with regard to each Mortgage Loan submitted to UWM for underwriting, purchase and/or funding that the following are true, complete and correct in all material respects as of the date of such submission, as if such warranties, representations and covenants are again made by Broker on those dates and shall continue to be valid and accurate throughout the entire lending process:

(a) Broker is duly organized, validly existing and in good standing in each jurisdiction in which it originates Mortgage Loans delivered to UWM pursuant to this Agreement, and Broker has complied with all applicable statutes, laws, rules and regulations, orders and decrees of all federal, state, county and municipal authorities in connection with all such Mortgage Loans, including, but not limited to all applicable federal consumer financial laws. Broker further has qualified, registered, obtained and maintains all licenses and permits, and has taken all other requisite actions required in order to originate all Mortgage Loans delivered to UWM pursuant to this Agreement. The execution and delivery of this Agreement and the transactions contemplated hereby are duly authorized and binding on Broker. Broker shall provide UWM with documentation to substantiate such existence and/or compliance upon the request of UWM;

(b) All Mortgage Loans which Broker submits to UWM have met all material requirements of federal, state, or local laws, as amended from time to time, including, but not limited to those contained in the UWM Guide, and (i) usury; (ii) the Federal Truth-in-Lending Act of 1969 and Federal Regulation Z thereunder; (iii) RESPA and Regulation X thereunder; (iv) the Federal Equal Credit Opportunity Act and Regulation B thereunder; (v) the Federal Fair Credit Reporting Act; (vi) the Flood Disaster Protection Act of 1973; (vii) the Fair Housing Act; (viii) the Home Mortgage Disclosure Act; (ix) the FIRREA; (x) New York Executive Law Article 15, Section 296-a; (xi) the Secure and Fair Enforcement for Mortgage Licensing Act of 2008, (xii) the Gramm-Leach-Bliley Act (Pub. L. No. 106-102, 113 Stat. 1338), as amended from time to time; (xiii) the Fair and Accurate Credit Transactions Act; (xiv) the Home Ownership Equity Protection Act; (xv) all rules, regulations and guidelines promulgated by the Consumer Financial Protection Bureau; (xvi) The Dodd-Frank Wall Street Reform and Consumer Protection Act; (xvii) any and all licensing requirements relating to Broker's rights to originate and sell Mortgage Loans; (xviii) the requirements of all governmental authorities regulating Broker; and (xix) any and all laws, rules, ordinances, and regulations concerning adjustable rate mortgages, negative amortization, and graduated payment mortgages, and Broker shall maintain in its possession, and make available for UWM's inspection, and shall deliver to UWM upon demand, evidence of compliance with all such laws and requirements;

(c) Broker has no knowledge of any circumstances or conditions with respect to any Mortgage Loan submitted to UWM for underwriting, purchase and/or funding, that the mortgaged property, the Mortgagor or the Mortgagor's credit standing could cause an institutional investor to regard the Mortgage Loan as an unacceptable investment, or otherwise cause the Mortgage Loan to become delinquent or materially adversely affect the value or marketability of the Mortgage Loan;

(d) With regard to FHA, VA or USDA insured Mortgage Loans, the Federal Housing Commissioner, VA or USDA, as applicable, has or will issue the mortgage insurance certificate or loan guaranty certificate; and all payments due for mortgage insurance premiums have been paid to the insuring authority; nothing has been done or omitted, and no circumstances exist, the effect of which act, omission or circumstances would invalidate the contract of mortgage insurance with the FHA, VA or USDA as applicable; and the Mortgage Loan complies with the regulations of the FHA, VA or USDA as applicable;

(e) All of the appraisers who have performed appraisals in connection with the Mortgage Loans submitted to UWM for purchase and/or funding have been properly licensed and are currently approved in accordance with applicable law and any appraisal management company utilized has passed UWMs approval process;

(f) The appraisal submitted in connection with each Mortgage Loan meets the requirements of FIRREA, and the Underwriting for each Mortgage Loan, if performed by Broker, has been performed in accordance with all of the provisions of applicable law, UWM's lending requirements, including but not limited to those contained in the UWM Guide, and the terms of this Agreement;

(g) No legal actions are pending or threatened which might reasonably affect any Mortgage Loan or the Broker's ability to transfer any Mortgage Loan to UWM free and clear of all claims and liens, or otherwise perform its obligations hereunder, except as previously disclosed by Broker to UWM in writing;

(h) Broker is not in default with respect to any material agreement to which it is party or by which it is bound, and the execution and performance of this Agreement will not violate any law, or term of its organizational and governance documents, as amended, or any material agreement to which Broker is a party or by which it is bound, and will not violate or conflict with any other restriction of any kind or character to which Broker is subject;

(i) All information submitted by Broker to UWM with regard to the Mortgage Loan, including all written materials, is presented and warranted by Broker to be true, correct, currently valid, and genuine in all material respects, as to all information within Broker's knowledge and as reported by each applicant and do not omit to state any facts necessary to make the statements contained therein not misleading; Broker has no knowledge of any circumstances or conditions with respect to any Mortgage Loan submitted to UWM for underwriting, purchase and/or funding, that the mortgaged property, the mortgagor or the mortgagee's credit standing could cause an institutional investor to regard Mortgage Loan as an unacceptable investment, or otherwise cause the Mortgage Loan to become delinquent or materially adversely affect the value or marketability of the Mortgage Loan;

(j) The Mortgage Documents and all other materials submitted to UWM in connection with the Mortgage Loan do not contain any fraudulent information or misstatement or omission of fact, and the Mortgage Loan has been originated in a manner consistent with prudent mortgage banking practices and consistent with the guidelines and policies established by UWM, Ginnie Mae, Fannie Mae, Freddie Mac, a Bond Authority, the FHA, the USDA, the VA, or other investor, as applicable;

