## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE, LLC

    *Plaintiff/Counter-Defendant*,

v.

AMERICA'S MONEYLINE, INC.,

    *Defendant/Counter-Plaintiff*.

Case No. 22-cv-10228

Hon. Judith E. Levy

---

## UNITED WHOLESALE MORTGAGE, LLC'S MOTION TO DISMISS AMERICA'S MONEYLINE, INC.'S COUNTERCLAIMS

United Wholesale Mortgage, LLC ("UWM") moves, under Fed. R. Civ. P. 12(b)(6), to dismiss America's Moneyline, Inc.'s ("AML") counterclaims because they fail to state a claim for relief. In support, UWM submits the following Brief in Support of this Motion to Dismiss.

Under Local Rule 7.1(a), there was a conference between the attorneys for the parties in which UWM explained the nature of this Motion and its legal basis and requested, but did not obtain, concurrence in the relief sought.

WHEREFORE, UWM respectfully requests that the Court grant this Motion and dismiss AML's Counter-Complaint.

Respectfully submitted,

By: */s/ Roger P. Meyers*
William E. McDonald, III (P76709)
Roger P. Meyers (P73255)
Mahde Y. Abdallah (P80121)
**BUSH SEYFERTH PLLC**
100 West Big Beaver Road, Suite 400
Troy, MI 48084
T/F: (248) 822-7800
mcdonald@bsplaw.com
meyers@bsplaw.com
abdallah@bsplaw.com

Dated: March 18, 2022        *Attorneys for United Wholesale Mortgage, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE, LLC

    *Plaintiff/Counter-Defendant*,

v.

AMERICA'S MONEYLINE, INC.,

    *Defendant/Counter-Plaintiff*.

Case No. 22-cv-10228

Hon. Judith E. Levy

## UNITED WHOLESALE MORTGAGE, LLC'S
## BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
## <u>AMERICA'S MONEYLINE, INC.'S COUNTERCLAIMS</u>

## __Table of Contents__

Table of Contents ............................................................................... i

Statement of the Issues Presented ................................................... ii

Controlling or Most Appropriate Authority ................................... iii

I.    Introduction ............................................................................ 1

II.   Background ............................................................................. 2

III.  Argument ................................................................................ 5

      A.    AML cannot allege a plausible claim for fraud. ................... 6

            1.    The alleged misrepresentation contradicts the express
                  terms of the Agreement and is not enforceable. ......................... 6

                  a.    The Agreement contains a valid integration clause .......... 8

                  b.    AML does not allege that the Agreement's
                        integration clause was procured by fraud or is
                        otherwise invalid ............................................................. 9

                  c.    Given the valid integration clause, AML cannot
                        have reasonably relied on any alleged oral
                        representation that the All-In Provisions would not
                        be enforced because the Agreement says the
                        opposite ......................................................................... 11

            2.    AML cannot show that it suffered any damages arising out
                  of the alleged fraud or misrepresentation. ............................... 14

      B.    AML fails to allege a viable promissory estoppel claim. .................. 16

            1.    AML's promissory estoppel claim is barred by the parties'
                  integrated contract ................................................................... 16

            2.    AML unreasonably relied on the alleged oral promise. .......... 17

            3.    AML fails to allege induced reliance when it suffered no
                  damages by the non-enforcement of the alleged oral
                  promise ..................................................................................... 18

      C.    AML's declaratory judgment count should be dismissed because

            it is redundant of UWM's claims and AML's putative defenses ........ 19

IV.   Conclusion ............................................................................... 20

i

## **Statement of the Issues Presented**

1.     Should AML's fraud claim be dismissed where the alleged misrepresentation contradicts the express terms of an integrated contract and AML has failed to (and cannot) allege any damages arising out of the alleged fraud?

     UWM answers:          Yes.

     The Court should answer:     Yes.

2.     Should AML's promissory estoppel claim be dismissed where AML unreasonably relied on an alleged oral promise contrary to the terms of an integrated contract, and AML identifies no harm that it suffered in relying on the alleged promise?

     UWM answers:          Yes.

     The Court should answer:     Yes.

3.     Should AML's declaratory relief claim be dismissed because it is merely redundant of its putative defenses to UWM's breach-of-contract claim, and thus unnecessarily multiplies these proceedings?

