# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE, INC.,
a Michigan Limited Liability Company,

       Plaintiff/Counter-Defendant        Case No. 22-cv-10228
                                                        Hon. Laurie J. Michelson
       v.                                            Mag. J. Elizabeth A. Stafford

AMERICA'S MONEYLINE, INC., a
California Company,

       Defendant/Counter-Plaintiff.
_____/

## UNITED WHOLESALE MORTGAGE, INC.'S REPLY
## IN SUPPORT OF ITS MOTION TO DISMISS
## AMERICA'S MONEYLINE, INC.'S AMENDED COUNTERCLAIM

## ORAL ARGUMENT REQUESTED

## I. Introduction

AML's Response to UWM's Motion to Dismiss fails to supply any plausible factual allegation or legal rationale for the Court to transform this breach of contract case into an antitrust case. AML wholly ignores the ruling of another court rejecting the same claims. *See* ECF No 27-2, PageID.439-58. Instead, it repeatedly relies on inapposite precedent and conclusory allegations but cannot escape its core pleading deficiencies: (1) AML has not plausibly alleged a properly defined market; (2) AML has not plausibly alleged a *per se* antitrust violation; and (3) AML has not plausibly alleged an antitrust violation under the rule of reason.

## II. Argument

### A. AML Has Not Plausibly Alleged the "Wholesale Mortgage Lending" Market Is the Relevant Defined Market

AML asserts that market definition is "highly fact-based" and "generally requires discovery." ECF No. 31, PageID.506. Yet the very same opinion quoted by AML adds that "definition of the relevant market requires ***little factual analysis***" where the two supposedly distinct markets offer "interchangeable" products. *Found. for Int. Design Educ. Rsrch. v. Savannah Coll. of Art & Design*, 244 F.3d 521, 531 (6th Cir. 2001).[1,2] AML concedes wholesale and retail mortgages are "reasonably

---

[1] Throughout, unless otherwise noted, all emphasis and alterations are added, and all internal quotation marks, citations, and footnotes are omitted.

[2] AML's other authority concerns defining "the relevant ***geographic*** market." *See E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 443 (4th Cir. 2011). That is not at issue here.

interchangeable." ECF No. 31, PageID.507. Under similar circumstances, courts of this District have dismissed antitrust claims for failure to plead sufficient market power in the relevant market. *See Mich. Div.-Monument Builders v. Mich. Cemetery Ass'n*, 458 F. Supp. 2d 474, 482-83 (E.D. Mich. 2006) (finding plaintiff's asserted market "clearly does not encompass all interchangeable substitute products even when all inferences are granted in Plaintiff's favor"), *aff'd*, 524 F.3d 726, 733 (6th Cir. 2008) ("the fact that market definition generally requires discovery has not prevented this court, and others, from affirming grants of motions to dismiss on the basis of an insufficiently pled or totally unsupportable proposed market").

AML asserts that interchangeability only defines the "outer boundaries" of a product market under *Brown Shoe Co., Inc. v. United States*, 370 U.S. 294, 325 (1962), and proposes to look to "practical indicia" instead. ECF No. 31, PageID.507. But the Sixth Circuit expressly rejects that approach, holding the "practical indicia" factors from *Brown Shoe* "come into play ***only after***" applying the "reasonable interchangeability" test. *Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 918 (6th Cir. 2009). The Sixth Circuit "rejected the notion that market and submarket analyses are substitute tests," holding that "the reasonable-interchangeability analysis is the ***essential test*** for ascertaining the relevant product market." *Id*.

AML next asserts that its conclusory allegations "closely track" the *Brown*

2

*Shoe* practical indicia. ECF No. 31, PageID.507-08. But its Amended Counterclaim still fails because it "contains no allegations whatsoever relating to the rule of interchangeability or to substitute products." *Builders*, 458 F. Supp. 2d at 483; *see also* ECF No. 27, PageID.420-22. AML also continues to ignore its own allegations demonstrating that wholesale and retail lending ***are*** interchangeable and are ***not*** separate markets. In particular: (1) AML alleges consumers just need "mortgage lending"; (2) AML alleges Rocket and Fairway are "whole-tail" lenders, confirming their cross-elasticity; and (3) AML's own industry sources confirm wholesale and retail lenders are seen as comparable. *See id.*, PageID.422-25.

AML's other authorities do not help its cause. Section 4.0 of the Department of Justice/Federal Trade Commission Merger Guidelines[3] confirms the importance of interchangeability, stating: "Market definition focuses solely on demand substitution factors, i.e., on customers' ability and willingness to substitute away from one product to another." *Id*. It adds that, "a group of products is ***too narrow to constitute a relevant market***" if the definition excludes "ample" competition "from products outside that group[.]" *Id.* In *FTC v. Staples, Inc.*, 970 F. Supp. 1066 (D.D.C. 1997), the court found "practical indicia" may be relevant only to the extent they demonstrate low cross-elasticity of demand; that is, if a "significant increase" in

---

[3] *See* U.S. Dept. of Justice and the F.T.C., *Horizontal Merger Guidelines*, www.ftc.gov/system/files/documents/public_statements/804291/100819hmg.pdf.

3

price "will not cause a considerable number" of customers to substitute products. *Id.* at 1074-75. AML alleges no facts indicating low cross-elasticity of demand between wholesale and retail mortgages. *See also FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 27 (D.D.C. 2015) (applying interchangeability to define market); *FTC v. Whole Foods Market*, 548 F.3d 1028, 1037 (D.C. Cir. 2008) (similar).

