UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED WHOLESALE MORTGAGE, LLC,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>AMERICA'S MONEYLINE, INC.,<br><br>Defendant/Counter-Plaintiff. | Case No. 22-10228<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING UNITED WHOLESALE MORTGAGE'S MOTION TO DISMISS AMENDED COUNTERCOMPLAINT [27]**

In 2021, United Wholesale Mortgage, a wholesale mortgage lender, issued an "ultimatum" to its mortgage broker clients: to continue working with us, you must stop working with two of our competitors, Fairway Mortgage and Rocket Pro. America's Moneyline was one of about 12,000 brokers subject to that ultimatum—and one of about 11,500 brokers that agreed to it through an Amended Wholesale Broker Agreement. But AML continued to submit loan applications to Rocket Pro while working with UWM. So in 2022, UWM sued AML for breach of contract. (ECF No. 1.) AML countersued, alleging in its amended countercomplaint that UWM's ultimatum violates federal and state antitrust laws. (ECF No. 24.) UWM now moves to dismiss that countercomplaint for failure to state a claim for relief. (ECF No. 27.)

UWM filed a similar motion in the Middle District of Florida, where a broker brought a class action suit, prior to this lawsuit, alleging the same antitrust violations

that AML has raised here. Indeed, the central focus of that case is antitrust claims. Last month, Magistrate Judge Laura Lothman Lambert issued a thorough and well-reasoned Report and Recommendation concluding that UWM's motion should be granted and the Florida suit dismissed. *See Okavage Grp., LLC v. United Wholesale Mortg., LLC*, No. 21-448, 2024 WL 982380 (M.D. Fla. Feb. 6, 2024). The Court agrees with and adopts that ruling, which applies Supreme Court precedent and is consistent with Sixth Circuit precedent, and thus will grant UWM's motion.

## I.

In March 2021, UWM issued its "ultimatum," and in April 2021, the Okavage Group brought suit in the Middle District of Florida. Okavage, unlike AML, had not signed an amended broker agreement with UWM, and UWM soon terminated their business relationship. So Okavage sued UWM on behalf of itself and all mortgage brokers formerly and currently clients of UWM and either Fairway or Rocket Pro, alleging that UWM's ultimatum constituted an unreasonable trade restraint and unfair trade practice under federal and state antitrust laws.

In March 2023, AML filed a materially identical countercomplaint in this Court in response to UWM's breach-of-contract suit. AML initially brought counterclaims of promissory estoppel and fraud (*see* ECF No. 7), but when those were dismissed for failure to state a claim (ECF No. 14), it expanded its surviving declaratory judgment subclaim into 12 antitrust counts (*see* ECF No. 24).

AML's countercomplaint is the mirror image of the antitrust suit recently rejected by Magistrate Judge Lambert in *Okavage*. The brokers not only assert the

same claims, as shown in the chart below, but also make nearly identical allegations of fact and statements of law in their filings.

| | AML's counterclaims (*see* ECF No. 24 on this docket) | Okavage's claims (*see* ECF No. 96 on that docket) |
|---|---|---|
| Unlawful Restraint of Trade (Per Se Analysis) | **Under Section 1 of the Sherman Act:** | |
| | Count I (ECF No. 24, PageID.383) | Count I (ECF No. 96, PageID.1276–1277) |
| | **Under Analogous State Law:** | |
| | Counts IV, VIII (ECF No. 24, PageID.385–386, 388–389 (Michigan, Florida)) | Count IV (ECF No. 96, PageID.1280–1281 (Florida)) |
| Unlawful Restraint of Trade (Rule of Reason) | **Under Section 1 of the Sherman Act:** | |
| | Count II (ECF No. 24, PageID.384) | Count II (ECF No. 96, PageID.1277–1278) |
| | **Under Analogous State Law:** | |
| | Counts V, IX (ECF No. 24, PageID.386, 389) (Michigan, Florida)) | Count V (ECF No. 96, PageID.1281–1282 (Florida)) |
| Attempted Monopolization | **Under Section 2 of the Sherman Act:** | |
| | Count III (ECF No. 24, PageID.384–385) | Count III (ECF No. 96, PageID.1279–1280) |
| | **Under Analogous State Law:** | |
| | Counts VI, X (ECF No. 24, PageID.387, 390 (Michigan, Florida)) | Count VI (ECF No. 96, PageID.1282–1283 (Florida)) |
| State Antitrust Claims | Counts VII, XI (ECF No. 24, PageID.387–388, 390–391 (California Cartwright Act, Texas Free Enterprise and Antitrust Act)) | Count VIII (ECF No. 96, PageID.1284–1285 (Florida Deceptive and Unfair Trade Practices Act)) |
| Declaratory Relief | Count XII (ECF No. 24, PageID.391–392) | Count IX (ECF No. 96, PageID.1286–1288) |

II.

AML's counterclaims fail for the same reasons that Okavage's claims failed.

