IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED WHOLESALE MORTGAGE, LLC | |
| *Plaintiff/Counter-Defendant*, | Case No. 22-cv-10228 |
| v. | Hon. Laurie J. Michelson |
| AMERICA'S MONEYLINE, INC., | |
| *Defendant/Counter-Plaintiff*. | |

## AMERICA'S MONEYLINE, INC.'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL COUNTERCLAIM

55666937.8

America's Moneyline, Inc. ("AML"), by and through its attorneys, files this Motion for leave to file the proposed Supplemental Counterclaim attached to the Memorandum as Exhibit A. In support of this Motion, AML states as follows:

1.     This case is brought to challenge a group boycott initiated and coerced by UWM, which cut off thousands of mortgage brokers from an opportunity to refer their customers to the mortgage lender of their choice. UWM's ultimatum and the resulting boycott required brokers to cease doing business with Fairway Mortgage and Rocket Pro TPO or face termination of their business relationship with UWM.

2.     On March 8, 2023, AML filed an Amended Counterclaim ("ACC"). (ECF No. 24.)

3.     On April 19, 2023, UWM filed a Motion to Dismiss America's Moneyline, Inc.'s Amended Counterclaim and Brief in Support. (ECF No. 27.) AML filed a response on June 7, 2023. (ECF No. 31.) On June 21, 2023, UWM filed its reply brief. (ECF No. 32.)

4.     On March 29, 2024, this Court granted UWM's motion to dismiss, adopting in full the Magistrate Judge's Report and Recommendation in *Okavage Grp., LLC v. United Wholesale Mortg., LLC*, No. 21-448, 2024 WL 982380 (M.D. Fla. Feb. 6, 2024) (the "Report"). (ECF No. 35, PageID.620, Opinion and Order Granting United Wholesale Mortgage's Motion to Dismiss Amended Countercomplaint [27]) ("Opinion and Order").

5.     The proposed Supplemental Counterclaim adds new facts occurring after the briefing described above (most of them after the Opinion and Order) that directly address the rationale in the Report for recommending dismissal. AML therefore believes that this new evidence should lead to a different decision on dismissal. Allowing supplementation of the ACC to include these facts at this time would therefore promote judicial economy and permit the merits of AML's allegations to be tested on the basis of a complete record. Since discovery has not yet begun, supplementation would not result in undue delay and would not prejudice UWM.

6.     This Motion is based on and supported by AML's Memorandum of Law in Support of Its Motion for Leave to File Supplemental Counterclaim.

WHEREFORE, AML respectfully requests that the Court grant AML leave to file the Supplemental Counterclaim.

Respectfully submitted,

Dated: May 6, 2024                    By: /s/Jeffrey Morganroth (w/permission)
                                       Jeffrey B. Morganroth (P41670)
                                       Jason R. Hirsch (P58034)
                                       **MORGANROTH & MORGANROTH, PLLC**
                                       344 North Old Woodward Avenue, Suite 200
                                       Birmingham, Michigan 48009
                                       (248) 864-4000
                                       jmorganroth@morganrothlaw.com
                                       jhirsch@morganrothlaw.com

                                       By: /s/Matthew D. Novello (w/permission)
                                       Matthew D. Novello (P63269)

**NOVELLO & ASSOCIATES, PC**
3542 Lakeview
Highland, Michigan 48356
mnovello@novellolawfirm.com

By: /s/David A. Ettinger
David A. Ettinger (P26537)
**HONIGMAN LLP**
660 Woodward Avenue, Suite 2290
Detroit, MI 48226
(313) 465-7368
DEttinger@honigman.com

*Attorneys for America's Moneyline, Inc.*

## <u>LOCAL RULE 7.1(a) CERTIFICATION</u>

This will certify that I spoke with counsel for Plaintiff on April 29, 2024, and explained the nature of the motion and its legal basis. Plaintiff's counsel reviewed a draft of the proposed Supplemental Complaint with their client and informed me on Friday, May 3, 2024, that Plaintiff would not concur in the relief requested in this Motion.

