# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED WHOLESALE MORTGAGE, LLC | |
| *Plaintiff,* | Case No. 2:22-cv-10228 |
| | Honorable Laurie J. Michelson |
| v. | Magistrate Judge Elizabeth A. Stafford |
| AMERICA'S MONEYLINE, INC. | |
| *Defendant.* | |

## UNITED WHOLESALE MORTGAGE, LLC'S RESPONSE IN OPPOSITION TO AMERICA'S MONEYLINE, INC.'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL COUNTERCLAIM

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES.................................................................. ii

STATEMENT OF THE ISSUE PRESENTED ...................................... iv

CONTROLLING OR MOST APPROPRIATE AUTHORITY ..............................v

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................2

   I.    Legal Standard........................................................................2

   II.   AML's Motion to Supplement Is Futile......................................3

       A. This Court Dismissed the Amended Counterclaim on Multiple Grounds Not Cured by AML's Supplemental Counterclaim. ..............4

       B. AML Has Not Cured Its Failure to Plead Facts Supporting a Separate "Wholesale" Mortgage Market. ............................................6

       C. AML Has Not Cured Its Other Pleading Defects. ...............................7

   III.  AML's Motion Should Be Denied on Grounds of Bad Faith and Prejudice. 14

CONCLUSION ..................................................................................16

# <u>INDEX OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bassett v. Nat'l Coll. Athletic Ass'n*,
528 F.3d 426 (6th Cir. 2008) .............................................................................12

*Bormuth v. Whitmer*,
548 F. Supp. 3d 640 (E.D. Mich. 2021) ...............................................................3

*Coleman v. Gullet*,
No. 12-CV-10099, 2013 WL 4026839 (E.D. Mich. Aug. 6, 2013) ......................3

*Colvin v. Caruso*,
605 F.3d 282 (6th Cir. 2010) .............................................................................15

*ComSpec Int'l, Inc. v. Uniface B.V.*,
2:20-cv-10067, 2021 WL 4169726 (E.D. Mich. Sep. 14, 2021) ..........................7

*Escue v. United Wholesale Mortgage*,
No. 2:24-cv-10853 (E.D. Mich. Apr. 2, 2024) ...................................................15

*Found. for Interior Design Educ. Rsrch. v. Savannah Coll. of Art Science*,
244 F.3d 521 (6th Cir. 2001) .........................................................................7, 12

*Grace v. Center for Auto Safety*,
155 F.R.D. 591 (E.D. Mich. 1994)......................................................................16

*Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Stds. for Athletic Equip.*,
48 F. 4th 656 (6th Cir. 2022) ..............................................................................11

*In re Cardizem CD Antitrust Litig.*,
105 F. Supp. 2d 618 (E.D. Mich. 2000) ...............................................................7

*Konica Minolta Bus. Sols., United States, Inc. v. Lowery Corp.*,
No. 15-11254, 2018 WL 8807180 (E.D. Mich. Sept. 28, 2018) ..........................3

*Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*,
588 F.3d 908 (6th Cir. 2009) ................................................................................6

*Marketing Displays, Inc. v. Traffix Devices, Inc.*,
967 F. Supp. 953 (E.D. Mich. 1997) ..................................................................14

*Mich. Division-Monument Builders v. Mich. Cemetery Ass'n*,
458 F. Supp. 2d 474 (E.D. Mich. 2006) ............................................................6, 7

*Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*,
325 F.3d 712 (6th Cir. 2003) ............................................................................6, 9

*Neumann v. Neumann*,
 310 F. Supp. 3d 823 (E.D. Mich. 2018) ...............................................................15

*Ogden v. Little Caesar Enters.*,
 393 F. Supp. 3d 622 (E.D. Mich. 2019) ............................................................10

*Ohio v. Am. Express*,
 238 S. Ct. 2274 (2018) .....................................................................................10

*Pasley v. Caruso*,
 No. 10-CV-11805, 2012 WL 994771 (E.D. Mich. Feb. 10, 2012) .......................3