(k) There are no undisclosed agreements between the Mortgagor and Broker concerning any facts or conditions, whether past, present or future, which might in any material way affect the payment and performance obligations of the Mortgagor or otherwise make the Mortgage Loan non-salable in the secondary market. Broker did not unduly influence or otherwise steer the Borrower into selecting a higher cost Mortgage Loan program;

(l) Broker is solvent and has adequate capitalization and financial resources to properly engage in the business of originating and processing Mortgage Loans;

(m) Broker shall promptly advise UWM of any material change concerning the Broker, including, but not limited to, any change in ownership, financial condition or senior management, as well as the termination of any manager, mortgage loan officer or mortgage loan originator;

(n) Broker has no interest or direct or indirect ownership of all or any part of the property subject to a Mortgage Loan and Broker has no ownership interest in, or familial relationship with, the seller(s), Borrower(s), broker(s), Realtor(s), inspectors, appraisers or other persons performing any settlement services relating to any Mortgage Loan and shall not receive any fees or payments, either directly or indirectly, in violation of applicable law (unless such relationship has been disclosed to and approved by UWM in its sole discretion);

(o) All Mortgage Loan Applications and/or Mortgage Loans presented to UWM by Broker for underwriting, purchase and/or funding have been originated by Broker, and no such Mortgage Loan Applications and/or Mortgage Loans have been originated by a third party;

(p) Broker acknowledges that it does not and shall not discriminate against applicants on the basis of age, race, color, gender, ethnic background, national origin, religion, marital status, familial status, veteran status, handicap, sexual orientation, receipt of public assistance, because rights have been exercised by the applicant under any consumer protection law, or any other prohibited basis;

(q) With respect to subsections (a) through (p), inclusive, of this Section 3.03, Broker will promptly notify UWM if Broker becomes aware that any terms, conditions, warranties, representations or covenants hereunder become untrue or incomplete in any material respect in the future;

(r) The representations and warranties of Broker set forth in this Agreement are applicable whether or not non-employee contractors are used in lieu of employees of Broker in fulfilling any of Broker responsibilities and obligations set forth in this Agreement;

(s) Broker will immediately notify UWM if: (i) Broker fails to maintain any license or registration in violation of subsection (a) above, or if any such license or registration is cancelled or suspended; or (ii) Broker becomes subject to any enforcement and/or investigative proceeding by any licensing or regulatory authority or agency (subject to any confidentiality restrictions imposed by such licensing or regulatory authority or agency); or (iii) Broker is named as a party or becomes involved in any litigation; or (iv) Broker and/or any of its principal director(s) or owner(s) becomes the debtor in any voluntary or involuntary bankruptcy proceeding; or (v) Broker and/or any of its principal director(s) or owner(s) suffers the appointment of a receiver, custodian or trustee; or (vi) Broker and/or any of its principal director(s) or owner(s) has incurred or is likely to incur a material, adverse change in its/their financial condition; or (vii) Broker suffers a levy, execution or seizure upon material business assets;

(t) All representations, warranties and covenants contained in this Agreement shall inure for the benefit of UWM and its successors and assigns;

(u) Broker hereby appoints UWM and its directors, officers, employees, agents, successors and assigns, as its true and lawful attorney-in-fact, which appointment shall be deemed to be coupled with an interest, without right of revocation and with full power of substitution for and in its place and stead to: (i) demand and control all sums due on Mortgage Loans closed and funded pursuant to this Agreement and to enforce all rights with respect thereto, (ii) endorse, mark, place or otherwise evidence Broker's name as payee on all checks, drafts, acceptances or other form of partial or full payment delivered or tendered to UWM with respect to a Mortgage Loan, (iii) endorse, mark, place or otherwise evidence Broker's name on all notes, Mortgages, deeds of trust, and other forms of security instruments or collateral and all assignments, full or partial releases or satisfactions of said Mortgages, deeds of trust, and other forms of security instruments or collateral for all Mortgage Loans closed and funded pursuant to this Agreement. Broker agrees to execute such other documents as UWM may reasonably request to evidence the appointment of UWM, as Broker's attorney-in- fact.

(v) Broker has in full force and effect and will continue to maintain an errors and omissions policy or policies or mortgage bankers blanket bond covering all of its activities under this agreement, as required by and with terms acceptable to Fannie Mae and Freddie Mac and shall provide to UWM, on an annual basis or as required by UWM satisfactory evidence thereof, and Broker also has and will continue to comply with any and all fidelity bond and surety bond requirements of Fannie Mae, Freddie Mac, and/or any state agency having or claiming to have jurisdiction over Broker.

(w) No employee, contractor, agent or other representative of Broker, or acting on behalf of Broker is: (a) subject to the provisions of such Executive Order 13224 or the Office of Foreign Assets Control of the United States Department of the Treasury (the "OFAC Regulations"); (b) listed as a "blocked person" for purposes of the OFAC Regulations; or (c) listed on Freddie Mac's Exclusionary List, the U.S. General Services Administration (GSA) Excluded Parties List (EPL), the HUD Limited Denial of Participation List (LDP List), and/or the Federal Housing Finance Agency's (FHFA) Suspended Counterparty Program (SCP) list.

**3.04. UWM's Warranties & Representations.** UWM represents and warrants that UWM possesses all necessary licenses from all regulatory authorities having jurisdiction over the Mortgage Loans to engage in the activities contemplated by this Agreement.

**3.05 Survival.** All representations, warranties and covenants of Broker contained in this Agreement shall survive the expiration and termination of this Agreement and shall continue in effect as to each Mortgage Loan for so long as any amount due from the Borrower remains outstanding and unpaid.