     UWM answers:          Yes.

     The Court should answer:     Yes.

## <u>Controlling or Most Appropriate Authority</u>

*Advanced Plastics Corp. v. White Consol. Indus., Inc.*, 828 F. Supp. 484 (E.D. Mich. 1993), *aff'd*, 47 F.3d 1167 (6th Cir. 1995)

*APJ Assocs., Inc. v. N. Am. Philips Corp.*, 317 F.3d 610 (6th Cir. 2003)

*Aron Alan, LLC v. Tanfran, Inc.*, 240 F. App'x 678 (6th Cir. 2007)

*Cummins v. Robinson Twp.*, 770 N.W.2d 421 (Mich. Ct. App. 2009)

*Fed. Deposit Ins. Corp. v. Project Dev. Corp.*, 819 F.2d 289 (6th Cir. 1987)

*Hamade v Sunoco Inc.*, 721 N.W.2d 233 (Mich. Ct. App. 2006)

*Hardiman v. McKeen*, No. 19-12949, 2020 WL 1821025 (E.D. Mich. Apr. 10, 2020)

*Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813 (Mich. 1976)

*Joerger v. Gordon Food Serv., Inc.*, 568 N.W.2d 365 (Mich. Ct. App. 1997)

*Nieves v. Bell Indus., Inc.*, 517 N.W.2d 235 (Mich. Ct. App. 1994).

*Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546 (Mich. Ct. App. 1999)

*Oliverio v. Nextel West Corp.*, No. 13-10296, 2013 WL 2338706 (E.D. Mich. May 29, 2013)

*Ram Int'l, Inc. v. ADT Sec. Servs., Inc.*, 555 F. App'x 493 (6th Cir. 2014)

*UAW-GM Hum. Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411 (Mich. Ct. App. 1998)

*Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 761 N.W.2d 151 (Mich. Ct. App. 2008)

Fed. R. Civ. P. 12(b)(6)

## I.   **Introduction**

United Wholesale Mortgage, LLC ("UWM") brought this action after America's Moneyline, Inc. ("AML") repeatedly breached a fully integrated contract that required AML to refrain, if it wanted to avail itself of the benefits of doing business with UWM, from sending mortgage loans or mortgage applications to two specified competitors. Unsatisfied with simply asserting its putative defenses and litigating UWM's claim, AML has filed a frivolous Counter-Complaint in which its counsel—who currently represents one of those very competitors in other pending matters—attempts to dress up its defenses as counterclaims. This is unavailing and needlessly multiplies these proceedings. Indeed, AML's ad hominem attacks on UWM's owner and its gratuitous praise of UWM's competitors make clear that the Counter-Complaint's true purpose is to support the media and political lobbying campaign AML and the competitors also are engaged in—not assert valid legal claims. Each of AML's counterclaims fails to state a claim as a matter of law:

AML's fraud and promissory estoppel claims fail because they are based on an alleged oral promise not to enforce the terms of the contract. This, by definition, is a contradiction of the express, integrated agreement, and reliance on such an alleged promise is unjustifiable as a matter of law. Moreover, AML does not (and cannot) allege any way in which it was damaged by the alleged fraud or unfulfilled promise. The only harm it seeks to avoid is being held liable for damages if the

1

contract is enforced, which shows that the so-called claims are really nothing but defenses. (Ironically, AML simultaneously pleads fraud while making clear that it never had any intention of honoring the agreement it entered.) And AML's claim for declaratory relief is completely duplicative of its other putative defenses to UWM's breach-of-contract claim, thus doing nothing but unnecessarily multiplying these proceedings.

At bottom, the Counter-Complaint is long on propaganda and devoid of legal merit. It should be dismissed.

## II.   **Background**

AML executed a Wholesale Broker Agreement with UWM on April 14, 2020 (the "Original AML/UWM Agreement") under which it could offer UWM mortgage products to its customers. *See* AML's Answer, Affirmative Defenses, and Counter-Complaint, ECF No. 7, PageID.60 at ¶¶ 8–9.[1] In 2021, the agreement was amended[2] to add certain provisions relating to the submission of mortgage loans to select

---

[1] AML does not attach these agreements to its Answer and Counter-Complaint, but the Court can nevertheless consider them in deciding this motion because they were attached to the Complaint, and they are repeatedly referenced by and central to AMLs counterclaims. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

[2] The Original AML/UWM Agreement provided that the agreement "may be amended by UWM from time to time" and AML "agree[d] that the submission of any Mortgage Loan Applications or Mortgage Loans to UWM after such amendment shall be [AML's] agreement to the amendment without further signature or consent of any kind. Any such amendment shall apply to pending, and/or future Mortgage Loan Applications submitted by [AML]." ECF No. 1-1, PageID.17 at § 7.08.