Lastly, AML asserts this Court can do away with the market definition inquiry altogether, because AML has attempted to assert "actual detrimental effects." ECF No. 31, PageID.511. That is flatly incompatible with *Ohio v. Am. Express Co.*, 138 S. Ct. 2274 (2018). There, the Supreme Court considered an antitrust claim relying "exclusively on direct evidence" of "actual detrimental effects." *Id.* at 2284-85. Citing the same authorities as AML, plaintiffs in that case likewise argued they "need not define the relevant market . . . because they have offered actual evidence of adverse effects on competition." *Id.* at 2285 n.7. The Court disagreed, holding that market definition may only be set aside in cases involving *per se* horizontal restraints involving "agreements between competitors not to compete." *Id.* AML has alleged no such *per se* horizontal restraint, as discussed in the following section.

**B.     AML Has Not Alleged a *Per Se* Violation of the Antitrust Laws**

AML attempts to salvage its facially deficient assertion of a *per se* antitrust violation by insisting it has plausibly suggested a "hub and spoke" conspiracy via either "direct evidence" or a "plus factor" analysis. ECF No. 31, PageID.511-19.

4

These efforts do not state a claim because the relationship between UWM and its brokers is unavoidably vertical, and AML cannot allege any horizontal agreement between brokers.

Conspicuously, every "hub and spoke" conspiracy case on which AML relies is from outside the Sixth Circuit. *See id.*, PageID.511-12. That is no accident. The Sixth Circuit has adopted a decidedly narrow view of "hub and spoke" conspiracy claims, distinguishing the Seventh Circuit authority on which AML relies and holding that *per se* violations still require "a horizontal agreement among direct competitors," and finding "[t]here is no special exception for applying *per se* status just because there is a hub and spoke conspiracy[.]" *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 435 (6th Cir. 2008) (distinguishing *Toys "R" Us, Inc. v. FTC*, 221 F.3d 928 (7th Cir. 2000)). Where "the rim holding everything together is missing," a plaintiff cannot state a *per se* claim. *Id.* at 435-36.

That remains the dispositive flaw in the Amended Counterclaim. AML has not alleged any "horizontal agreement" among brokers because there is none. AML points to allegations that UWM's "All In" Initiative was met with enthusiasm by many brokers as "direct evidence" of an agreement that "requires no inferences." ECF No. 31, PageID.513. It is nothing of the sort. Enthusiasm directed to the brokers' vertical relationships with UWM is no evidence, much less direct evidence,

5

of a horizontal agreement among the brokers. If not direct evidence, AML alternatively asserts that "interbroker communications" and supposed action against individual self-interest are "plus factors" suggestive of a horizontal conspiracy. *Id.*, PageID.514-17. Again, however, AML relies entirely on out-of-circuit authority. *Id*. AML's bare assertions that brokers expressed their enthusiasm to one another on public forums and signed onto vertical agreements with UWM that AML did not find advantageous to its self-interest do not meet the Sixth Circuit's stringent standard that "plus factors" must provide "compelling circumstantial evidence of an overarching conspiracy." *Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Stds. for Athletic Equip.*, 48 F. 4th 656, 666 (6th Cir. 2022). Directing "the court's attention to a scenario, theory, or occurrence and ask[ing] the court to make sweeping conclusions about the motives and actions" of the brokers is not a proper "plus factors" analysis. *Id*. at 668.

### C. AML Has Not Alleged an Unreasonable Restraint of Trade or Attempted Monopolization

AML's perfunctory efforts to preserve its unreasonable restraint of trade claim under the rule of reason analysis do not pass muster. ECF No. 31, PageID.519-21. First, AML does not even attempt to allege market power in the relevant market of all mortgage lending. *See* § II.A., *supra*. Second, AML cannot shore up its failure to allege anticompetitive effects by asserting that individual brokers were unable to offer consumers as many choices. ECF No. 31, PageID.519-20. That misses the

6

larger point that consumers are unrestricted in how many or which brokers or lenders they deal with, leaving competition unhindered. ECF No. 27, PageID.430-32. Third, AML concedes that brokers are free to terminate their agreement with UWM on short notice but insists that does not matter because brokers "can never opt out of the Ultimatum if they ever want to do business with UWM." ECF No. 31, PageID.521. But that is not antitrust injury. The Sherman Act does not require that every wholesale lender must do business with every broker, and the Amendment's easy exit terms ensure competition is protected. ECF No. 27, PageID.432.

AML similarly fails to sustain its wholly conclusory attempted monopolization claim, as it does not and cannot point to any factual allegations demonstrating a properly defined market, anti-competitive conduct, or a dangerous probability of success. *Compare id.*, PageID.433-34 *with* ECF No. 31, PageID.521-23.

For these reasons, the Court should dismiss AML's Amended Counterclaim.

Dated: June 21, 2023  	Respectfully submitted,
	By: */s/ Moheeb H. Murray*
	Moheeb H. Murray (P63893)
	Mahde Y. Abdallah (P80121)
	**BUSH SEYFERTH PLLC**
	100 West Big Beaver Road, Suite 400
	Troy, MI 48084
	T/F: (248) 822-7800
	murray@bsplaw.com
	abdallah@bsplaw.com
	***Attorneys for United Wholesale Mortgage, LLC***

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED WHOLESALE MORTGAGE, LLC

        Plaintiff/Counter-Defendant        Case No. 22-cv-10228
                                                        Hon. Laurie J. Michelson
        v.                                           Mag. J. Elizabeth A. Stafford

AMERICA'S MONEYLINE, INC.

        Defendant/Counter-Plaintiff
_____/

**BRIEF FORMAT CERTIFICATION FORM**

I, <u>Moheeb H. Murray</u>, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

- ☒ the original brief contained a statement regarding concurrence, *see* LR 7.1(a);
- ☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);
- ☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;
- ☒ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;
- ☒ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);
- ☒ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;
- ☒ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

Dated: June 21, 2023                                               */s/ Moheeb H. Murray*