In an almost 50-page report based largely on Supreme Court precedent, Judge Lambert made the following conclusions, for the following factually based and legally sound reasons. And to the extent that Report was not based on Supreme Court case law, it is consistent with this Circuit's prior holdings. Accordingly, this Court adopts the ruling issued in *Okavage Group v. United Wholesale Mortgage*, and summarizes it below.

### A. Unlawful Restraint of Trade, Section 1 of the Sherman Act (*Okavage*, 2024 WL 982380, at *6–17)

Section 1 of the Sherman Act prohibits "unreasonable" restraints on trade. *See* 15 U.S.C. § 1; *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997). Two frameworks exist for determining whether an alleged restraint is unreasonable: (1) the per se rule and (2) the rule of reason. *See Nw. Wholesale Stationers, Inc. v. Pac. Stationary & Printing Co.*, 472 U.S. 284, 289 (1985).

The per se rule is applied "reluctantly and infrequently," *In re Se. Milk Antitrust Litig.*, 739 F.3d 262, 271 (6th Cir. 2014) (citing *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886–87 (2007)), because it creates a "conclusive presumption" of illegality, *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 906 (6th Cir. 2003) (quoting *Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 344 (1982)). "If a court determines that a practice is illegal *per se*, no examination of the practice's impact on the market or the procompetitive justifications for the practice is necessary for finding a violation of antitrust law." *NHL Players' Ass'n v.*

*Plymouth Whalers Hockey Club*, 325 F.3d 712, 718 (6th Cir. 2003). "Most restraints are evaluated using a 'rule of reason,'" *In re Cardizem*, 332 F.3d at 906 (citing *State Oil*, 522 U.S. at 10)); *see Texaco, Inc. v. Dagher*, 547 U.S. 1, 5 (2006), which is a more flexible balancing approach, *see In re Cardizem*, 332 F.3d at 907 (citing *Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49–50 (1977)).

### 1. Per Se Analysis (*Okavage*, 2024 WL 982380, at *7–15)

Rimmed hub-and-spoke conspiracies (vertical agreements joined by horizontal agreements) are among the few trade restraints considered per se illegal. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 435–36 (6th Cir. 2008); *see NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1959). "Plaintiff claims . . . that it plausibly alleges a hub-and-spoke conspiracy via agreement amongst the brokers." *Okavage*, 2024 WL 982380, at *8; (*see also* ECF No. 31, PageID.511–512.) But it has not. *See Okavage*, 2024 WL 982380, at *8–10.

First, "plaintiff does not plausibly allege any horizontal agreement between each spoke (the brokers); only a hub (UWM) and vertical agreements between it and each spoke (the brokers)." *Id.* at *10; *see Total Benefits*, 552 F.3d at 435–36; *Expert Masonry, Inc. v. Boone County*, 440 F.3d 336, 344–45 (6th Cir. 2006). Nor can the broker make out a per se violation based on circumstantial evidence, that is, parallel conduct "plus" some further factual enhancement sufficient to "plausibly suggest an agreement to restrain trade in violation of the Sherman Act." *Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equip.*, 48 F.4th 656, 665 (6th Cir. 2022); *see Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d

452, 457 (6th Cir. 2011) ("To plead unlawful agreement, a plaintiff may allege either an explicit agreement to restrain trade, or 'sufficient circumstantial evidence tending to exclude the possibility of independent conduct.'" (quoting *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 907 (6th Cir. 2009) (listing four circumstantial "plus factors" that can demonstrate "concerted action"))).

Second, "[e]ven if plaintiff had sufficiently alleged a horizontal agreement between direct competitors (either between UWM and competing wholesale residential mortgage lender, or as part of a rimmed hub-and-spoke conspiracy)," it "is still not entitled to per se treatment because plaintiff has not plausibly alleged that UWM and the mortgage brokers it conspired with wield 'market power or exclusive access to an element essential to effective competition.'" *Okavage*, 2024 WL 982380, at *11 (quoting *Nw. Wholesale*, 472 U.S. at 296).

A plaintiff must make a preliminary showing that "predominantly anticompetitive effects" were "characteristically likely" to result from the defendant's conduct to justify application of the per se rule. *Id.* (quoting *Nw. Wholesale*, 472 U.S. at 296–97). And conduct is generally unlikely to harm competition if the defendant lacks market power, *see id.* (citing *Nw. Wholesale*, 472 U.S. at 296), which, in turn, "cannot be evaluated unless the Court first defines the relevant market," *Ohio v. Am. Express Co.*, 585 U.S. 529, 543 n.7 (2018) (citing *Leegin*, 551 U.S. at 898).

"Upon review of the [complaint], it is not facially apparent, nor characteristically likely, that the anticompetitive conduct alleged here cut off consumer or broker access to the wholesale mortgage market." *Okavage*, 2024 WL

6

982380, at *12 (citing *Nw. Wholesale*, 472 U.S. at 295). "Further, the [complaint] fails to plausibly allege UWM possessed the dominant position in the marketplace at the time of the ultimatum or after 93% of its mortgage brokers signed the addendum." *Id.* Crucially, "plaintiff fails to adequately plead facts establishing that a residential mortgage from a retail lender, as opposed to [from] a wholesale lender, would not be viewed as reasonable substitutes by a consumer." *Id.* at *13. But even if it had adequately pled that the wholesale lending market is the relevant submarket, "plaintiff still fails to plausibly allege UWM possessed a dominant position in the marketplace. . . . [P]laintiff does not allege sufficient facts . . . that UWM wielded actual market power or exclusive access; or facts on this point that could be developed further in discovery." *Id.* at *14.