Dated: May 6, 2024                    /s/David A. Ettinger_____
                                       David A. Ettinger (P26537)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 6, 2024, a true and accurate copy of the forgoing

was served upon counsel of record via the CM/ECF electronic filing system.

Dated: May 6, 2024                 /s/David A. Ettinger_____

David A. Ettinger (P26537)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE, LLC

      *Plaintiff/Counter-Defendant*,

v.

AMERICA'S MONEYLINE, INC.,

      *Defendant/Counter-Plaintiff*.

Case No. 22-cv-10228

Hon. Laurie J. Michelson

## AMERICA'S MONEYLINE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE SUPPLEMENTAL COUNTERCLAIM

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................i

STATEMENT OF ISSUES PRESENTED.................................................. ii

MOST CONTROLLING AUTHORITY................................................... iii

I.      INTRODUCTION ......................................................................1

II.     OVERVIEW OF *OKAVAGE* REPORT & RECOMMENDATION ..............3

III.    SUMMARY OF SUPPLEMENTAL ALLEGATIONS ................................5

IV.    ARGUMENT..............................................................................7

      A.     Leave to File a Supplemental Counterclaim Should be Freely Granted .............................................................................7

      B.     There Will Be Substantial Benefits to Be Derived From Permitting AML to Supplement the ACC.............................................8

      C.     Additional Factors Weigh in Favor of Granting Leave ......................14

            1.     There Was No Unreasonable Delay and Supplementation Would Not Cause Prejudice to Plaintiff ...................14

            2.     Supplementation Would Not Be Futile.....................................14

V.      CONCLUSION.........................................................................14

i

## STATEMENT OF ISSUES PRESENTED

1.     Whether this Court should grant leave to America's Moneyline, Inc. ("AML") to file a Supplemental Counterclaim to address new facts which have recently arisen which directly address the alleged deficiencies found in the Report and Recommendation in *The Okavage Group, LLC v. United Wholesale Mortgage, LLC, and Matthew Ishbia* (USDC, Middle District of Florida, Case No. 3:21-cv-00448, doc. 112) ("Report") on which this Court relied in its Opinion and Order Granting United Wholesale Mortgage's Motion to Dismiss Amended Countercomplaint [27] (ECF No. 35) ("Opinion and Order"), and where no discovery has yet taken place in the case so that there will be no prejudice to United Wholesale Mortgage, LLC ("UWM") if this motion is granted?

AML answers:                    Yes.

The Court should answer:        Yes.

## <u>MOST CONTROLLING AUTHORITY</u>

**Page(s)**

*McHenry v. Ford Motor Co.*,
  269 F.2d 18 (6th Cir. 1959) ................................................................7

*Nw. Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*,
  472 U.S. 284 (1985)..................................................................3, 11

*Realcomp II, Ltd. v. Federal Trade Commission*,
  635 F.3d 815 (6th Cir. 2011) ..............................................................9

*Spirit Airlines, Inc. v. Northwest Airlines, Inc.*,
  431 F.3d 917 (6th Cir. 2005) ............................................................13

*Tarrant Service Agency, Inc. v. American Standard, Inc.*,
  12 F.3d 609 (6th Cir. 1993) ..............................................................13

*Weisbord v. Michigan State Univ.*,
  495 F. Supp. 1347 (W.D. Mich. 1980) ..........................................7, 14

55666957.18

## I.   __INTRODUCTION__

AML moves for leave to file a Supplemental Counterclaim in this case in the form of Exhibit A, attached hereto. The proposed Supplemental Counterclaim references a number of facts that have only recently come to light that directly address many of the issues addressed in this Court's Opinion and Order and in the Magistrate Judge's Report, relied on by this Court.

First, market analysis recently conducted by Hunterbrook Media and disclosed in the last month has revealed evidence of substantial anticompetitive effects in the wholesale lending market resulting from UWM's Ultimatum to its brokers and the resulting boycott.[1] Second, one of the two targets of the boycott, Fairway Independent Mortgage Corporation ("Fairway"), has shut down its wholesale mortgage operations, and has thereby exited the wholesale market. Third, Mat Ishbia of UWM has made public statements highly probative of UWM's market power and dominance.