*Rose v. Hartford Underwriters Ins. Co.*,
 203 F.3d 417 (6th Cir. 2000) ..............................................................................3

*Smith v. Burns Clnic Med. Ctr., P.C.*,
 779 F.2d 1173 (6th Cir. 1985) ..........................................................................14

*Spies v. Voinovich*,
 48 F. App'x 520 (6th Cir. 2002) ..........................................................................3

*Spirit Airlines, Inc. v. Northwest Airlines, Inc.*,
 431 F.3d 917 (6th Cir. 2005) ............................................................................14

*Tarrant Service Agency, Inc. v. American Standard, Inc.*,
 12 F.3d 609 (6th Cir. 1993) ..............................................................................14

*The Okavage Group, LLC v. United Wholesale Mortgage, LLC, and Mathew Ishbia*,
 Case No. 3:21-cv-00448, 2022 WL 17478298 (M.D. Fla. July 22, 2022) ...........2

*United States v. Blue Cross Blue Shield of Michigan*,
 809 F. Supp. 2d 665 (E.D. Mich. 2011) ............................................................12

*Worldwide Basketball & Sport Tours, Inc. v. Nat'l Coll. Athletic Ass'n*,
 388 F.3d 955 (6th Cir. 2004) ..........................................................................7, 9

**Rules**

Fed. R. Civ. P. 15(d) .........................................................................................2, 15

## **STATEMENT OF THE ISSUE PRESENTED**

1.      Whether the Court should exercise its discretion to deny Defendant/ Counter-Plaintiff America's Moneyline, Inc. ("AML") leave to supplement its already-dismissed Amended Counterclaim, where: (a) supplementation is futile because the putative "new facts" presented in the proposed Supplemental Counterclaim do not address the central grounds for dismissal set forth in the Court's Opinion and Order Granting United Wholesale Mortgage's ("UWM") Motion to Dismiss Amended Countercomplaint, ECF No. 35, PageID.611-620 ("Dismissal Order"); and (b) supplementation is made in bad faith and is prejudicial because AML does not disclose that its "new facts" are based largely on a smear campaign launched by the media arm of a hedge fund that has "shorted" the stock of UWM, instead falsely characterizing the hedge fund's assertions against UWM as an "analysis" or "study" without divulging its source's direct financial conflict of interest.

UWM answers:                   Yes.

The Court should answer:        Yes.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Stds. for Athletic Equip.*, 48 F. 4th 656 (6th Cir. 2022).

*Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908 (6th Cir. 2009).

*Worldwide Basketball & Sport Tours, Inc. v. Nat'l Coll. Athletic Ass'n*, 388 F.3d 955 (6th Cir. 2004).

*Tarrant Service Agency, Inc. v. American Standard, Inc.*, 12 F.3d 609 (6th Cir. 1993).

*Bormuth v. Whitmer*, 548 F. Supp. 3d 640 (E.D. Mich. 2021).

*Ogden v. Little Caesar Enters.*, 393 F. Supp. 3d 622 (E.D. Mich. 2019).

*Konica Minolta Bus. Sols., United States, Inc. v. Lowery Corp.*, No. 15-11254, 2018 WL 8807180 (E.D. Mich. Sept. 28, 2018).

*Pasley v. Caruso*, No. 10-CV-11805, 2012 WL 994771 (E.D. Mich. Feb. 10, 2012).

*United States v. Blue Cross Blue Shield of Michigan*, 809 F. Supp. 2d 665 (E.D. Mich. 2011).

*Mich. Division-Monument Builders v. Mich. Cemetery Ass'n*, 458 F. Supp. 2d 474 (E.D. Mich. 2006).