## ARTICLE IV
## POST-CLOSING DOCUMENTATION

**4.01. Broker's Obligation Regarding Post-Closing Documents.** Broker agrees that it is responsible for assisting in obtaining and delivering post-closing documents required to complete closed Mortgage Loan packages within the time frames established by UWM in its lending requirements or otherwise. UWM, in its sole and absolute discretion, may exercise its option to NOT fund a Mortgage Loan if all underwriting and/or closing conditions are not satisfied prior to funding. Broker understands that it is not authorized or empowered to accept or clear any lending conditions of UWM. Broker further understands and agrees that if Broker fails, neglects or refuses to obtain and deliver any post-closing documents reasonably required by UWM, UWM shall have the unilateral right to offset the reasonable costs associated with securing such post-closing documents against any amounts due Broker by UWM. Broker shall upon request from UWM, exercise its best efforts to take all actions necessary, in a timely and accurate manner, to obtain corrections to any and all loan documents deemed appropriate or desirable in UWM's sole and absolute discretion and to otherwise assist UWM in remedying any matter not in compliance with applicable law, regulations, or the requirements of UWM, including assisting UWM in obtaining recorded documentation related to a Mortgage Loan and title policies from closing agents, or to enable UWM to sell, convey, obtain guaranty for, or market loans. The failure, refusal and/or neglect of Broker to secure post-closing documentation in a timely manner shall entitle UWM to exercise a right of set off with respect to any amounts due Broker, and/or the right to require the repurchase of the Mortgage Loan in question by the Broker, in the sole and absolute discretion of UWM.

## ARTICLE V
## INDEMNIFICATION & REPURCHASE BY BROKER

**5.01. Indemnification by Broker.** Broker agrees to indemnify, defend (by counsel acceptable to UWM), and hold UWM harmless from and against any and all liabilities, claims, losses, damages and out of pocket costs ("individually a "Claim" and collectively the "Claims"): (a) resulting from any breach of this Agreement; (b) resulting from any act or omission by Broker in connection with any Mortgage Loan subject to this Agreement; (c) arising from or in connection with Broker's use of any non-industry standard form not provided or approved by UWM in connection with any Mortgage Loan; (d) concerning miscalculations and other errors which result from Broker's independent application and processing procedures as well as for its misuse of forms required by UWM; (e) asserted against UWM under provisions of RESPA, including without limitation, claims based upon, or arising as a result of, any payments received by Broker in the nature of rate spread premium, service release premium, back points, discount points, broker rebates, and the like; (f) incurred or

paid by UWM as a result of the exercise of a right of cancellation or right of recession by any Borrower in connection with a Mortgage Loan; and (g) extraordinary servicing costs or carrying costs related to any Mortgage Loan as a result of any of the following circumstances: (i) any breach of any representation, warranty or covenant contained herein, or any material breach of this Agreement; or (ii) if UWM is required to repurchase any Mortgage Loan which it has sold to an investor, or which it has placed or pledged to a mortgage pool, which repurchase requirement is a result of the Mortgage Loan being classified as a Defective Loan as the result of any act or omission of Broker;(each a "**Repurchase Event**"), the Broker shall be obligated to promptly repurchase such Mortgage Loan. If any Claim shall be asserted or brought against UWM by reason of any such act or omission of Broker, Broker shall upon demand, obtain representation by legal counsel acceptable to UWM to defend UWM against any such Claim and Broker shall pay all costs and attorney's fees incurred in such defense. All of the provisions of this Article V shall survive the closing of each Mortgage Loan transaction and shall inure to the benefit of UWM and future assignees of UWM.

**5.02. Terms of Indemnification.**

(a) Broker may be required (at UWM's option) to remit to UWM immediately upon demand a good faith advance to be applied by UWM to cover any such Claim arising from such Repurchase Event, and

(b) Broker may be required (at UWM's option) to remit to UWM immediately upon demand a non-refundable loan administration fee, and

(c) Broker shall immediately upon receipt of notice from UWM confirming the occurrence of a Repurchase Event, fully reimburse UWM for the rate premium and/or service release premium originally paid to Broker at the time the Mortgage Loan was purchased by UWM, whether such premium was included in the gross price paid or referenced separately, and

(d) Broker may additionally be required to remit to UWM immediately upon demand following a Repurchase Event, any additional amount to cover actual loss to UWM not otherwise reimbursed by the good faith advance or loan administration fee, as outlined above. Any good faith advance and additional amounts required under Section 5.02(a) and/or 5.02(b) herein in excess of actual losses will be returned to the Broker upon final loss reconciliation by UWM. Broker agrees that its failure to comply with the terms of the indemnification sections within this Agreement shall give UWM the right to demand full repurchase of said Mortgage Loan, and upon any such demand, Broker shall promptly repurchase such Mortgage Loan and reimburse UWM for all costs and expenses associated therewith.

**5.03. Right of Set-off.** Broker grants UWM the right of set-off and UWM may deduct any fees, penalties, damages, or other sums owed by Broker to UWM hereunder from the purchase price or loan funding of any Mortgage Loans purchased from Broker and/or funded by UWM. Broker shall be responsible for compensating UWM for any tolerance cure(s) the UWM is required to make to the Borrower because of Broker's acts or omissions in connection with the Mortgage Loan as determined by UWM in its sole and absolute discretion. UWM may also withhold, set-off and apply any fees, expenses, tolerance cures or other matters otherwise due and payable to Broker to any obligations of the Broker to UWM. UWM shall have the right to withhold any fees or payments until the Loan file is complete and the Broker has performed all of its obligations under this agreement.