2

entities other than UWM (the "Amended AML/UWM Agreement"). Specifically, Section 3.03(x) of the Amended AML/UWM Agreement provides that AML "will not submit a mortgage loan or mortgage loan application to Rocket Mortgage or Fairway Independent Mortgage for review, underwriting, purchase, and/or funding." ECF No. 1-2, PageID.28 at § 3.03(x). Section 7.30 provides that, in the event of breach of that provision, AML would "immediately pay to UWM the greater of: (i) Five Thousand Dollars ($5,000.00) per loan closed with Rocket Mortgage [and] Fairway Independent Mortgage . . . or (ii) Fifty Thousand Dollars ($50,000.00), as liquidated damages for such breach without the need for proof of damages by UWM." ECF No. 1-2, PageID.38–39 at § 7.30.[3]

The parties further agreed, as they had in the Original AML/UWM Agreement, that the written agreement constituted the "entire agreement" between AML and UWM:

> **7.12 Entire Agreement.** The arrangements and relationships contemplated in this Agreement and/or any document referred to herein constitute the sole understanding and agreement of the parties. This Agreement supersedes all other agreements, covenants, representations, warranties, understandings and communications between the parties, whether written or oral, with respect to the transactions contemplated by this Agreement.

ECF No. 1-2, PageID.35 at § 7.12; *see also* ECF No. 1-1, PageID.17 at § 7.12.

---

[3] Throughout, UWM will refer to Sections 3.03(x) and 7.30 in the Amended AML/UWM Agreement collectively as the "All In Provisions."

3

AML alleges that the details of the All In Provisions were "publicly announced" via social media on March 4, 2021. ECF No. 7, PageID.62–63 at ¶ 24. The following day, UWM sent AML an email further informing AML of the amended agreement. *Id.*, PageID.65 at ¶ 34. AML admits that it "continued to do business with . . . UWM" thereafter. *Id.*, PageID.68 at ¶ 44. And it admits that it eventually did formally execute the Amended AML/UWM Agreement.[4] *Id.*, PageID.70 at ¶ 53.

But despite its acceptance, first by conduct and later by formal execution, of the Amended AML/UWM Agreement, AML continued to do business with Rocket Mortgage. *Id.*, PageID.68 at ¶ 44, PageID.71 at ¶ 56, PageID.72 at ¶¶ 61–62; PageID.73 at ¶ 65. It did so, it alleges, based on repeated oral assertions, contrary to the integrated agreement, that UWM would not enforce the All In Provisions. *Id.*, PageID.68 at ¶ 45, PageID.70 at ¶ 52, PageID.72 at ¶ 59.

UWM thereafter filed this suit asserting a claim for breach of contract. *See* ECF No. 1. AML answered and asserted counterclaims against UWM for (1) fraud and misrepresentation, (2) promissory estoppel, and (3) a declaratory judgment that

---

[4] For purposes of this motion only, UWM does not contest AML's allegation regarding formal acceptance of the Amended AML/UWM Agreement. But, should it prove necessary, UWM will provide evidence at a subsequent stage of the proceeding as to AML's much earlier acceptance.

4

the All In Provisions "are invalid and unenforceable as a matter of law and of no force and effect." ECF No. 7, PageID.79–86.

### III.    <u>Argument</u>

A claim should be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All the detail in the world cannot save a cause of action that fails as a matter of law, "regardless of whether the . . . factual allegations are true or not." *See Winnett v. Caterpillar, Inc.* 553 F.3d 1000, 1005 (6th Cir. 2009).[5]

Even if AML's allegations are treated as true for purpose of this motion, they still fail to establish actionable claims for fraud or promissory estoppel, both because of legal bars as well as a failure to plead any damages caused by UWM's conduct. They should therefore be dismissed. And because AML's declaratory judgment claim amounts only to a recast defense to UWM's breach-of-contract claim, it should be dismissed also.