"Thus, plaintiff fails to plausibly establish it is entitled to per se treatment." *Id.* at *15.

**2. Rule of Reason Analysis (*Okavage*, 2024 WL 982380, at *15–17)**

"Restraints that are not unreasonable per se are judged under the rule of reason." *Id.* (quoting *Am. Express Co.*, 585 U.S. at 541). Courts apply a three-step burden-shifting analysis to determine whether a particular restraint violates the rule of reason. *See Am. Express Co.*, 585 U.S. at 541; *St. Luke's Hosp. v. ProMedica Health Sys., Inc.*, 8 F.4th 479, 492 (6th Cir. 2021). Plaintiff fails at the first step "because there is no plausible and adequately pleaded connection of the ultimatum to actual or potential harm to competition." *Okavage*, 2024 WL 982380, at *17; *see St. Luke's Hosp.*, 8 F.4th at 492.

7

## B. Attempted Monopolization, Section 2 of the Sherman Act (*Okavage*, 2024 WL 982380, at *17–19)

Attempted monopolization of "any part of the trade or commerce among the several States" violates Section 2 of the Sherman Act. 15 U.S.C. § 2. To state a claim for attempted monopolization, a plaintiff must plausibly allege that "(1) the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Okavage*, 2024 WL 982380, at *17 (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993)); *see Smith Wholesale Co. v. Philip Morris USA, Inc.*, 219 F. App'x 398, 409 (6th Cir. 2007). Because competition benefits "the working of the market" and thus the public, a plaintiff must allege facts that support harm to the competitive *process*, and thus harm to consumers, rather than harm to any individual competitor. *See Spectrum* Sports, 506 U.S. at 459; *Spirit Airlines, Inc. v. Nw. Airlines, Inc.*, 431 F.3d 917, 931–32 (6th Cir. 2005).

If the alleged monopolist does not possess enough potential power in the relevant market to harm competition, a Section 2 claim cannot be made out. *See Okavage*, 2024 WL 982380, at *18. "Market strength that approaches monopoly power . . . is a necessary element for showing a dangerous probability of achieving monopoly power in an attempt to monopolize case." *Smith Wholesale Co.*, 219 F. App'x at 410 (citing *Tarrant Serv. Agency, Inc. v. Am. Standard, Inc.*, 12 F.3d 609, 615 (6th Cir. 1993)). And plaintiff "fails to plead that defendants possessed enough market power" in either the overall (relevant) mortgage market (11% share alleged) or the wholesale mortgage market (38% alleged) "to pose a danger of monopolization."

8

*Okavage*, 2024 WL 982380, at *18; *see In re Se. Milk Antitrust Litig.*, 801 F. Supp. 2d 705, 725 (E.D. Tenn. 2011) ("In the Sixth Circuit, it appears that market share is a 'starting point' in assessing market power and that the threshold is, indeed, very high." (collecting cases)).

Specific intent, the second element of an attempted monopolization claim, was also not plausibly alleged. "Even if plaintiff adequately alleged the relevant market, and that UWM has a dangerous possibility of achieving market power, . . . it still fails to sufficiently plead defendants 'engaged in predatory or anticompetitive conduct with . . . a specific intent to monopolize' for the reasons explained in the rule of reason analysis above." *Okavage*, 2024 WL 982380, at *19 (second omission in original) (quoting *Spectrum Sports*, 506 U.S. at 456).

### C. State Antitrust & Declaratory Relief Claims (*Okavage*, 2024 WL 982380, at *20)

Judge Lambert concluded, *see id.* at *20, and the parties here agree (*see* ECF No. 27, PageID.435; ECF No. 31, PageID.524), that the broker's mirror-image state antitrust (counter)claims and the declaratory-judgment (counter)claim rely on, and rise and fall with, the federal antitrust (counter)claims. "Because the Court previously found the federal antitrust violations as alleged are insufficient, [it] need not reach the question of whether the acts as alleged" violated the state antitrust laws or whether plaintiff states a claim for declaratory relief. *Okavage*, 2024 WL 982380, at *20.

## III.

In conclusion, this Court finds that Judge Lambert's conclusions are factually based, legally sound, consistent with Sixth Circuit precedent, and equally applicable here as in *Okavage*. The Court will adopt that Report's findings and GRANT UWM's motion to dismiss (ECF No. 27).

The Court recognizes that objections to Judge Lambert's Report and Recommendation have been filed. And an appeal is likely, even if the district court affirms the Report. If her findings were to be reversed, this Court would consider those rulings and whether they merit reconsideration of this one.

SO ORDERED.

Dated: March 29, 2024

                                           s/Laurie J. Michelson
                                           LAURIE J. MICHELSON
                                           UNITED STATES DISTRICT JUDGE