In particular, the evidence from the Hunterbrook article reveals that prices increased and choice was significantly reduced after the Ultimatum and boycott began, and that UWM's prices are substantially higher than alternative sources. These facts directly rebut the Report's conclusion that AML failed to adequately

---

[1] *The Lie that Helped Make UWM America's Largest Mortgage Lender*, HUNTERBROOK MEDIA (Apr. 2, 2024), https://hntrbrk.com/uwm/.

allege harm to competition. While AML respectfully believes that the Report's decision and this Court's adoption of it were erroneous for the reasons set forth in its Motion for Reconsideration of Opinion and Order granting United Wholesale Mortgage's Motion to Dismiss Amended Countercomplaint (ECF No. 37), even if those arguments are rejected, AML believes that this new evidence supports denial of the Motion to Dismiss based on the Report's own rationale.

The proposed Supplemental Counterclaim also includes evidence cited in the Hunterbrook article that the number of brokers sending 99% or more of their mortgages to UWM doubled since the Ultimatum. This addresses the Report's, and this Court's, conclusion that the claims here did not involve specific evidence of actions against interest, a key "plus factor" in addressing the "horizontal agreement" element of the *per se* claim. In fact, since the Amended Counterclaim (ECF No. 24) ("ACC") and the proposed Supplemental Counterclaim specifically allege that brokers have an interest in utilizing multiple lending options for their customers, the fact that many more brokers now utilize only UWM shows that they did act against their interests as a result of the Ultimatum.

Fairway's exit is directly relevant to both the issue of competitive effects as well as whether the impact of the boycott was sufficient to justify *per se* illegality. The exit is evidence that the boycott did "cut off access to a supply, facility or market necessary to enable [Fairway] to compete . . ." *Nw. Wholesale Stationers, Inc. v.*

*Pacific Stationery & Printing Co.*, 472 U.S. 284, 294 (1985). It also directly addresses a comment in the Report regarding the continued participation of Fairway and Rocket in the wholesale market.

Mr. Ishbia's new statements relating to UWM's (not the market's) control of its margins, are directly probative of UWM's market power. These statements show that UWM can control its margins and therefore its price, the definition of monopoly power. This evidence should lead to a change in this Court's conclusion regarding market dominance.

Permitting AML to supplement its ACC to include these new facts would permit the Court to address the validity of AML's claims based on all the available evidence, and, AML believes, support denial of the Motion to Dismiss based upon the reasoning in the Report. AML should be granted the opportunity to pursue its claims where this new evidence makes clear that they are, at least, highly plausible. Because discovery has not yet commenced, permitting the Supplemental Counterclaim would not delay this case or prejudice UWM.

## II.   OVERVIEW OF *OKAVAGE* REPORT & RECOMMENDATION

In order to understand the significance of these new factual allegations, it is important to consider the Report's assessment of AML's claims in *Okavage*. As in this case, *Okavage* concerns allegations that UWM's Ultimatum, and the resulting

group boycott of Rocket and Fairway, constituted both a *per se* antitrust violation as well as an unreasonable restraint of trade under a rule of reason analysis.

The Report in *Okavage* rejected Okavage's rule of reason claim on the ground that the complaint failed to sufficiently allege "substantial anticompetitive effects." *Okavage*, 2024 WL 982380, at *15. As the Report explained, anticompetitive effects may be shown by either "1) the potential for genuine adverse effects on competition; or 2) that the behavior had an actual detrimental effect on competition." *Id.* at *16 (citations and quotations omitted). In finding no "direct evidence" of anticompetitive effects, the Report concluded that complaint failed to provide sufficient "underlying facts" to support the allegation that "the ultimatum has increased the costs of mortgage loans[.]" *Id.*

The Report also concluded that the complaint had failed to sufficiently allege that the Ultimatum resulted in the elimination of Rocket or Fairway. *Id.* The Report therefore concluded that "there is no plausible and adequately pleaded connection of the ultimatum to actual or potential harm to competition" in the wholesale mortgage market. *Id.* at *17.