# INTRODUCTION

Defendant/Counter-Plaintiff America's Moneyline, Inc. ("AML") seeks permission to file a Supplemental Counterclaim to replace the Amended Counterclaim this Court dismissed six weeks ago. *See* Opinion and Order Granting United Wholesale Mortgage's Motion to Dismiss Amended Counterclaim, ECF No. 35, PageID.611-620 (the "Dismissal Order"). The rationale for AML's request is its ostensible discovery of "new facts" that it asserts "should lead to a different decision on dismissal." Motion for Leave to File Supplemental Counterclaim, ECF No. 41, PageID.692 ("Motion to Supplement" or "Mot."). These "new facts" consist largely of assertions made by the media arm of a hedge fund, Hunterbrook Capital ("Hunterbrook"), which has launched a smear campaign against Plaintiff/Counter-Defendant United Wholesale Mortgage, LLC ("UWM") while "shorting" UWM's stock and going "long" on the stock of one of UWM's competitors.

AML asks to supplement its pleadings even as it insists by a separate filing that its original Amended Counterclaim was sufficient as pled. More than a month before filing the present Motion to Supplement, AML submitted to the Court a Motion for Reconsideration of the Dismissal Order, ECF No. 37, PageID.624-658 (the "Motion for Reconsideration"), arguing the Dismissal Order had been wrongly decided. Thus, AML is simultaneously seeking to "supplement" an inoperative pleading while at the same time contending that pleading is sufficient as originally

drafted.

AML's motion should be denied as futile, bad faith, and prejudicial. Its asserted "new facts" neither address nor cure the grounds for dismissal set forth in this Court's Dismissal Order, rendering supplementation futile. Moreover, the "new facts" AML seeks to add are part of Hunterbrook's orchestrated media campaign aimed at artificially depressing UWM's stock value, yet AML never discloses Hunterbrook's transparently self-interested bet against UWM in the financial markets. The Court should not allow itself or the judicial process to be dragged into a market manipulation scheme under the guise of a counterclaim.

## ARGUMENT

### I.   Legal Standard

Under Rule 15(d), this Court "may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). AML seeks to supplement on the grounds that new "facts" have "only recently come to light" that purportedly address parts of the Report and Recommendation in *The Okavage Group, LLC v. United Wholesale Mortgage, LLC, and Mathew Ishbia,* Case No. 3:21-cv-00448, 2022 WL 17478298 (M.D. Fla. July 22, 2022) (the "Report"), which this Court adopted and incorporated in the Dismissal Order.

The "same standard of review and rationale apply" to a motion to supplement

under Rule 15(d) as to a motion to amend under Rule 15(a). *Bormuth v. Whitmer*, 548 F. Supp. 3d 640, 646 n.4 (E.D. Mich. 2021) (quoting *Spies v. Voinovich*, 48 F. App'x 520, 527 (6th Cir. 2002)). The Court should be mindful that "the non-moving party might be prejudiced by supplementation, adding post-complaint claims may be judicially inefficient, and the supplemental claims may be futile because they fail to state a claim upon which relief may be granted." *Id*. at 646 (quoting *Coleman v. Gullet*, No. 12-CV-10099, 2013 WL 4026839, at *5 (E.D. Mich. Aug. 6, 2013) (Michelson, M.J.)). Thus, supplementation may be denied where it would not "remedy the deficiencies in the original complaint." *Id*. (citation and internal quotation omitted). The Court should deny leave "if the supplemental complaint would be futile," "would result in undue prejudice to the opposing party," or exhibits "bad faith." *Pasley v*. *Caruso*, No. 10-CV-11805, 2012 WL 994771, at *12 (E.D. Mich. Feb. 10, 2012) (citation and internal quotation marks omitted).

## II.    AML's Motion to Supplement Is Futile.

AML's proposed Supplemental Counterclaim is futile because AML's "new facts" still "could not withstand a [Rule] 12(b)(6) motion to dismiss" and would not change the outcome of the Dismissal Order. *Konica Minolta Bus. Sols., United States, Inc. v. Lowery Corp.*, No. 15-11254, 2018 WL 8807180, *1 (E.D. Mich. Sept. 28, 2018) (quoting *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)).