## ARTICLE VI
## BROKER USE OF DESKTOP UNDERWRITER

**6.01. ARTICLE VI Definitions.** Any capitalized terms used in ARTICLE VI and not otherwise defined in ARTICLE VI or this Agreement have the meanings given to them in the License Agreement (as hereinafter defined). UWM has entered into the Fannie Mae Licensed Application Master Terms and Conditions ("**Master Terms**") and its Desktop Underwriter® Schedule and associated Redistribution Addendum thereto ("**DU Schedule**" and "**Addendum**", respectively, and together with the Master Terms, the "**License Agreement**") with Fannie Mae governing the rights and obligations of UWM and Fannie Mae with respect to UWM's use of Desktop Underwriter (the "**Licensed Application**"). Broker is an Affiliate or Subsidiary of UWM and desires to use the Licensed Application in connection with Prequalification Analysis, mortgage loan origination and/or underwriting activities.

All words and phrases defined in this ARTICLE VI shall, for the purposes of this ARTICLE VI **only**, have the following respective meanings:

(a) **"Affiliate"** shall mean a mortgage lending entity or Third Party Originator that performs Prequalification Analyses, origination or underwriting in relation to mortgage loans intended to be closed by UWM or assigned or sold to UWM.

(b) **"Consumer Credit Data"** shall mean any information obtained by Broker, either directly or indirectly, which bears on a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living (the "Seven Factors") and which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in underwriting a Mortgage Loan Application or performing a Prequalification Analysis. Such data may include, but are not limited to, data contained in: (i) residential mortgage credit reports, "in-file" credit reports, or "consumer reports," as defined in the FCRA; (ii) the Uniform Residential Loan Application, including any attachments and/or supplements thereto; and (iii) any correspondence or communication from the consumer or any third party which includes information relating to one of the Seven Factors.

(c) **"Mortgage Loan Application"** shall mean the submission by a mortgage loan applicant of financial information and identification of the specific property to secure the mortgage loan for the purpose of obtaining an underwriting decision.

(d) **"Prequalification Analysis"** shall mean the evaluation of Consumer Credit Data with respect to a prospective mortgage loan applicant for the purpose of evaluating such prospective applicant's qualification for mortgage financing, other than in connection with a Mortgage Loan Application.

(e) **"Subsidiary"** shall mean a mortgage lending entity more than fifty percent (50%) of whose controlling interest or outstanding voting shares or securities are owned or controlled, directly or indirectly, by UWM.

**6.02. License Agreement.** Broker represents that it is an Affiliate or Subsidiary of UWM and that it has received and read the License Agreement and understands and agrees that it shall be fully obligated to comply with each and every provision of such License Agreement in connection with its use of the Licensed Application.

**6.03. Licensing Rights.** UWM agrees that, as and to the extent set forth in this ARTICLE VI, its license rights under the License Agreement shall extend to Broker in connection with the Licensed Application. Broker agrees that the rights granted to it shall not extend to any third party, including, but not limited to, Broker's customers, subsidiaries and/or affiliates.

**6.04. UWM Agent.** Broker expressly appoints UWM as its agent, as that term is defined in the FCRA, in connection with any use of the Licensed Application by Broker with respect to Mortgage Loan Applications or Prequalification Analyses. Broker also expressly acknowledges, understands and agrees that UWM's role as Broker's agent shall not extend beyond the limited purposes set forth in this Section 6.04, and for all other purposes, there shall be no such principal and agent relationship. Moreover, Broker shall in no way misrepresent to third parties the limited extent of this principal/agent relationship. Broker further acknowledges, understands and agrees that any recommendation rendered by the Licensed Application in the evaluation of Consumer Credit Data will not constitute an approval or denial of the Mortgage Loan Application by UWM or a commitment to lend by UWM.

**6.05. Fannie Mae Agent.** In connection with the processing and evaluation of Consumer Credit Data by the Licensed Application for purposes of making an underwriting recommendation or performing a Prequalification Analysis (if applicable), Broker expressly appoints Fannie Mae, as owner of the Licensed Application, as its agent, as that term is defined in the FCRA. As Broker's agent, Fannie Mae shall, and is hereby expressly authorized by Broker to, obtain Consumer Credit Data for the sole purpose of performing a Prequalification Analysis and/or making an underwriting recommendation. Broker also expressly acknowledges, understands and agrees that Fannie Mae's role as Broker's agent shall not extend beyond the limited purposes set forth in this Section 6.05, and for all other purposes, there shall be no such principal and agent relationship. Moreover, Broker shall in no way misrepresent to third parties the limited extent of this principal/agent relationship. Broker further acknowledges, understands and agrees that any recommendation rendered by the Licensed Application in the evaluation of Consumer Credit Data will not constitute an approval or denial of the Mortgage Loan Application by Fannie Mae or a commitment to purchase the loan by Fannie Mae. Broker shall disclose any secondary use of Consumer Credit Data that is facilitated by use of the Licensed Application to the issuing consumer reporting agency.

**6.06. Affiliate Relationship.** If Broker is an Affiliate, Broker shall use the Licensed Application for the primary purpose of (i) originating or underwriting mortgage loans intended to be closed by UWM, or assigned or sold to UWM, and/or (ii) performing Prequalification Analyses for UWM (to the extent that the performance of Prequalification Analyses utilizing the Licensed Application is permitted under the License Agreement). If Broker is an Affiliate, Broker shall not be permitted to use the Licensed Application's wholesale lending ("DU® wholesale") functionality pursuant to this ARTICLE VI. If Broker is a Subsidiary, Broker shall use the Licensed Application only in connection with its own Mortgage Loan Applications and/or Prequalification Analyses and/or those of UWM (to the extent that the performance of Prequalification Analyses utilizing the Licensed Application is permitted under the License Agreement).