---

[5] Throughout, unless otherwise noted (as here), all emphases and alterations are added, and all internal quotation marks, citations, and footnotes are omitted.

**A. AML cannot allege a plausible claim for fraud.**

Despite its heading, AML's counterclaim for "fraud and misrepresentation" is plainly a claim for fraudulent inducement. ECF No. 7, PageID.79 at ¶ 84 ("UWM fraudulently induced AML . . ."); *id.* at ¶ 87 ("deceive AML into executing"); *id.*, PageID.80 at ¶ 89 ("in an effort to deceive and induce"); *id.* at ¶ 90 ("which induced AML to execute"). That claim fails because fraudulent inducement cannot be predicated on alleged oral statements that contradict the express terms of the agreement, and because AML has failed to (and cannot) allege any damages purportedly arising out of the alleged misrepresentation. Count I must be dismissed.

1. The alleged misrepresentation contradicts the express terms of the Agreement and is not enforceable.

To assert a claim for fraud, a party must allege: (1) a material representation; (2) that was false; (3) and either known to be false when made, or made "recklessly, without any knowledge of its truth"; (4) made with the intention that it should be acted upon; (5) which induced reliance; (6) causing injury. *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976). Generally, a fraud claim can only be based on a "statement relating to a past or an existing fact." *Id.*

The species of fraud alleged here is an exception to the latter rule. "Fraud in the inducement occurs where a party materially misrepresents future conduct under circumstances in which the assertions may ***reasonably*** be expected to be relied upon and are relied upon." *Cummins v. Robinson Twp.*, 770 N.W.2d 421, 437 n.1 (Mich.

6

Ct. App. 2009); *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 761 N.W.2d 151, 165 (Mich. Ct. App. 2008) ("[T]o sustain a fraud claim, the party claiming fraud must *reasonably* rely on the material misrepresentation." (emphasis in original)). But "reliance on an allegedly fraudulent representation is not reasonable if the representation" expressly contradicts a fully integrated contract between the parties that contains a valid merger or integration clause, "unless the plaintiff can make out a claim of fraud in the inducement or fraud ***pertaining to the [] clause itself***." *Ram Int'l, Inc. v. ADT Sec. Servs., Inc.*, 555 F. App'x 493, 501–02 (6th Cir. 2014); *Hamade v Sunoco Inc.*, 721 N.W.2d 233, 250 (Mich. Ct. App. 2006) ("[T]he valid integration clause renders reliance on the representation unreasonable as a matter of law.").[6]

Because (a) the Amended AML/UWM Agreement includes a valid integration clause, (b) AML does not allege that the integration clause itself was precured by fraud or is otherwise invalid, and (c) the alleged "inducing" misrepresentation contradicts the integrated Amended AML/UWM Agreement such that AML's

---

[6] Michigan courts use the terms "merger clause" and "integration clause" interchangeably such that there does not appear to be any difference in their interpretation. *See, e.g.*, *Dedvukaj v. Equilon Enterprises, L.L.C.*, 301 F. Supp. 2d 664, 670 (E.D. Mich. 2004), *aff'd*, 132 F. App'x 582 (6th Cir. 2005) ("[T]he prevailing law in Michigan concerning integration clauses is that 'a contract with a merger clause nullifies all antecedent claims, including any collateral agreements that were allegedly an inducement for entering into the contract.'"). For clarity and consistency, UWM will refer to such a clause as a "integration clause" throughout its Motion.

reliance on any such statement is per se unreasonable, AML cannot recover for fraud or misrepresentation.

### a. *The Agreement contains a valid integration clause.*

An integration clause is a contractual provision that "declares in express terms that [the contract] contains the entire agreement of the parties." *UAW-GM Hum. Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 415 (Mich. Ct. App. 1998). Section 7.12 of the Agreement is entitled "Entire Agreement" and is the integration clause in the Amended AML/UWM Agreement:

> **7.12 Entire Agreement.** The arrangements and relationships contemplated in this Agreement and/or any document referred to herein constitute the sole understanding and agreement of the parties. This Agreement supersedes all other agreements, covenants, representations, warranties, understandings and communications between the parties, whether written or oral, with respect to the transactions contemplated by this Agreement.