With regard to the *per se* claim, the Magistrate Judge concluded that the *Okavage* complaint failed to sufficiently allege a horizontal agreement among UWM's brokers, or that UWM and the boycotting brokers possessed sufficient market power within the wholesale channel. *Id.* at *12. The Report concluded that

4

the complaint failed to sufficiently allege "plus factors" supporting an inference of agreement. *Id.* at *10. In particular, the Magistrate Judge concluded that allegations that the boycotting brokers were acting against their individual interests—typically a strong plus factor supporting an inference of conspiracy—were too "conclusory." *Id.* at *11.

The Report also rejected the allegations in the Supplemental Class Action Complaint in *Okavage* (referred to by the Florida court as "Third Amended Complaint" or "TAC") regarding the boycott's effects, stating that:

> Upon review of the TAC, it is not facially apparent, nor characteristically likely, that the anticompetitive conduct alleged here cut off consumer or broker access to the wholesale mortgage market.

*Okavage*, 2024 WL 982380, at *12.

As described below, all these alleged deficiencies are directly addressed by the new evidence in AML's proposed Supplemental Counterclaim.

## III. SUMMARY OF SUPPLEMENTAL ALLEGATIONS

The proposed Supplemental Counterclaim adds allegations relating to each of these issues. These include the findings and analysis from the Hunterbrook study, statements by UWM's CEO, Mat Ishbia, during a November 2023 UWM earnings call, and news of Fairway's recent exit from the wholesale market:

1. The Hunterbrook study demonstrated that the prices charged by UWM became substantially greater than alternative prices available in the wholesale market after the Ultimatum and boycott. The study by

5

Hunterbrook Media, *The Lie That Helped Make UWM America's Largest Mortgage Lender*, involved an analysis of 25% of loans closed by UWM for which sufficient data was available, and estimated (after controlling for numerous variables) that since 2020 consumers paid $894 million more as compared to the average priced loan. When compared to the cheapest option, consumers paid $912 million more for UWM loans. The Hunterbrook study controlled for interest rates, month of closing, loan term, dwelling category, loan program, fixed versus adjustable rate, property type and loan type. Proposed Supplemental Counterclaim at ¶106.

2. According to the Hunterbrook analysis, UWM appeared to offer rates 4 basis points below comparable loans in 2020 (before the Ultimatum and boycott). In 2021 and 2022, this pattern reversed and the company appeared to offer loans 3 basis points above comparable loans. UWM rates were one basis point higher than the rates of comparable loans in 2023.

3. The study is evidence that the boycott has also caused costs to increase in the market as a whole. The Hunterbrook study found that lender-specific closing costs in the wholesale channel increased from 0.549% in 2021 to 1.223% in 2023. *Id.* at ¶107. The Ultimatum and boycott commenced on March 4, 2021. *Id.* at ¶37.

4. Additional findings from the Hunterbrook study establish that the boycott has had a substantial impact in diminishing the choices available to consumers from mortgage brokers. The study found that as compared to 2020, before the boycott occurred, in 2023 more than twice as many loan officers sent greater than 99% of their loans to UWM. *Id.* at ¶110. The number sending more than 75% to UWM also doubled.

5. The disclosure that on February 2, 2024, Fairway announced that it was ceasing the sale of mortgages in the wholesale market. *Id.* at ¶96.

6. Mr. Ishbia's recent statement that he can "set the margins daily," and that they are "not market-driven." Instead, industry margins are "completely tied to what UWM does, and others will follow." *Id.* at ¶100.

6

## IV.   ARGUMENT

### A.   Leave to File a Supplemental Counterclaim Should be Freely Granted

Under Federal Rule of Civil Procedure 15(d), the court may "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).[2] As courts in the Sixth Circuit recognize, "[t]he purpose of a supplemental pleading is to set forth new facts that have occurred since the filing of the original pleading and that affect the controversy and the relief sought. Its function is to bring the action 'up to date.'" *Weisbord v. Michigan State Univ.*, 495 F. Supp. 1347, 1351 (W.D. Mich. 1980).