## A. This Court Dismissed the Amended Counterclaim on Multiple Grounds Not Cured by AML's Supplemental Counterclaim.

The proposed Supplemental Counterclaim is futile because it does not cure the critical defects leading this Court to dismiss the Amended Counterclaim. Consistent with the Report in *Okavage* and Sixth Circuit precedent, this Court dismissed the "mirror image" claims of the Amended Counterclaim for four fundamental reasons. Dismissal Order, ECF No. 35, at PageID.612-13.

First, the Dismissal Order finds that AML failed to allege a per se restraint of trade or rimmed hub-and-spoke conspiracy because AML "does not plausibly allege any horizontal agreement" between UWM's brokers, does not make out a per se violation based on "plus" factors, does not allege that UWM and its brokers wielded "market power or exclusive access to an element essential to effective competition," does not allege that UWM's conduct "cut off consumer or broker access to the wholesale mortgage market," and does not allege that UWM "possessed the dominant position in the marketplace[.]" *Id*. at PageID.615-17. And "[c]rucially," AML failed to adequately plead that wholesale and retail mortgages "would not be viewed as reasonable substitutes by a consumer," meaning the relevant market is all residential mortgages, not just wholesale residential mortgages. *Id*. at PageID.617.

Second, AML failed to allege a restraint of trade under the rule of reason because it failed to plead any connection of the so-called "ultimatum" to "actual or potential harm to competition." *Id*. at PageID.617.

4

Third, AML failed to plead attempted monopolization because it failed to allege UWM possessed "enough potential power in the relevant market to harm competition," either in "the overall (relevant) mortgage market (11% share alleged)," or the "wholesale mortgage market (38% alleged)." *Id*. at PageID.618. AML also failed to allege "a specific intent to monopolize[.]" *Id*. at PageID.619.

Fourth, the Court found AML's "mirror-image state antitrust" claims and declaratory judgment claim "rise and fall with" the federal claims. *Id*.

AML's proposed Supplemental Counterclaim contains six new or substantively amended paragraphs purporting to "address" these grounds:

- Paragraph 61 alleges the so-called "boycott" has been "successful in driving Fairway from the wholesale market," because Fairway announced it was ceasing wholesale mortgages on February 2, 2024;

- Paragraph 100 adds quotes from Mr. Ishbia that he can "set the margins daily," that they are "not market driven," and that industry margins are "completely tied to what UWM does, and others will follow";

- Paragraphs 106 to 108 and 111 add multiple references to a so-called "Hunterbrook study" and "Hunterbrook analysis" asserting that consumers paid more for UWM mortgages compared to "other available loans," UWM's rates were higher than "comparable loans," lender closing costs increased from 2021 to 2023, and the number of loan officers sending more than 75% or 99% of their loans to UWM more than doubled from 2020 to 2023.

Mot., Ex. A, at PageID.729, 740, 742-44. As explained below, these new allegations do not cure central bases for dismissal in the Dismissal Order.

### B. AML Has Not Cured Its Failure to Plead Facts Supporting a Separate "Wholesale" Mortgage Market.

As a dispositive threshold matter, AML concedes its "new evidence" fails to "address the Report's market analysis" (Mot. at 13), referring to the finding that wholesale and retail mortgages are "reasonable substitutes" and thus the "relevant market" is the market of *all* residential mortgages, not just wholesale residential mortgages. Dismissal Order at PageID.617-18 (citing Report at *12-14, *18). AML simply asserts that this question was "clearly wrongly decided" and incorporates its Motion for Reconsideration. Mot. at PageID.702. But the Court correctly decided the relevant market and its ruling is fatal to all of AML's claims.

If AML "lacks the ability to define" its asserted "relevant market," its antitrust claims cannot proceed. *Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 919 (6th Cir. 2009) (collecting cases); *see also Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 719-20 (6th Cir. 2003) (similar). AML bears the burden of pleading the relevant market. *Ky. Speedway*, 588 F.3d at 916. Its failure to do so requires dismissal of its claims as facially insufficient. *See Mich. Division-Monument Builders v. Mich. Cemetery Ass'n*, 458 F. Supp. 2d 474, 482 (E.D. Mich. 2006).