**6.07. Requesting Additional Consumer Reports.** Notwithstanding anything to the contrary in that Section of the DU Schedule captioned "Use of Licensed Application," Broker must first obtain written permission from the mortgage loan applicant to request additional consumer reports before using the Licensed Application as described below:

(a) With respect to Mortgage Loan Applications previously approved but not yet closed:

(i) to request and receive additional Consumer Reports through the Credit Retrieval Module, when Broker is requesting such reports in connection with its own Mortgage Loan Applications and/or Prequalification Analyses, or because other circumstances exist which Broker believes justify the request for such additional consumer reports under the FCRA;

(ii) to analyze or evaluate Consumer Credit Data, including Consumer Reports, when Broker determines that data obtained subsequent to its initial approval may affect its prior underwriting approval decision;

(iii) to request and receive Consumer Reports and/or analyze or evaluate Consumer Credit Data when the loan applicant(s) request different loan terms or a different loan product than that originally requested by the loan applicant(s); and

(b) With respect to Mortgage Loan Applications previously denied by Broker, which denial decision has been communicated to the applicant(s):

(i) to request and receive Consumer Reports through the Credit Retrieval Module, when Broker is requesting such reports in connection with its own Mortgage Loan Applications and/or Prequalification Analyses;

(ii) to analyze or evaluate Consumer Credit Data, including Consumer Reports, when (A) Broker determines that data obtained subsequent to its initial denial decision may affect its prior underwriting decision, and (B) Broker intends to make and communicate an offer of credit to the applicant(s) if an approval recommendation decision is rendered by the Licensed Application as a result of consideration of the additional data obtained.

**6.08. Intended Beneficiary.** Broker and UWM acknowledge and agree that Fannie Mae is an intended beneficiary of ARTICLE VI.

**6.09. Termination of ARTICLE VI.** ARTICLE VI shall remain in full force and effect unless terminated pursuant to the provisions of this Section or terminated pursuant to Section 7.06 of this Agreement. The parties acknowledge and agree that ARTICLE VI is subject to the License Agreement and that ARTICLE VI shall automatically terminate upon termination of the Desktop Underwriter Schedule and/or the Redistribution Addendum by Fannie Mae and/or UWM. The parties acknowledge that, pursuant to the terms of that Section of the Redistribution Addendum captioned "Termination of Affiliates and Subsidiaries", Fannie Mae may, in its absolute discretion, immediately terminate access by Broker to the Licensed Application for any breach of (a) the License Agreement, (b) ARTICLE VI of the Agreement, or (c) any other agreement between Broker and any lender (including UWM) that has access to the Licensed Application. Upon termination of ARTICLE VI, the other terms and conditions of this Agreement shall continue in full force and effect unless otherwise terminated or amended pursuant to the terms hereof.

**6.10. Licensed Materials.** Immediately upon termination of either ARTICLE VI or this Agreement, Broker shall cease using the Licensed Materials, and destroy or return all copies of the Licensed Materials in its possession to UWM. Promptly upon request from UWM or Fannie Mae, Broker shall provide UWM or Fannie Mae with written certification of its compliance with the foregoing, executed by a duly authorized officer of Broker.

**6.11. DU Support.** UWM, and not Fannie Mae, shall be responsible for providing Broker with (i) first line support with respect to Broker questions and comments concerning Fannie Mae's automated underwriting guidelines and policies, including, but not limited to, questions concerning the interpretation and applicability of the Licensed Application's findings reports and questions relating to Fannie Mae's Selling Guide and (ii) appropriate training relating to the use of the Licensed Application and such guidelines and policies.

**6.12. ARTICLE VI Conflict with License Agreement.** In the event of a conflict between the terms of ARTICLE VI and the terms of the License Agreement, the terms of the License Agreement shall govern.

**6.13. Assignment of ARTICLE VI Rights.** Rights under ARTICLE VI may not be assigned by Broker to any other person(s), firm(s), corporation(s) or other entities without the prior express written consent of Fannie Mae and UWM.

**6.14. Notification.** This Section 6.14 applies only to notices required by ARTICLE VI. All other notices required pursuant to this Agreement shall be provided according to Section 7.21 of this Agreement. All notices, requests, demands, and other communications with required pursuant to ARTICLE VI (other than routine operational communications) shall be in writing and shall be deemed to have been received by a party (i) when actually received in the case of hand delivery, (ii) one (1) business day after being given to a reputable overnight courier with a reliable system for tracking delivery, (iii) when sent by confirmed facsimile with a copy sent by another means specified in this paragraph, or (iv) seven (7) days after the date of mailing, when mailed by United States mail, registered or certified mail, return receipt requested, postage prepaid, and addressed to the recipient's contact person/address set forth below:

UWM: United Shore Financial Services, LLC,
d/b/a United Wholesale Mortgage
585 South Blvd E.
Pontiac, MI 48341
Attention: CLIENT APPROVAL TEAM

Broker: America's Moneyline, Inc.
42 Calle Mattis

SAN CLEMENTE, CA 92673

In the event that the recipient does not so specify a contact person/address, notices shall be addressed to the general counsel at the recipient's corporate headquarters. A party may from time to time change its address or designee for notification purposes by giving the other party prior written notice of the new address or contact person.

**6.15. Conflict.** In the event that any provision of ARTICLE VI conflicts with the law under which ARTICLE VI is to be construed, or if any such provision is held invalid, void or unenforceable by a court with jurisdiction over the parties to ARTICLE VI, such provision shall be deemed to be restated to reflect as nearly as possible the original intention of the parties in accordance with applicable law, and the remainder of ARTICLE VI and the Agreement shall remain in full force and effect.

**ARTICLE VII**
**MISCELLANEOUS PROVISIONS**

**7.01. Amendment of Agreement.** Except as set forth on Section 7.08, this Agreement may not be amended except in writing executed by authorized representatives of both Broker and UWM.

**7.02. Waiver Nonbinding.** The failure of UWM to insist in any one or more instances upon strict performance of any of the covenants, agreements, or conditions of this Agreement, or to the exercise of any rights hereunder, shall not be construed as a waiver or a relinquishment for the future of such covenants, agreements, conditions or rights, and any and all waivers must be in writing and be signed by the party waiving its rights.