ECF No. 1-2, PageID.35 at § 7.12. The same integration clause appears in both the Original AML/UWM Agreement and the Amended AML/UWM Agreement. *See* ECF No. 1-1, PageID.17 at § 7.12. AML executed the Original AML/UWM Agreement on April 14, 2020. ECF No. 7, PageID.60 at ¶ 9. AML accepted the Amended AML/UWM Agreement promptly upon its issuance by performance, and again later by formal execution. *Id.*, PageID.68 at ¶ 44, PageID.70 at ¶ 53.

8

> b.  *AML does not allege that the Agreement's integration clause was procured by fraud or is otherwise invalid.*

When contracting parties "include an integration clause in their written contract, it is conclusive" and parol evidence is not admissible to "contradict the explicit integration clause" except "in cases of fraud that invalidate the integration clause or where an agreement is obviously incomplete 'on its face' and, therefore, parol evidence is necessary for the 'filling of gaps.'" *UAW-GM Hum. Res. Ctr.*, 579 N.W.2d at 418. Neither is present here.

AML does not allege that there was fraud in the inducement of the integration clause itself. Nor could it. The same integration clause that appears in the Amended AML/UWM Agreement was included in the Original AML/UWM Agreement, about which AML makes no complaint. *See* ECF No. 7, PageID.59–61. Further, AML's claims are based solely on its allegations that it was fraudulently induced into agreeing to the All In Provisions in the Amended AML/UWM Agreement. *See id.*, PageID.65–77. AML does not raise any objection to the integration clause (Section 7.12) itself, or the circumstances under which it twice agreed to the integration clause.

Further, to recognize AML's claim and thereby discard the Amended AML/UWM Agreement and its integration clause, the Court would have to accept (and condone) that ***AML itself*** was lying when it agreed not to send mortgage loans or applications to two specified competitors, and was actually relying on extrinsic

9

oral representations whose existence it explicitly denied via the integration clause. In other words, no fraud on UWM's part could be found without first accepting AML's admission of its own false representation and then absolving AML of responsibility for that lie. Legal gymnastics are not warranted here—AML did not plead and cannot show any fraud that would invalidate the integration clause itself.

Neither is the Amended AML/UWM Agreement "incomplete on its face" such that parol evidence is necessary to "fill the gaps." *UAW-GM Hum. Res. Ctr.*, 579 N.W.2d at 418. "An agreement is incomplete on its face where it fails to specify 'obvious elements of the deal struck.'" *ADR N. Am., L.L.C. v. Agway, Inc.*, 303 F.3d 653, 658 (6th Cir. 2002) (quoting *UAW-GM Hum. Res. Ctr.*, 579 N.W.2d at 420 n.12). A court "should construe the incompleteness exception narrowly, as 'a broad interpretation of this exception would largely vitiate the purpose of an integration clause'" *Id.*

There are no "obvious elements" missing here. Indeed, AML claims only that it was misled into believing that UWM "would not enforce the [All In Provisions] against AML." ECF No.7, PageID.70 at ¶ 52. In other words, AML's claims are not based on any allegation that there was an "element of the deal struck" omitted from the terms of the Amended AML/UWM Agreement. Instead, AML claims only that it struck a different deal—one that contradicts the central change from the Original

to the Amended Agreement. That is not even arguably an incompleteness issue; it is merely an attempt at a do-over.

> c. *Given the valid integration clause, AML cannot have reasonably relied on any alleged oral representation that the All-In Provisions would not be enforced because the Agreement says the opposite.*

A fraud or misrepresentation claim requires "reasonable reliance" on the alleged false representation. *Nieves v. Bell Indus., Inc.*, 517 N.W.2d 235, 238 (Mich. Ct. App. 1994). A party's reliance on certain statements is not reasonable, as a matter of law, where those statements contradict the parties' written contract. *See Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 552–53 (Mich. Ct. App. 1999); *Aron Alan, LLC v. Tanfran, Inc.*, 240 F. App'x 678, 682 (6th Cir. 2007) ("Unreasonable reliance includes relying on an alleged misrepresentation that is expressly contradicted in a written contract that the plaintiff reviewed and signed."); *see also Arrowood Indem. Co. v. City of Warren*, No. 13-13938, 2015 WL 58679, at *6 (E.D. Mich. Jan. 5, 2015), *aff'd sub nom. Arrowood Indem. Co. v. Cristini*, 630 F. App'x 512 (6th Cir. 2015) ("The determination whether a plaintiff's alleged reliance was reasonable can be made 'at the pleading stage and without discovery.'").