The decision whether to grant leave to file a supplemental pleading "is to be liberally permitted 'when justice so requires.'" *Bromley v. Mich. Educ. Assoc.-NEA*, 178 F.R.D. 148, 153-54 (E.D. Mich. 1998) (citations omitted); *see also McHenry v. Ford Motor Co.*, 269 F.2d 18, 25 (6th Cir. 1959) ("As a general rule plaintiffs should be liberally allowed to set up new facts which really are a part of the original case."); *Stewart v. Shelby Tissue, Inc.*, 189 F.R.D. 357, 362 (W.D. Tenn. 1999) ("[A]pplications for leave to file a supplemental pleading are normally granted.").

---

[2] In contrast, ***amended*** pleadings under Federal Rule of Civil Procedure 15(a) "relate to matters that occurred prior to the filing of the original pleading and entirely replace the earlier pleading." 6A C. Wright, A. Miller, & M.K. Kane, *Federal Practice & Procedure* § 1504 (3d ed.).

7

Indeed, courts have long held that supplemental pleadings are "[s]o useful [and] of such service in the efficient administration of justice that they ought to be allowed as of course, unless some particular reason for disallowing them appears . . . ." *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 28–29 (4th Cir. 1963); *see also Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988) ("The rule is a tool of judicial economy and convenience. Its use is therefore favored.").

In addressing the appropriateness of supplemental allegations, courts typically apply (where relevant) many of the same fairness factors considered on a motion to amend the pleadings under Rule 15(a), such as "(1) undue delay in filing the motion; (2) lack of notice to adverse parties; (3) whether the movant is acting in bad faith, or with a dilatory motive; (4) failure to cure deficiencies by previous amendments; (5) the possibility of undue prejudice to adverse parties; and (6) whether the amendment is futile." *Bromley*, 178 F.R.D. at 154 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Robinson v. Michigan Consol. Gas Co.*, 918 F.2d 579, 591 (6th Cir.1990)). As described below, these factors argue strongly favor supplementation in this case.

### B. There Will Be Substantial Benefits to Be Derived From Permitting AML to Supplement the ACC

The Supplemental Counterclaim will make a critical contribution to this case, because it will add highly relevant and specific factual allegations directly addressing the alleged pleading deficiencies identified by the Report.

8

Most significantly, the Report in *Okavage* rested its dismissal of the rule of reason claim on the ground that the complaint allegedly contained insufficient factual support for its allegations of anticompetitive effects. The Supplemental Counterclaim remedies those alleged insufficiencies by providing substantial additional factual allegations that directly address the Report's conclusion, discussed *supra*, that there were no allegations of increased cost. They also provide evidence of a significant diminution in customer choice. *See Realcomp II, Ltd. v. Federal Trade Commission*, 635 F.3d 815, 829-830 (6th Cir. 2011) (Realcomp's policies were held unlawful by the Sixth Circuit because they "narrow[ed] consumer choice" and "hinder[ed] the competitive process.").[3]

While AML believes that these issues relating to price and cost were more than adequately addressed in the ACC (*see, e.g.*, ECF No. 37 at PageID.652-655), the new allegations add very specific statistical evidence on these issues. This evidence more than plausibly suggests the presence of anticompetitive effects on cost and on choice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

***First***, direct harm to competition can be proven by evidence of factors "such as reduced output, increased prices, or decreased quality in the relevant market . . ."

---

[3] While the data shows choice was diminished for less than half of customers, that is more than sufficient to show significant anticompetitive effects. An effect on 10% of buyers was found sufficient in *Realcomp II*, 635 F.3d at 830.

9

*Ohio v. Am. Express Co.*, 589 U.S. 529, 542 (2018). The Supreme Court in *Amex* also stated that where there is evidence of market power, "indirect evidence" could also be used to show anticompetitive effects. Indirect evidence is "proof of market power plus *some evidence* that the challenged restraint harms competition." *Id.* (citations omitted) (emphasis added). The new allegations indicate that consumers paid higher prices due to the Ultimatum and boycott, and that the greater number of consumers who utilized UWM as a result of the Ultimatum and boycott paid UWM's higher prices.

**Second**, in addressing the Rule of Reason claims, the Report concluded that there were no allegations "that Rocket and Fairway . . . no longer participate in the wholesale mortgage market." *Okavage*, 2024 WL 982380, at *16. The Supplemental Complaint specifically refers to the exit from the market of Fairway, one of the targets of UWM's Ultimatum, which has further enhanced UWM's dominance. Proposed Supplemental Counterclaim at ¶96.