As both the Report and the Dismissal Order correctly held, the "essential test" of a relevant market is interchangeability. *Ky. Speedway*, 588 F.3d at 916-17. That test is "judged from the consumers' perspective." *In re Cardizem CD Antitrust Litig.*,

6

105 F. Supp. 2d 618, 680 (E.D. Mich. 2000). AML's Supplemental Counterclaim, like its Amended Counterclaim, does not even attempt to plead the relevant market, address interchangeability, or explain why wholesale and retail mortgages would not be reasonably substitutable from the consumer's perspective. *See* Mot., Ex. A. Thus, as this Court found in the Dismissal Order, AML "fails to adequately plead facts" establishing that wholesale and retail mortgages "would not be viewed as reasonable substitutes by a consumer." Dismissal Order, ECF No. 41, at PageID.617.

AML's continued failure to plead facts supporting its assertion of a separate wholesale mortgage market is alone sufficient for the Court to deny the Motion to Supplement. Because the Supplemental Counterclaim, like the Amended Counterclaim, "contains no allegations whatsoever relating to the rule of interchangeability or to substitute products," it fails to plead its asserted market. *Mich. Division-Monument Builders*, 458 F. Supp. 2d at 483. *See also Found. for Interior Design Educ. Rsrch. v. Savannah Coll. of Art Science*, 244 F.3d 521, 530 (6th Cir. 2001); *ComSpec Int'l, Inc. v. Uniface B.V.*, 2:20-cv-10067, 2021 WL 4169726, at *1 (E.D. Mich. Sep. 14, 2021). AML has "failed to define the relevant market," and it "cannot prevail" without doing so. *Worldwide Basketball & Sport Tours, Inc. v. Nat'l Coll. Athletic Ass'n*, 388 F.3d 955, 963-64 (6th Cir. 2004).

## C.  AML Has Not Cured Its Other Pleading Defects.

The Supplemental Counterclaim also fails to address other central grounds for

the Dismissal Order. AML's labored efforts to demonstrate a different result under its "new facts" merely reinforce the continued insufficiency of its pleadings.

The Supplemental Counterclaim wholly ignores the Dismissal Order's findings that: (1) AML has failed to allege a per se restraint of trade or rimmed hub-and-spoke conspiracy because it does not allege any horizontal agreement between UWM's brokers (Dismissal Order, ECF No. 35, at PageID.615); (2) AML has failed to plead UWM's exclusive access to any element essential to competition (*id*. at PageID.616); (3) AML has not alleged that UWM's conduct cut off "consumer or broker access" to the wholesale mortgage market (*id*. at PageID.616-17); (4) AML has not alleged sufficient market share in the relevant residential "mortgage market" (11%) or even AML's asserted "wholesale mortgage market" (38%) to pose a danger of monopolization (*id*. at PageID.618); (5) AML has not alleged "a specific intent to monopolize" (*id*. at PageID.619); and (6) AML's "mirror-image" state antitrust and declaratory judgment claims "rise and fall with" the federal claims (*id*.). The Motion to Supplement does not gainsay any of these findings. Again, that alone is sufficient to sustain the Dismissal Order and deny the Motion to Supplement.

AML asserts incorrectly that its "new facts" address other aspects of the Dismissal Order. It takes scattershot aim at discrete excerpts from the Report or Dismissal Order and attempts to match AML's new allegations to select parts of the Court's separate legal analyses for each claim in one lumped argument. *See* Mot.,

8

ECF No. 41, at PageID.690-92, 697-703. These efforts fail to revive any of AML's claims.