**7.03. No Obligations To Make Loans.** Nothing contained in this Agreement shall be construed to require UWM to approve, purchase and/or fund any Mortgage Loan or Mortgage Loans submitted by Broker pursuant to the terms hereof. Approval and funding of any such Mortgage Loan or Mortgage Loans shall be in the sole and absolute discretion of UWM, and said decision will be made on a loan by loan basis. Broker shall not be obligated to submit any particular mortgage loan applications or any minimum number of loan applications to UWM.

**7.04. No Agency or Employment Relationship.** With the limited exception in Section 6.04 of this Agreement, both parties understand and agree that it is not intended that this Agreement create or establish a relationship of employer and employee between UWM and Broker, nor is it intended that Broker will be UWM's partner, joint venturer or agent. Broker is an independent contractor, and is hereby expressly prohibited from holding itself out as an agent, representative or employee of UWM or of having any endorsement from or affiliation with UWM.

**7.05. Term.** This Agreement is for an initial term of one (1) year and shall automatically renew for successive terms of one (1) year each, unless terminated pursuant to Section 7.06 below.

**7.06. Termination.** This Agreement may be terminated by either party for any reason, with or without cause, breach or other justification, upon seven (7) days prior written notice, and may be terminated immediately: (a) for breach of any covenant, obligation, or duty herein contained; or (b) for violation of any law, ordinance, statute rule or regulation governing the conduct of either party hereto; or (c) upon the suspension, cancellation, or termination of any license or permit required by a party to conduct business and/or perform its obligations hereunder; or (d) if any warranty, representation or statement made by a party to this Agreement was false in any material respect when made or furnished; or (e) in the event a party becomes a debtor in any voluntary or involuntary bankruptcy proceeding; or (f) in the event that a party shall become insolvent, fails to pay its debts as they become due, or makes an assignment for the benefit of its creditors; or (g) in the event of a seizure, execution or levy upon material assets of a party; or (h) in the event of a dissolution of a party; or (i) upon the sale or disposition of a significant portion of the assets or equity interests of a party; or (j) in the event that a trustee, custodian or receiver shall be appointed in connection with material assets of a party. Termination shall not affect the obligations with respect to any Mortgage Loans submitted prior to such termination, except that UWM shall not be obligated to purchase and/or fund any such Mortgage Loans approved prior to termination if UWM terminates this Agreement for breach by Broker on the basis of fraud, dishonesty, misrepresentation, negligence or other breach of this Agreement. In addition, termination shall not affect either party's obligations with respect to amounts previously owed to the other party pursuant to this Agreement, or Broker's indemnification and confidentiality obligations to UWM.

**7.07. Current Financials & Document Retention.** . At UWM's request, Broker shall provide to UWM its year-end financial statements, including a balance sheet and income statement. If UWM acts as FHA or VA sponsor for Broker, copies of all closing documents for Mortgage Loans funded by UWM shall be retained by Broker for the time period required by FHA or VA. Broker is responsible for maintaining a complete origination file containing all documents that were used in processing and underwriting a Mortgage Loan.

**7.08. UWM Amendments & Website.** This Agreement, and UWM's policies, procedures, requirements and instructions concerning Mortgage Loan Applications and Mortgage Loans, including but not limited to those contained in the UWM Guide, may be amended by UWM from time to time, and UWM will endeavor to provide broker with prompt notice thereof, which may occur by posting any such amendments on UWM's website, which Broker is required to regularly check and monitor as a condition of this Agreement. Broker agrees that the submission of any Mortgage Loan Applications or Mortgage Loans to UWM after such amendment shall be Broker's agreement to the amendment without further signature or consent of any kind. Any such amendment shall apply to pending, and/or future Mortgage Loan Applications submitted by Broker.

**7.09. Quality Control.** Broker agrees to provide UWM upon its request copies of Broker's policies and procedures, training materials and other applicable documentation related to Broker's business practices for review by UWM. Broker shall also permit any officer, employee or designated representative of UWM, at any reasonable time during regular business hours, to examine, reproduce and make audits of any of the processes implemented and documents in the possession or control of Broker regarding any Mortgage Loan or Mortgage Loan Application submitted to UWM pursuant to this Agreement. If upon the request of UWM, Broker fails to timely deliver all documents and records associated with or related to any Mortgage Loan or Mortgage Loan Application submitted to UWM pursuant to this Agreement, Broker shall give UWM and its officers, employees, or designated representatives reasonable access to Broker's premises in order to allow UWM to retrieve, prepare, reproduce and otherwise obtain all such documents and records. Broker shall also make its officers, employees, and/or designated representatives available to UWM and shall cooperate with UWM in connection with all such examinations, audits and document and record collection activities. Further, Broker hereby consents and gives UWM permission to record telephone calls between employees and independent contractors of UWM and Broker for quality control purposes and further, Broker represents and warrants that it has obtained or will obtain all required consents and approvals of Broker's current and future employees and independent contractors authorizing UWM to record such phone calls.

**7.10. Unacceptable Applications & Submissions.** Under no circumstances shall Broker submit any Mortgage Loan Applications for Mortgage Loans that could be considered to constitute a "high cost loan" or "predatory loan" as defined in: (a) the Home Ownership and Equity Protection Act, as amended; or (b) any other federal, state or local law or regulations.