AML's supposed reliance on "assurances that, if AML signed the Amended AML/UWM Agreement, UWM would not enforce the [All In Provisions] against AML," ECF No.7, PageID.70 at ¶ 52, is unreasonable as a matter of law. It essentially seeks to turn a contract into a meaningless sheet of paper, containing

words but no real obligations. This would be nonsensical even without the integration clause; with that clause, it is impossible. The Amended AML/UWM Agreement "constitute[d] the sole understanding and agreement of the parties" and "supersede[d] all other . . . representations . . . and communications between the parties, whether written or oral." ECF No. 1-2, PageID.35 at § 7.12, ECF No. 1-1, PageID.17 at § 7.12. And the Amended AML/UWM Agreement sets forth the All In Provisions, which are the very things AML claims it was told it could ignore. No greater contradiction between written terms and alleged oral statements is possible, and no alleged reliance could be more unreasonable.

*Novak* is illustrative. The plaintiff there signed an employment agreement with the defendants, which stated that "plaintiff's employment was terminable at will by either party" and that "plaintiff was not to sell insurance for any other insurance carriers other than defendants unless defendants specifically directed him to do so." 599 N.W.2d at 549. After being fired, plaintiff asserted a fraudulent misrepresentation claim and contended that the "defendants induced him into signing the written contract by fraudulently informing him that . . . the at-will provision in the written contract did not apply to him, and . . . he would be allowed to sell insurance for [other insurance carriers]." *Id.* at 552–53. The court found that plaintiff's misrepresentation claim with respect to those statements failed "because plaintiff's reliance on [the statements] was not reasonable in light of the written

contract," which "with its integration clause, expressly contradicted [the] statements." *Id.* at 553–54. "As a matter of law," then, the statements "did not support a misrepresentation claim." *Id.* at 554.

Similar too is *Oliverio v. Nextel West Corp.*, No. 13-10296, 2013 WL 2338706 (E.D. Mich. May 29, 2013). There, the plaintiffs entered a written contract with the defendant to lease a property to the defendant so that it could place a cell phone tower on the property. *Id.* at *1. The contract provided that the defendant could, in its "sole and absolute discretion and at any time and for any or no reason, terminate this Agreement without further liability by delivering prior written notice to [plaintiff]. *Id.* at *3. The contract also included an integration clause stating that the written contract "constitutes the entire agreement between the parties and supersedes all prior written and verbal agreements, representations, promises or understandings between the parties." *Id.* The defendant eventually terminated the contract after changing its plans. *Id.* at *1. In response, plaintiff sued for fraud. *Id.* The court rejected the claim and noted that, had "someone on behalf of Defendant verbally promised or told Plaintiffs that the termination provision did not apply, or that Defendant would not terminate or cancel the contract, any reliance on such a statement would be unreasonable as a matter of law" because "[s]uch statements are expressly contradicted by the terms of the written contract that Plaintiffs signed and

agreed to that provide that Defendant may terminate the agreement 'at any time and for any or no reason' and 'without further liability' to Plaintiffs." *Id.* at *5.

So too, here. Even if a UWM representative with authority had assured AML that it would not enforce the All In Provisions (which UWM does not concede), AML could not have reasonably relied on such assurances because the Amended AML/UWM Agreement was a fully integrated contract that contained those provisions. As such, AML's claim for fraud and misrepresentation fails.

### 2. AML cannot show that it suffered any damages arising out of the alleged fraud or misrepresentation.

To plead a claim for fraud, a plaintiff must also allege that she "suffered injury" as a result of her reliance on the false material misrepresentation. *See Hi-Way Motor Co.*, 247 N.W.2d at 816. A "fraud plaintiff is entitled to the benefit of the *bargain*," which is what the plaintiff "would have gotten had the representations been true." *Thompson v. Paasche*, 950 F.2d 306, 314 (6th Cir. 1991) (emphasis in original).