**Third**, in finding no basis for a *per se* violation, the Report concluded that it was neither "apparent" nor "likely" that the conduct "cutoff consumer or broker access to the wholesale mortgage market." *See* Report, *supra* at p.27, as well as the more accurate formulation of the test set forth in *Nw. Stationers* that boycotts considered *per se* "often cut off access to a supply, facility or market necessary to enable the boycotted firm to compete…" 472 U.S. at 294. The fact that Fairway has

been driven from the wholesale market more than plausibly suggests that UWM's Ultimatum cut Fairway off from a supply or facility necessary to allow it to compete, i.e. the patronage of a sufficient number of mortgage brokers.

*Fourth*, the Report also concluded that the complaint had failed to plausibly allege a horizontal agreement among the 93% of brokers who agreed to UWM's Ultimatum. *Okavage*, 2024 WL 982380, at *11. In support of this conclusion, the Magistrate Judge dismissed as "conclusory" allegations that the boycotting brokers were acting against their individual interests, which is the most important "plus factor" supporting an inference of conspiracy. *Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995, 1009 (6th Cir. 1999).

AML believes that the ACC already plausibly suggests that brokers acted against their interests. *See* ECF No. 27 at PageID.640 (brokers shifted to UWM after Ultimatum despite their prior decision to move more business to Rocket). But the Supplemental Counterclaim provides important new evidence on this issue. It cites the Hunterbrook study finding that the Ultimatum doubled the number of brokers sending more than 99% of their loans to UWM. This was against their clear interest as "independent" brokers to offer multiple options to consumers. *See* proposed Supplemental Counterclaim ¶¶20 ("The broker's value rests in his or her sophistication and knowledge of mortgage options that various wholesale lenders offer."); 21 ("As UWM stated in its most recent annual report, 'Independent

11

Mortgage Brokers are able to provide borrowers with multiple options on product structure and pricing rather than being rooted in a single platform offering, which we believe empowers borrowers and enhances their borrowing experience.'"); 111 ("AIME further states on its website that mortgage brokers 'work for the borrower, not the bank. Independent mortgage brokers have flexibility to shop rates from multiple lenders[.]'").[4]

***Finally***, the Supplemental Counterclaim also addresses the Report's conclusion that the ACC "fail[ed] to plausibly allege UWM possessed the dominant position in the marketplace at the time of the ultimatum or after 93% of its mortgage brokers signed the addendum." *Okavage*, 2024 WL 982380, at *12. In reaching the conclusion, the Report relied upon a market the figure contrary to the more recent figure in the ACC. *See* ECF no. 37, PageID.649-650. However, proof of monopoly power or market power does not require proof of market share, which is only a "shortcut" to a direct analysis of monopoly power. *Tarrant Service Agency, Inc. v. American Standard, Inc.*, 12 F.3d 609, 615 (6th Cir. 1993). Control over price is one of the definitions of monopoly power. *Spirit Airlines, Inc. v. Northwest Airlines, Inc.*,

---

[4] These allegations were also in the ACC. Amended Counterclaim, ECF No. 24 at PageID.352, 377, ¶¶20, 21, 107. But the contrast between these facts and the newly alleged shifts in business to near exclusive use of UWM is new evidence.

431 F.3d 917, 935 (6th Cir. 2005) (monopoly power is "the power to 'control prices or exclude competition.'" (citation omitted)).

The new evidence does not address the Report's relevant market analysis, though AML believes that issue was clearly wrongly decided. *See* ECF No. 37, PageID.644-648. But   since market share evidence is not necessary to prove dominance, UWM's share of the wholesale market is not necessary to the analysis.

UWM's ability to impose prices above competitive levels while also doubling the number of brokers who send the vast majority of their business to UWM is plainly indicative of market power. Mr. Ishbia's recent statements that UWM's margins are "not market-driven," but instead are set by UWM "on a daily basis" "and others will follow" and that industry margins are "completely tied to what UWM does," are even more directly probative of UWM's control over price. Proposed Supplemental Counterclaim at ¶110. *See* Areeda & Hovenkamp, *Antitrust Law* ¶565c2 (market dominance may be shown where a firm is able "profitably to increase price-cost margins above competitive levels without losing excessive sales to rivals").