AML asserts that its Supplemental Counterclaim "remedies" the Amended Counterclaim's failure to plead facts demonstrating anticompetitive effects from UWM's All-In Initiative. *Id.* at PageID.698. But that question cannot be separated from the relevant market analysis. The rule of reason requires AML to plead "that the conduct complained of 'produces significant anticompetitive effects ***within the relevant product and geographic markets***.'" *Worldwide Basketball*, 388 F.3d at 959 (quoting *Nat'l Hockey League*, 325 F.3d at 718) (emphasis added). AML's new allegations do not demonstrate any anticompetitive effects within the relevant market of residential mortgages. Indeed, they do not demonstrate anticompetitive effects even within AML's asserted wholesale mortgage market.

At most, AML alleges, based on the false assertions of the Hunterbrook Report, that UWM wholesale mortgage loans carried higher rates or closing costs compared to "other available loans" or "comparable loans," necessarily acknowledging that wholesale mortgage customers and brokers continue to have access to competing wholesale mortgage loans purportedly offering better rates or lower closing costs. Ex. A to Mot., ECF No. 41-1, PageID.742-44, ¶¶ 106-08, 111. These are not "anticompetitive effects," as the rule of reason requires. *Worldwide Basketball*, 388 F.3d at 959. Allegations that ***UWM's*** prices are supposedly higher

than *comparable* loans does not establish "reduced output, increased prices, or decreased quality in the relevant market," as AML has not alleged and cannot allege that rates or closing costs have increased across all residential mortgage loans or even across all wholesale mortgage loans. *Ogden v. Little Caesar Enters.*, 393 F. Supp. 3d 622, 637 (E.D. Mich. 2019) (quoting *Ohio v. Am. Express*, 238 S. Ct. 2274, 2284 (2018)) (emphasis added).

AML further asserts that it has bolstered its "plus factor" allegation by including Hunterbrook's so-called "evidence" that the number of brokers sending 99% or more of their mortgages to UWM "doubled since the Ultimatum," which AML offers as an indicator that the brokers "did act against their interests[.]" Mot., ECF No. 41, at PageID.691, 700-01. But Hunterbrook acknowledges that a substantial majority of the loan officers Hunterbrook analyzed still send less than 75% of their loans to UWM, and more than a third send less than 50% of their loans to UWM. *See* Hunterbrook Report, Methodology Appendix, available at https://hntrbrk.com/how-we-crunched-the-numbers-behind-the-uwm-investigation/. Hunterbrook also concedes that its analysis fails to account for "many variables not included" in its data source, like credit scores, regulatory changes, and industry market shifts, "which meaningfully impact mortgage pricing." *Id*. And it acknowledges its analysis looks at data from a robust competitive landscape of "millions of loans from the top 25 wholesale lenders each year." *Id*.

Conversely, AML offers no factual allegations plausibly demonstrating how brokers act "against their interests" by sending most of their mortgages to UWM; it just asserts *ipse dixit* that this is so. Mot., ECF No. 41, at PageID.691, 700. Sending business to UWM as a leading innovator in the industry is equally consistent with UWM providing critical benefits to brokers and borrowers—making the loan process faster, easier, and more reliable with fewer contingencies, hassles, or headaches for borrowers. The Sixth Circuit requires that "plus factors" must provide "compelling circumstantial evidence of an overarching conspiracy." *Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Stds. for Athletic Equip.*, 48 F. 4th 656, 666 (6th Cir. 2022). Directing "the court's attention to a scenario, theory, or occurrence and ask[ing] the court to make sweeping conclusions about the motives and actions" of the brokers is not a proper "plus factors" analysis. *Id*. at 668. AML's "plus factors" analysis remains wholly "conclusory" and does not salvage its claims. Report, 2022 WL 17478298, at *9.