**7.11. Broker Advertising & Customer Privacy.** Broker may advertise to the public the availability of various loan programs and Broker's services, but Broker may not, in any way, directly or indirectly identify UWM or related parties in any such advertising unless: (i) required by applicable laws or regulations; or (ii) UWM has, in advance, approved use of UWM's name by the Broker in writing. Broker agrees to provide UWM upon its request with model advertising samples in use at the time of application to do business with UWM, as well as to notify UWM with questions on any substantive changes to those advertisements, or of any new advertisements Broker uses. Without the prior consent of UWM, Broker shall not sell or distribute any customer or contact list incorporating the names, addresses or any non- public personal information of such Borrower(s) or Mortgagors.

**7.12. Entire Agreement.** The arrangements and relationships contemplated in this Agreement and/or any document referred to herein constitute the sole understanding and agreement of the parties. This Agreement supersedes all other agreements, covenants, representations, warranties, understandings and communications between the parties, whether written or oral, with respect to the transactions contemplated by this Agreement.

**7.13. Invalidity & Severability.** The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions of this Agreement, and any provision determined to be invalid and/or unenforceable by a court or tribunal of competent jurisdiction shall be revised and reformed to make such provision valid and/or enforceable, if possible, to the fullest extent permitted by law, otherwise this Agreement shall be construed as if such invalid or unenforceable provision was omitted.

**7.14. Benefit & Assignment.** Broker may not assign its rights and/or delegate its duties and obligations under this Agreement without the written consent of UWM. UWM may assign its rights and/or delegate its duties and obligations under this Agreement to any subsidiary, affiliate or successor in interest without the consent of Broker. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, legal representatives, successors and assigns.

**7.15. Governing Law.** This Agreement shall be governed by, and construed and enforced in accordance with, applicable federal laws and the laws of the State of Michigan, without reference to conflict of laws principles. The parties to this Agreement hereby unconditionally and irrevocably: (a) submit to the exclusive jurisdiction of the Oakland County (Michigan) Circuit Court, or in the event that original jurisdiction may be established, the United States District Court for the Eastern District of Michigan, Southern Division, sitting in Detroit, Michigan (hereinafter the "Courts"), in any action arising out of this Agreement; (b) agree that all Claims in any action must be decided in one of said Courts; and (c) waive, to the fullest extent that they may effectively do so, the defenses of: (i) lack of subject matter jurisdiction of such Courts; (ii) the absence of personal jurisdiction by such Courts over the parties to this Agreement; and (iii) forum non-conveniens.

**7.16. Attorney's Fees.** In the event a dispute arises under this Agreement between Broker and UWM, which dispute results in legal action being taken by one or both of the parties, the prevailing party shall be entitled to recover its reasonable attorney fees, costs and other expenses associated with the enforcement of its rights under this Agreement, and the non-prevailing party hereby agrees to promptly pay same.

**7.17. Early Payoffs.** UWM is committed to the long term performance of its loans. As such, should any Mortgage Loan delivered hereunder be paid off within one hundred eighty (180) days of the funding of such Mortgage Loan for any reason, Broker shall promptly deliver to UWM the greater of: (a) any credit for the rate paid by UWM to the borrower or Broker, in the aggregate; or (b) one (1%) percent of the amount of the Mortgage Loan.

**7.18. Enforceability & Construction.** Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction, and to this end, the provisions hereof are severable. In the event any of the terms or provisions contained in this Agreement conflict with those contained in other documents executed in connection with this Agreement, the terms and provisions of this Agreement shall govern and control. In the event of any conflict, inconsistency or ambiguity between the terms of this Agreement and those contained in any Addendum hereto or Amendment hereof, the terms and conditions of such Addendum or Amendment shall be deemed to govern and control. Notwithstanding the foregoing, in the event of any conflict, ambiguity or inconsistency between the terms and conditions contained in this Agreement and those set forth in the UWM Guide, the terms and conditions of the UWM Guide shall be deemed to supersede and control.

**7.19. Counterparts & Electronic Signatures.** This Agreement may be executed in one or more counterparts, each of which shall constitute an original and all of which shall constitute the same Agreement. The parties to this Agreement hereby further agree that due to their distant locations and/or differing schedules, this Agreement may be executed via facsimile, electronic mail or electronic signature and that a facsimile or electronic signature of this Agreement containing counterpart facsimile or electronic or other signature shall be valid and binding for all purposes.

**7.20. Notices.** Any notices necessary to be given under the provisions of the Agreement will be sufficient if in writing and delivered personally, by U.S. certified mail, return receipt requested or by any nationally recognized express courier service to the addresses set forth below, or to such other address as may hereafter be furnished by either party to the other party by like notice, or via electronic mail if consented to by the parties;

    UWM: United Shore Financial Services LLC,
    d/b/a United Wholesale Mortgage
    585 South Blvd E.
    Pontiac, MI 48341
        Attention: CLIENT APPROVAL AND TEAM

Broker: America's Moneyline, Inc.
42 Calle Mattis

SAN CLEMENTE, CA 92673

**7.21. No Third Party Beneficiaries.** Except for Section 6.08 and Section 7.27 of this Agreement the parties to the Agreement do not intend to confer benefits upon any person or entity who or which is not a signatory to this Agreement.

**7.22. Time Is Of The Essence.** Time shall be of the essence for purposes of this Agreement as well as with respect to all of the documents and instruments executed in connection herewith.

**7.23. Interpretation.** This Agreement (and all agreements, documents, instruments and/or exhibits referred to or incorporated into this Agreement) is being entered into among competent persons, who are experienced in business and represented by counsel, and has been reviewed by the parties and their counsel. Therefore, any conflicting or ambiguous language contained in this Agreement (and all agreements, documents, instruments and/or exhibits referred to or incorporated herein) shall not necessarily be construed against any particular party as the drafter of such language.

**7.24. WAIVER OF JURY TRIAL.** BROKER AND UWM ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED. UWM AND BROKER, AFTER CONSULTING COUNSEL OF THEIR CHOICE, EACH HEREBY KNOWINGLY AND VOLUNTARILY, WITHOUT COERCION, WAIVE ALL RIGHTS TO A TRIAL BY JURY OF ALL DISPUTES BETWEEN THEM.