AML pleads no facts that could create a plausible inference it suffered damages because of UWM's alleged "fraud." It merely announces, without elaboration, that it "suffered damages for which it is entitled to recover, including, but not limited to, compensatory damages, consequential damages, exemplary damages, interest, costs, and attorney fees." ECF No. 7, PageID.81 at ¶ 95. Such conclusory, catch-all averments do not satisfy *Iqbal/Twombly*. Moreover, taking

14

AML's other allegations as true, the essence of AML's reliance story is that it submitted mortgages to Rocket Mortgage or Fairway Independent Mortgage with the expectation that the All In Provisions would not be enforced. But AML does not suggest it was damaged in any way by taking that action. To the contrary, the only reasonable inference is that AML benefitted from those submissions.

At best, this means the claim is premature. AML has paid nothing and incurred no losses as a result of doing business with Rocket Pro. So, no claim has accrued. *See Chelsea Inv. Grp. LLC v. Chelsea*, 792 N.W.2d 781, 792 (Mich. Ct. App. 2010) ("[D]amages that are speculative or based on conjecture are not recoverable."); *Case v. Hunt*, No. 341645, 2019 WL 1780643, at *5 (Mich. Ct. App. Apr. 23, 2019) ("Plaintiffs['] . . . request for damages is in anticipation of damages that may occur. But a plaintiff may not recover damages that are speculative or based upon conjecture.").

In reality, however, the claim is nothing more than a defense dressed up as a counterclaim. AML's damages theory seems to be that it ***will*** be damaged if the All In Provisions are enforced and AML is required to pay UWM damages for its breach. *See* ECF No. 7, PageID.80 at ¶ 93 ("As a result, AML . . . continued doing business with Rocket Pro . . ."). But if AML were able to avoid its contractual obligation due to alleged fraud, it would never have to pay damages to UWM. In other words, there

is no circumstance under which this so-called claim could result in a recovery, which is a strong indication that it is not a claim at all. Count I should be dismissed.

### B. AML fails to allege a viable promissory estoppel claim.

AML's promissory estoppel claim fails because (1) a contract exists between the parties, (2) AML's reliance on the promise was unreasonable, and (3) AML was not induced to rely on the oral promise. In Michigan, promissory estoppel arises when "(1) there is a promise (2) that the promisor should have reasonably expected to induce action (3) which in fact produces reliance or forbearance (4) under circumstances such that the promise must be enforced if injustice is to be avoided." *APJ Assocs., Inc. v. N. Am. Philips Corp.*, 317 F.3d 610, 617 (6th Cir. 2003). AML's counterclaim misses most of these requirements.

### 1. AML's promissory estoppel claim is barred by the parties' integrated contract.

AML's promissory estoppel claim first fails as a matter of law because the parties' relationship is governed by the Amended AML/UWM Agreement. Promissory estoppel claims are barred when a contract exists between the parties, even if the terms or effect of the contract are in dispute. *Advanced Plastics Corp. v. White Consol. Indus., Inc.*, 828 F. Supp. 484, 491–92 (E.D. Mich. 1993), *aff'd*, 47 F.3d 1167 (6th Cir. 1995) (dismissing promissory estoppel claim where contract existed but the parties disagreed on its scope, terms, and effect). Indeed, "[p]romissory estoppel based on extrinsic understandings is not appropriate." *APJ*

16

*Assocs., Inc.*, 317 F.3d at 617 ("Promissory estoppel may not be used to override the express agreement of the parties contained in written agreements."). This well-established precedent particularly includes preclusion of claims based on oral promises that contradict an express contract. *Novak*, 599 N.W.2d at 552 (affirming dismissal of a promissory estoppel claim where an express contract term, coupled with an integration clause, contradicted an oral promise that a contract term would not apply to the plaintiff).

The promissory claim here fails because AML admits a contract—the Amended AML/UWM Agreement—exists between the parties. ECF No. 7, PageID.70 at ¶ 53. Indeed, the central premise of AML's claim is that, while the contract as a whole is valid, UWM promised not to enforce two of its provisions. This does not make for a viable claim. *See Advanced Plastics*, 828 F. Supp. 484 at 491–92. And like the agreement in *Novak*, UWM and AML's Agreement is integrated and contains the All In Provisions, which negates any oral promise that the term does not apply. ECF No. 1-2, PageID.28, 35, 38–39 at §§ 3.03(x), 7.12, and 7.30.