For all these reasons, even if his Court rejects the arguments in AML's Motion for Reconsideration regarding the adequacy of the ACC, the proposed Supplemental Counterclaim provides critical additional support for the adequacy of the counterclaim. Permitting AML to timely "set forth new facts . . . to bring the action

'up to date'" will thus promote the most efficient disposition of the controversy on the basis of the full universe of facts at issue. *Weisbord*, 495 F. Supp. at 1351.

### C.   Additional Factors Weigh in Favor of Granting Leave

#### 1.   There Was No Unreasonable Delay and Supplementation Would Not Cause Prejudice to Plaintiff

There is no reason to deny leave here. Neither delay nor undue prejudice can be shown here. Mr. Ishbia's admissions in November 2023 occurred long after the filing of the ACC and after briefing on Plaintiff's Motion to Dismiss had been submitted. Fairway's exit from the market was announced just two months ago. And the Hunterbrook study was issued earlier this month. Where discovery has not yet begun, there can be no conceivable prejudice to UWM by permitting AML to supplement the ACC. *Mustafa v. Ford Motor Co.*, -- F.3d --, 2023 WL 5808396, at *5 (E.D. Mich. 2023).

#### 2.   Supplementation Would Not Be Futile

Futility can represent a defense to supplemental allegations, but such a defense is disfavored. Here, the proposed supplemental allegations are plainly relevant, material, and substantial. Indeed, they directly address what the Report (and this Court) regarded as pleading deficiencies.

## V.   CONCLUSION

For the foregoing reasons, AML respectfully submits that supplementation should be permitted.

14

Dated: May 6, 2024

By: /s/Jeffrey B. Morganroth
Jeffrey B. Morganroth (P41670)
Jason R. Hirsch (P58034)
**MORGANROTH & MORGANROTH, PLLC**
344 North Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(248) 864-4000
jmorganroth@morganrothlaw.com
jhirsch@morganrothlaw.com

By: /s/David A. Ettinger
David A. Ettinger (P26537)
**HONIGMAN LLP**
660 Woodward Avenue, Suite 2290
Detroit, MI 48226
(313) 465-7368
DEttinger@honigman.com

Matthew D. Novello (P63269)
**NOVELLO & ASSOCIATES, PC**
3542 Lakeview
Highland, Michigan 48356
mnovello@novellolawfirm.com

*Attorneys for America's Moneyline, Inc.*

15

## <u>LOCAL RULE 7.1(a) CERTIFICATION</u>

This will certify that I spoke with counsel for Plaintiff on April 29, 2024, and explained the nature of the motion and its legal basis. Plaintiff's counsel reviewed a draft of the proposed Supplemental Complaint with their client and informed me on Friday, May 3, 2024, that Plaintiff would not concur in the relief requested in this Motion.

Dated: May 6, 2024                         /s/David A. Ettinger_____
                                                    David A. Ettinger (P26537)

1

55666957.18

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE, LLC

*Plaintiff/Counter-Defendant*,

v.

AMERICA'S MONEYLINE, INC.,

*Defendant/Counter-Plaintiff*.

Case No. 22-cv-10228

Hon. Laurie J. Michelson

**BRIEF FORMAT CERTIFICATION FORM**

I, David A. Ettinger, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

- ☒ the brief contains a statement regarding concurrence, *see* LR 7.1(a);
- ☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);
- ☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;
- ☒ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;
- ☒ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);
- ☒ deposition transcripts have been produced in their entirety and not in miniscript, *see* Case Management Requirements § III.A;
- ☒ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

1

55666957.18

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

Dated: May 6, 2024    /s/David A. Ettinger
         David A. Ettinger (P26537)

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 6, 2024, a true and accurate copy of the forgoing

was served upon counsel of record via the CM/ECF electronic filing system.

Dated: May 6, 2024                    /s/David A. Ettinger
                                      David A. Ettinger (P26537)

3