AML also points to its allegations from the Hunterbrook article, Fairway's exit from wholesale lending, and the new Ishbia quotes as "highly probative of UWM's market power and dominance" and of "direct harm to competition." Mot., ECF No. 41, at PageID.690-92, 698-99, 702. But AML again cannot extricate the question of "market power" or "dominance" from the relevant market question. "To sufficiently plead market power, a complaint must 'provide a sufficient factual

predicate to support its allegations that the defendants enjoy market power ***in the relevant market***.'" *United States v. Blue Cross Blue Shield of Michigan*, 809 F. Supp. 2d 665, 673 (E.D. Mich. 2011) (quoting *Found. for Interior Design*, 244 F.3d at 531) (emphasis added)). Here, even if the Court were to accept AML's "new facts," at most they pertain to wholesale mortgage lending and do not establish market power in the relevant market of all residential mortgage loans.

Moreover, AML mischaracterizes its own source materials, which the Court may consider as part of its analysis of the Supplemental Counterclaim's inability to survive a Rule 12(b)(6) challenge. *See Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (court may consider exhibits "referred to in the Complaint" and "central to the claims contained therein"). Other than one passing reference to "UWM's growing market share," the Hunterbrook Report says nothing about market power. *See* Hunterbrook Report, available at hntrbrk.com/uwm/. Fairway exited wholesale mortgage lending to "pivot[] the company's business model to 100% retail originations," explaining, "We are simply making a business shift, nothing more, nothing less, in order to focus on our core business[.]" *Fairway Independent Mortgage Corporation Announces Changes to Wholesale Department*, available at www.prnewswire.com/news-releases/fairway-independent-mortgage-corporation-announces-changes-to-wholesale-department-302052100.html. It did not exit the mortgage loan market. And AML ignores a wealth of industry data that UWM's

market share was growing even before the announcement of the All-In Initiative due to its innovation leadership, and that even as Fairway exited wholesale mortgage lending, many other wholesale mortgage lenders grew their share of that segment. *See* Inside Mortgage Finance, Top Mortgage Lenders archive, available at https://www.insidemortgagefinance.com/data/1711-top-mortgage-lenders.

The Amended Counterclaim already had multiple out-of-context quotes from Mr. Ishbia about UWM's "margins," and simply adds more of the same. Ex. A to Mot, ECF No. 41-1, at PageID.740, ¶ 100. In context, Mr. Ishbia's quotes are about the margins UWM delivers to its brokers to "help the brokers be competitive," while acknowledging that "the market changes and evolves" and "***that range will change***" with the market. Earnings Call Analysis, *Q3-2003 Analysis UWM Holdings Corp.* (emphasis added), available at www.alphaspread.com/security/nyse/uwmc/earnings-calls/q3-2023. None of these "new facts" point to market power.

AML next cites Fairway's exit as evidence that UWM's so-called "boycott" did "cut off access to a supply, facility or market" necessary for Fairway to compete and "enhanced UWM's dominance." Mot., ECF No. 41, at PageID.691, 699-700. But as just described, Fairway did not exit the relevant market of residential mortgage loans and its own statement contradicts AML's facially implausible inference.

Lastly, AML asserts that the Supplemental Counterclaim shores up the absence of any plausible allegation that UWM possessed the "dominant position in the marketplace," and argues that its new allegations eliminate the need to evaluate "market share" as a "shortcut" because they establish "[c]ontrol over price" as "one of the definitions of monopoly power." Mot., ECF No. 41, at PageID.701-02. But AML's own case law confirms that it must establish "the existence of market power *within the relevant market*[.]" *Tarrant Service Agency, Inc. v. American Standard, Inc.*, 12 F.3d 609, 615 (6th Cir. 1993) (emphasis added); *see also Spirit Airlines, Inc. v. Northwest Airlines, Inc.*, 431 F.3d 917, 932 (6th Cir. 2005). "In order to succeed on either a monopolization or attempt to monopolize claim," AML must still "establish the relevant product and geographic markets in which they compete[.]" *Marketing Displays, Inc. v. Traffix Devices, Inc.*, 967 F. Supp. 953, 958 (E.D. Mich. 1997) (quoting *Smith v. Burns Clnic Med. Ctr., P.C.*, 779 F.2d 1173, 1175-76 (6th Cir. 1985)). It has not and cannot. Moreover, as just discussed, AML's out-of-context Ishbia quotes do not establish UWM's power to set or raise prices in the residential mortgage market—just its ability to determine the individual margins it offers to its brokers to enable them to be competitive, subject to evolving market shifts.