**7.25. Authorization.** Broker hereby consents and gives UWM permission to obtain information about the Broker. Broker agrees to provide written confirmation to UWM that is has conducted background checks on any and all employees and independent contractors of the Broker that include, without limitation, professional history information, criminal record information, credit information and other public information. Further, at UWM's request, Broker agrees to provide UWM with the adjudication criteria associated with such background checks as well as the results indicating conformance to such criteria. At UWM's request, Broker also agrees to confirm in writing that the background checks of its employees and independent contractors produced no violation(s) of applicable agency guidelines as well as all federal, state and/or local laws by said employees and independent contractors. Broker consents to the release of information to regulators and law enforcement agencies about any Mortgage Loan or loan application that may be suspected to contain misrepresentations and/or irregularities. It is understood and agreed that Broker and its employees may be named as the originator or loan officers on such Mortgage Loans, whether or not Broker or its employees are implicated in any allegations of wrongdoing. Broker hereby releases and agrees to indemnify, defend and hold harmless UWM from and against any and all liability for damages, losses, costs and expenses that may arise from the reporting or use of any information submitted by UWM or used in any way by UWM.

**7.26. Authorization Release.** Broker hereby consents to a review and confirmation of any and all documents, records and other information related to its officers, directors, principals, and similarly situated persons with strategic decision making authority in Broker and Broker as to their and its business professional and financial reputation and standing, personal financial standing, fitness as a mortgage broker, a concurrent funding broker and/or wholesale correspondent, and such other information as may be received during the review and confirmation to be provided to UWM. Every firm, company, governmental agency, court, association or institution having control of any documents, records and other information pertaining to Broker or any of its officers, directors, principals, and similarly situated persons with strategic decision making authority in Broker is hereby authorized and requested to furnish, allow to be copied or otherwise provide, information of the kind described above to UWM or its representatives, conducting the review and confirmation. This authorization and request includes, but is not limited to, documents, records or files regarding any charges or complaints filed against any of the aforementioned individuals, including any complaints erased by law, whether formal or informal, pending or closed, and information from Interthinx, Inc. database. Broker specifically authorizes and requests consumer credit reporting agencies to provide personal credit history on any owner of Broker, executive officer of Broker, or similarly situated person with strategic decision making authority in Broker to UWM. In consideration of the time and expense incurred in reviewing and evaluating the application and qualifications of Broker and its officers, directors, principals and similarly situated persons with strategic decision making authority in Broker as to its and their fitness as a broker for UWM, and to facilitate the providing of information for the review and confirmation by UWM, on behalf of the aforementioned persons and Broker, on behalf of itself and its officers, directors, principals, and similarly situated persons with strategic decision making authority in Broker, hereby releases, discharges, exonerates and covenants not to sue any person, company or governmental organization providing information in the review and confirmation, any recipient of information, including UWM, its representative, its parent, sister and affiliate companies and its and their officers, agents, employees and independent contractors, from any and all liability of every nature and kind arising from or in connection with the furnishing of information, the inspection of documents, records and other information, and the preparation of the review and confirmation of the information provided to UWM.

**7.27. Loan Prospector/Intended Beneficiary.** Freddie Mac offers its automated underwriting service, Loan Prospector, to organizations which are licensed originators of mortgage loans but do not have a seller agreement or seller number with Freddie Mac (**"Third -Party Originators"**). For Third-Party Originators to access Loan Prospector, the Third-Party Originators must obtain a Third-Party Originator Number from Freddie Mac. Broker represents and warrants to UWM that it shall comply with any rules, guidelines or other requirements established by Freddie Mac in connection with Broker's use of Loan Prospector. Broker and UWM acknowledge and agree that Freddie Mac is an express, intended third-party beneficiary of this Agreement solely for the purpose of enforcing Freddie Mac's rights under this Agreement, including but not limited to under this Section 7.27.

**7.28. Marks.** While Broker is registered to do business with UWM, UWM grants to Broker a non-exclusive, revocable, non-sublicensable, non-transferable license to use the mark, name or logo of its Blink application system (**"Blink Mark"**) in association or in connection with the operation of Broker's services or business within the United States. It is understood and agreed that this license shall pertain only to the Blink Mark. Broker acknowledges that Broker shall not acquire any right, title or interest in the Blink Mark by virtue of this license. Broker shall not by any act or omission use the Blink Mark in any manner that disparages or reflects adversely on UWM or its business reputation and shall indemnify, defend and hold harmless UWM in connection with any act or omission of Broker, its employees or agents associated with the license granted hereunder. UWM may terminate this license at any time and for any reason. Upon either the termination of the license or if Broker is no longer registered to do business with UWM, the Broker shall immediately discontinue all use of the Blink Mark. Further, Broker shall not use any other mark, name or logo of UWM or any related entity of UWM without UWM's prior written approval.

**7.29. UWM Programs.** From time to time, certain programs may be offered by UWM, or on behalf of UWM, to Broker, or through Broker to the Borrowers, in connection with the Mortgage Loans or Broker's business relationship with UWM (collectively, the **"UWM Programs"**). Broker waives, releases and forever discharges UWM from and against any and all responsibility, liability, demands, damages, claims and actions of every name and nature that may arise from the UWM Programs.

**WHEREFORE**, the parties hereto have executed the above and foregoing Agreement as of the day and year first above written.

Electronically signed **4/14/2020 5:09:04 PM** by **Shawn Nevin** of **America's Moneyline, Inc.** from **10.10.5.240**.

United Wholesale Mortgage, LLC Accepted **5/21/2020 12:09:02 PM** by **cisabella** from **10.10.5.240**.