2. <u>AML unreasonably relied on the alleged oral promise.</u>

Next, AML cannot successfully allege that it reasonably relied on the alleged oral promise not to enforce the All-In Provisions because the Amended AML/UWM

Agreement's terms expressly contradict the promise. The argument here parallels that detailed in Section III.A.1.

Promissory estoppel requires reasonable reliance on the party asserting the estoppel. *Zaremba Equip.*, 761 N.W.2d at 166. "Unreasonable reliance includes relying on an alleged misrepresentation that is expressly contradicted in a written contract." *Aron Alan*, 240 F. App'x at 682; *see also UAW-GM Hum. Res. Ctr.*, 579 N.W.2d at 419 (finding that the presence of an integration clause makes it unreasonable, as a matter of law, to rely on representations not included in a written agreement); *Novak, supra*. Because the Amended AML/UWM Agreement includes an integration clause that precludes consideration of the purported oral promise that contradicts the All-In Provisions, AML's reliance on the oral promise was not reasonable as a matter of law.

> 3. <u>AML fails to allege induced reliance when it suffered no damages by the non-enforcement of the alleged oral promise.</u>

AML cannot allege any induced "reliance or forbearance" that resulted in circumstances that require the enforcement of any alleged oral promise to not enforce the All-In Provisions. This defect, again, parallels that discussed in Section III.A.2.

For a promissory estoppel claim, "[t]he guiding principle in determining an appropriate measure of damages is to ensure that the promisee is compensated for the loss suffered to the extent of the promisee's reliance." *Joerger v. Gordon Food*

*Serv., Inc.*, 568 N.W.2d 365, 369 (Mich. Ct. App. 1997). But AML fails to allege any damages it purportedly suffered due to its induced reliance on UWM's alleged oral promise.

AML's theory seems to be that it ***would*** be damaged if the alleged oral non-enforcement promise were not enforced. But that, again, means it has not actually been harmed and it is merely pursuing a defense improperly disguised as a counterclaim. Count II should be dismissed.

### C. AML's declaratory judgment count should be dismissed because it is redundant of UWM's claims and AML's putative defenses.

Courts routinely dismiss declaratory judgment counterclaims as superfluous when the counterclaim would be rendered moot by the adjudication of corresponding claims in the complaint. *Hardiman v. McKeen*, No. 19-12949, 2020 WL 1821025, at *4 (E.D. Mich. Apr. 10, 2020) (citing *Malibu Media, LLC v. [Redacted]*, 705 F. App'x 402, 405–06 (6th Cir. 2017) (affirming dismissal of defendant's redundant "mirror image" copyright counterclaim, which would necessarily be resolved by the adjudication of the plaintiff's copyright claim); *Fed. Deposit Ins. Corp. v. Project Dev. Corp.*, 819 F.2d 289 (6th Cir. 1987) (table) ("When a counterclaim merely restates the issues as a 'mirror image' to the complaint, the counterclaim serves no purpose.")). AML's Affirmative Defenses include fraud in the inducement, estoppel, antitrust violations, unconscionability, and economic duress "as more particularly set forth in the Counter-Complaint." ECF No. 7, PageID.58–59. Resolution of

19

UWM's breach-of-contract claim and AML's defenses to it effectively resolves AML's declaratory judgment claim too, which seeks to invalidate the Amended AML/UWM Agreement and its All-In Provisions on the same grounds as AML's defenses. This count should thus be dismissed as it fails to raise new issues for consideration. Count III should be dismissed.

## IV.   <u>Conclusion</u>

For the reasons stated above, UWM respectfully requests that the Court grant this Motion and dismiss AML's Counter-Complaint.

Respectfully submitted,

By: */s/ Roger P. Meyers*
William E. McDonald, III (P76709)
Roger P. Meyers (P73255)
Mahde Y. Abdallah (P80121)
**BUSH SEYFERTH PLLC**
100 West Big Beaver Road, Suite 400
Troy, MI 48084
T/F: (248) 822-7800
mcdonald@bsplaw.com
meyers@bsplaw.com
abdallah@bsplaw.com

*Attorneys for*
Dated: March 18, 2022            *United Wholesale Mortgage, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 18, 2022, I served a copy of the foregoing document

on all attorneys and/or parties of record via the Court's electronic filing system.

*/s/ Roger P. Meyers*