## III.   AML's Motion Should Be Denied on Grounds of Bad Faith and Prejudice.

In addition to futility, a supplemental pleading should also be denied under

14

Rule 15(d) if "brought in bad faith" or if it would result in undue "prejudice to the opposing party[.]" *Neumann v. Neumann*, 310 F. Supp. 3d 823, 843 (E.D. Mich. 2018) (quoting *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010)). AML's Motion to Supplement should be denied on these grounds as well.

The substantial majority of AML's putative "new facts" and "new evidence" rest on the Hunterbrook Report, which AML misleadingly refers to as an "analysis" or "study." Ex. A to Mot., ECF No. 41-1, at PageID.742-44, ¶¶ 106-08, 111. Yet AML omits a highly salient fact that Hunterbrook itself disclosed: Hunterbrook is nothing more than the media arm of a hedge fund, Hunterbrook Capital, which "is short $UWMC and long $RKT at the time of publication" of the Hunterbrook Report. *See* Hunterbrook Report, available at hntrbrk.com/uwm/. In other words, Hunterbrook released its so-called "study" through its media arm even as the hedge fund made a bet against UWM and in support of UWM's "biggest competitor[]," Rocket Mortgage, in the financial markets. *Id*. And Hunterbrook has openly sought to use the judicial process as an arm of its investment strategy, sharing its data with a law firm to file a RICO suit against UWM based on the same false allegations. *See id*.; *Escue v. United Wholesale Mortgage, LLC*, No. 2:24-cv-10853 (E.D. Mich.), ECF No. 1.

AML did not disclose to the Court that the "new facts" it seeks to insert into these proceedings are part of an orchestrated smear campaign to artificially depress

UWM's stock price and inflate Rocket's stock price for the enrichment of hedge fund investors. AML's bad faith motive in attempting to enlist the Court's unwitting assistance in this endeavor, without disclosing its source's naked conflict of interest, should not be countenanced. This Court is vested with the "power to police itself in order to uphold the integrity and authority of the judicial system[.]" *Grace v. Center for Auto Safety*, 155 F.R.D. 591, 602 (E.D. Mich. 1994). The Court should not be drawn into AML's and Hunterbrook's market manipulation scheme.

## <u>CONCLUSION</u>

For the foregoing reasons, UWM respectfully requests the Court deny AML's Motion to Supplement and grant such other relief as the Court deems just and proper.

Dated: May 20, 2024.       Respectfully submitted,

By: */s/ Moheeb H. Murray*
Moheeb H. Murray (P63893)
William E. McDonald, III (P76709)
Mahde Y. Abdallah (P80121)
**BUSH SEYFERTH PLLC**
100 West Big Beaver Road, Suite 400
Troy, MI 48084
T/F: (248) 822-7800
mcdonald@bsplaw.com
abdallah@bsplaw.com

A. Lane Morrison (P87427)
**BUSH SEYFERTH PLLC**
5810 Wilson Road, Suite 125
Humble, TX 77396
T/F: (281) 930-6853
morrison@bsplaw.com
*Attorneys for United Wholesale Mortgage, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE, LLC

      *Plaintiff*,

v.

AMERICA'S MONEYLINE, INC.

      *Defendant*.

Case No. 2:22-cv-10228

Honorable Laurie J. Michelson
Magistrate Judge Elizabeth A. Stafford

---

## **BRIEF FORMAT CERTIFICATION FORM**

I, <u>Moheeb H. Murray</u>, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

☒ the original brief contained a statement regarding concurrence, *see* LR 7.1(a);

☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

☒ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

☒ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

17

☒ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

Dated: May 20, 2024.                                        By: */s/ Moheeb H. Murray*