# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE, LLC

   *Plaintiff,*

v.

AMERICA'S MONEYLINE, INC.

   *Defendant.*

Case No. 2:22-cv-10228

Honorable Laurie J. Michelson
Magistrate Judge Elizabeth A. Stafford

---

## UNITED WHOLESALE MORTGAGE LLC'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff United Wholesale Mortgage, LLC moves the Court, pursuant to Fed. R. Civ. P. 56, for partial summary judgment on its claim against Defendant America's Moneyline, Inc. UWM is entitled to judgment as a matter of law because:

1. There is no genuine dispute as to any material fact that AML breached its Wholesale Broker Agreement with UWM, as amended by the All-In Addendum, by submitting loans to Rocket Mortgage, and UWM is entitled to liquidated damages, attorney's fees, and interest, the extent of which should be determined at a later date.

2. AML cannot prove that the All-In Addendum's liquidated damages is an unenforceable penalty.

Counsel for the parties conferred and UWM's counsel explained the nature of

1

this motion and its legal basis and requested but did not obtain concurrence in the relief sought.

UWM requests that the Court grant summary judgment in UWM's favor as to the issue of AML's breach of the parties' contract and reserve the issue of damages for trial.

UWM acknowledges that the resolution of the two motions that are still pending with the Court, *UWM's Motion for Leave to File First Amended Complaint*, ECF No. 45, PageID.798, and *AML's Motion for Leave to File Supplemental Counterclaim*, ECF No.41, PageID.680, may affect certain arguments in this motion. But given the Court's current scheduling order, ECF No. 40, PageID.679, UWM is filing this motion in an abundance of caution to preserve its currently existing summary judgment arguments. UWM reserves the right to request leave to amend this summary judgment motion or file a second motion for summary judgment following the Court's resolution of the two referenced motions.

Respectfully submitted,

By: */s/ Moheeb H. Murray*
Moheeb H. Murray (P63893)
William E. McDonald, III (P76709)
Mahde Y. Abdallah (P80121)
**BUSH SEYFERTH PLLC**
100 West Big Beaver Road, Suite 400
Troy, MI 48084
T/F: (248) 822-7800
murray@bsplaw.com
mcdonald@bsplaw.com

abdallah@bsplaw.com

A. Lane Morrison (P87427)
**BUSH SEYFERTH PLLC**
5810 Wilson Road, Suite 125
Humble, TX 77396
T/F: (281) 930-6853
morrison@bsplaw.com

Dated: February 7, 2025          *Attorneys for United Wholesale Mortgage, LLC*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE, LLC

     *Plaintiff,*

v.

AMERICA'S MONEYLINE, INC.

     *Defendant.*

Case No. 2:22-cv-10228

Honorable Laurie J. Michelson
Magistrate Judge Elizabeth A. Stafford

## <u>UNITED WHOLESALE MORTGAGE LLC'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.     Is UWM entitled to judgment as a matter of law because there is no genuine dispute as to any material fact that AML breached its Wholesale Broker Agreement with UWM by sending loans to Select Retail Lenders and UWM?

     UWM answers:          Yes.

     The Court should answer:     Yes.

2.     Is UWM entitled to recover liquidated damages, attorney's fees, costs, and interest pursuant to the Wholesale Broker Agreement?

     UWM answers:          Yes.

     The Court should answer:     Yes.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

*Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692 (6th Cir. 2017).

*El-Khalil v. Oakwood Healthcare, Inc.*, 934 N.W.2d 665 (Mich. 2019).

*Curran v. Williams*, 89 N.W.2d 602 (Mich. 1958).

*United Wholesale Mortg., LLC v. Am.'s Moneyline, Inc.*, 647 F. Supp. 3d 587 (E.D. Mich. 2022) (ECF No. 14, Opinion and Order Granting in Part United Wholesale Mortgage's Motion to Dismiss Countercomplaint [11])

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................. 1

UNDISPUTED FACTS ........................................................ 1

    A.    UWM Invests Resources that Benefit the Businesses of
Independent Mortgage Brokers That Offer Its Products ........... 1

    B.    AML And UWM Enter Into a Wholesale Broker Agreement. ............ 3

    C.    UWM Announces the All-In Initiative and Implements the All-
In Addendum. ...................................................... 4

    D.    AML Agrees to the All-In Addendum but Submits Loans to the
Select Retail Lenders Anyway. ...................................... 7

    E.    Liquidated Damages. .............................................. 9

LEGAL STANDARD ......................................................... 10

ARGUMENT .................................................................. 11

    I.    UWM is Entitled to Judgment as a Matter of Law on its
Breach-of-Contract Claim. ........................................ 11

        A.    The Agreement, as amended by the All-In Addendum,
was a valid contract between UWM and AML. ................ 12

            i.    The parties entered into the Agreement in 2020. ........... 12

            ii.    The Agreement was amended in 2021 with the All-
In Addendum. .......................................... 12

        B.    AML breached the Agreement by sending loans to the
Select Retail Lenders. ............................................ 16

        C.    UWM is entitled to recover damages for AML's breach. ........ 16

    II.    Section 7.30's Liquidated Damages Provision is Enforceable
Because Damages Upon Breach Were Difficult to Estimate at
the Time of the All-In Addendum. .................................. 19

CONCLUSION ............................................................... 25

iii

# INDEX OF AUTHORITIES

**Page**

## CASES

*Alexander v. Casino Queen, Inc.*, 739 F.3d 972 (7th Cir. 2014) ..............................2

*Barclae v. Zarb,* 834 N.W.2d 100 (Mich. Ct. App. 2013).......................................20

*Bhasin v. United Shore Fin. Servs., LLC*, No. 20-13278, 2022 WL
    662284 (E.D. Mich. Mar. 4, 2022) ......................................................14

*Clarke v. Mindis Metals, Inc.*, 99 F.3d 1138 (6th Cir. 1996) ..................................18

*Curran v. Williams*, 89 N.W.2d 602 (Mich. 1958).......................................... 17, 21

*Diamonds Plus, Inc. v. Kolber*, 960 F.2d 765 (8th Cir. 1992)...................................2

*El-Khalil v. Oakwood Healthcare, Inc.*, 934 N.W.2d 665 (Mich. 2019) ...............11

*Exar Corp. v. Nartron Corp.*, 89 F.3d 833 (6th Cir. 1996) ............................. 17, 24

*Genesee Cnty. Bd. of Rd. Comm'rs v. N. Am. Dev. Co.*, 119 N.W.2d
    593 (Mich. 1963) .......................................................................20

*Hemlock Semiconductor Corp. v. Deutsche Solar GmbH*, No. 13-CV-
    11037, 2016 WL 3743130 (E.D. Mich. July 13, 2016).....................................24

*Hemlock Semiconductor Operations, LLC v. SolarWorld Indus.
    Sachsen GmbH*, 867 F.3d 692 (6th Cir. 2017) ........................................... passim

*Kissinger, Inc. v. Singh*, 304 F. Supp. 2d 944 (W.D. Mich. 2003).........................18

*Lelli's Inn, Inc. v. Steven Lelli's Inn on the Green, L.L.C.*, No. 13-
    14766, 2017 WL 6521325 (E.D. Mich. Oct. 24, 2017), *report and
    recommendation adopted*, No. 13-14766, 2017 WL 6513009 (E.D.
    Mich. Dec. 20, 2017). ............................................................. 20, 21, 24

*Owens-Brockway Glass Containers Inc. v. State Tax Comm'n*, No.
    314190, 2014 WL 5358350 (Mich. Ct. App. Oct. 21, 2014) ............................24

*Rouse v. Caruso*, No. CIV 06-10961, 2007 WL 909724 (E.D. Mich.
    Mar. 23, 2007).......................................................................11

*St. Clair Med., P.C. v. Borgiel*, 715 N.W.2d 914 (Mich. Ct. App.
    2006) .............................................................................. 20, 23

## INDEX OF AUTHORITIES
### (continued)

**Page**

*Subramanyam v. KLM Royal Dutch Airlines*, No. 20-11296, 2021 WL
    1592664 (E.D. Mich. Apr. 23, 2021)...................................................11

*UAW-GM Hum. Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411
    (Mich. Ct. App. 1998)............................................................19

*United States v. Moored*, 38 F.3d 1419 (6th Cir. 1994) ............................16

*United States v. Todd*, 920 F.2d 399 (6th Cir. 1990)................................16

## **RULES**

Fed. R. Civ. P. 56(a)...............................................................11

Fed. R. Civ. P. 54(d)(1)..........................................................20

# INDEX OF EXHIBITS

EXHIBIT                         DESCRIPTION

A          Transcript of Deposition of Sarah DeCiantis.

B          UWM's Responses to AML's First Requests for Production.

C          UWM's Responses to AML's First Interrogatories.

D          All-In Announcement Transcript – Exhibit 4 in Deposition of
           Sarah DeCiantis.

E          AML's Responses to UWM's First Requests for Admission.

F          AML's Responses to UWM's First Interrogatories.

G          AML Loan Submission Log to UWM.

H          List of AML Loans Submitted to Rocket, Produced by UWM at
           UWM-AML000050–62.

## INTRODUCTION

AML breached the Wholesale Broker Agreement ("Agreement") it had with UWM by sending mortgage loans to a Select Retail Lender despite prohibitions on doing so. It is undisputed that AML agreed to the terms of the Agreement and, upon sending loans to UWM following the announcement of the "All-In Addendum," agreed to amend the Agreement with the All-In Addendum's terms. AML then breached the Agreement, as amended by the All-In Addendum, by sending loans to a Select Retail Lender, despite its express prohibitions on doing so. Simple as that— UWM is entitled to judgment as a matter of law on its breach-of-contract claim.

The Agreement entitles UWM to recover liquidated damages for breaches of the All-In Addendum terms and attorney's fees and costs incurred in enforcing its rights under the Agreement. UWM is entitled to recover those damages here because AML cannot meet its burden to prove that the liquidated damages clause is an unenforceable penalty. Damages are as simple as breach—UWM is entitled to recover liquidated damages and its attorney's fees and costs.

## UNDISPUTED FACTS

### A. UWM Invests Resources that Benefit the Businesses of Independent Mortgage Brokers That Offer Its Products.

UWM is a wholesale mortgage lender that works exclusively with independent mortgage brokers and non-delegated correspondent lenders ("Broker Partners") across the country to provide home-mortgage products to borrowers. *See*

Ex. A, Deposition of Sarah DeCiantis ("DeCiantis Dep.") from *UWM v. Kevron Investments, Inc.*, No. 2:22-cv-10395-LJM-EAS (E.D. Mich.), at 17:20–18:10;[1] ECF No. 1, PageID.3, Compl. at ¶ 7. Because UWM does not deal directly with individual borrowers—as do *retail* mortgage lenders—it depends on its Broker Partners to offer UWM's products to qualified borrowers where those products are appropriate for the borrowers' needs and wishes. *See* Ex. A, DeCiantis Dep. at 18:1-10; ECF No. 1, Compl. at PageID.3, ¶ 8. Given that UWM operates only in the wholesale lending channel, UWM's long-term success necessarily depends on the long-term success of its Broker Partners and the continued viability of the wholesale lending channel in which they and UWM work. Ex. A, DeCiantis Dep., at 42:4-15; Ex. B, UWM's Resp. to 1st RFPs at No. 24. To that end, UWM provides its Broker Partners with considerable resources, including technology, marketing support, training, recruiting services, and other support platforms to help the Broker Partners compete, win, and grow their business; and, in return, UWM hopes that the Broker Partner will send UWM business. Ex. A, DeCiantis Dep., at 24:4-23, 25:21-25; Ex.

---

[1] "The weight of authority is that depositions can be the equivalent of affidavits, and are therefore admissible at the summary judgment stage"; so, "depositions from one case may be used at the summary judgment stage of another." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 978 (7th Cir. 2014) (collecting cases); *see also e.g.*, *Diamonds Plus, Inc. v. Kolber*, 960 F.2d 765, 767–68 (8th Cir. 1992) ("The Federal Rules specifically allow depositions to be used in opposition to motions for summary judgment, . . . and a deposition is at least as good as an affidavit and should be usable whenever an affidavit would be permissible . . .." (cleaned up)).

B, UWM's Resp. to 1st RFPs at No. 24; Ex. C, UWM's Resp. to 1st Interrogs. at Nos. 9–11; ECF No. 1, PageID.3–4, Compl. at ¶¶ 9–10. UWM's "build versus buy" mentality means that it expends significant resources—in monetary terms and in human capital—to build these various platforms to customize them to best suit each Broker Partner's needs and support their growth. Ex. A, DeCiantis Dep., at 163:3-10 ("[W]e don't go out and buy a training platform and bring it in. We build all that . . . we create[] the curriculum, the trainers."), 167:8-25 ("We use our internal team members to build those platforms in that technology so that we are able to customize it in a way to best suit our client's business, their needs, the ability for them to grow in scale because we know how to do that best.").

## B.   AML And UWM Enter Into a Wholesale Broker Agreement.

In 2020, AML chose to begin offering UWM products to borrowers—and thereby elected to avail itself of the services and resources UWM provides to Broker Partners to help offer UWM products—and entered into a Wholesale Broker Agreement with UWM. ECF No. 1, PageID.4, Compl. at ¶ 13; ECF No. 7, PageID.54, AML Answer & Counter-Compl. at ¶ 13, PageID.60, ¶ 9. Under that Agreement, AML agreed to offer UWM's mortgage loan products and, when it submitted mortgage loans to UWM, make certain warranties and representations as to each submitted loan. ECF No. 1, PageID.4–5, Compl. at ¶¶ 14, 17; ECF No. 7, PageID.54–55, AML Answer & Counter-Compl. at ¶¶ 14, 17. AML was not

3

"obligated to submit any particular mortgage loan applications or any minimum number of loan applications to UWM." ECF No. 1, PageID.5, Compl. at ¶ 15; ECF No. 7, PageID.54, AML Answer & Counter-Compl. at ¶ 15. And either party could terminate the Agreement at any time and for any reason with seven days' prior written notice. ECF No. 1, PageID.5, Compl. at ¶ 6. The Agreement could be amended either (1) "in writing executed by authorized representatives of both [AML] and UWM," ECF No. 1-1, PageID.16, at § 7.01; or (2) by UWM using the methods described in Section 7.08:

> **7.08. UWM Amendments & Website.** This Agreement, and UWM's policies, procedures, requirements and instructions concerning Mortgage Loan Applications and Mortgage Loans, including but not limited to those contained in the UWM Guide, may be amended by UWM from time to time, and UWM will endeavor to provide broker with prompt notice thereof, which may occur by posting any such amendments on UWM's website, which Broker is required to regularly check and monitor as a condition of this Agreement. Broker agrees that the submission of any Mortgage Loan Applications or Mortgage Loans to UWM after such amendment shall be Broker's agreement to the amendment without further signature or consent of any kind. Any such amendment shall apply to pending, and/or future Mortgage Loan Applications submitted by Broker.

*Id.*, PageID.17, at § 7.08.

## C.     UWM Announces the All-In Initiative and Implements the All-In Addendum.

On March 4, 2021, UWM publicly announced its "All-In Initiative," stating that it had decided to end its business relationships with Broker Partners who chose to continue originating loans with two specified retail lenders—Rocket Mortgage

("Rocket") and Fairway Independent Mortgage ("Fairway") (collectively, the "Select Retail Lenders"). *See generally* Ex. D, Exhibit 4 to DeCiantis Dep. ("All-In Announcement Transcript"); Ex. B, UWM's Resp. to 1st RFPs at No. 9. As UWM explained, it believes that the Select Retail Lenders' business model negatively impacts consumers, brokers, and the wholesale lending channel in general and that the All-In Initiative was necessary to protect the long-term viability of the wholesale lending channel. *See* Ex. D, All-In Announcement Transcript, at 11–19.

UWM specifically identified Rocket and Fairway in the All-In Initiative because they both operated simultaneously in the wholesale and retail lending channels and their business models were harming the wholesale lending channel— the continued existence of which UWM relies on for survival. Ex. A, DeCiantis Dep., at 31:15-23. Specifically, the Select Retail Lenders were obtaining loans through their wholesale lending channels but then transferring them to their retail lending channels using aggressive sales practices, after which those customers were highly unlikely to ever return to the wholesale lending channel (or, by extension for some of them, UWM). *Id.* at 31:16-20; 36:6-7 ("[O]nce a loan ends up in retail, it oftentimes is out of wholesale forever."), 36:16-20 ("Because of the way that [Rocket's] business model is set up they make a majority of their profit on the retail space. . . . They will close a loan [on their wholesale side using an independent broker], but then beyond that it ends up in retail."), 141:2-8 ("The retail practices are

very aggressive. So the chances of a broker shop, which does not have the call center infrastructure or ability to make calls out on what is called in the industry as trigger lead, that loan is really lost to the retail channel. It's very, very difficult for a loan to come back into wholesale once retail's got hold of it."). In addition, Rocket was also targeting real estate agents and turning them into captive loan officers, which effectively forever removed those agents from the wholesale lending channel. *Id.* at 31:20-23; 33:23–34:8. UWM had for years prior to the All-In Initiative been discussing the Select Retail Lenders' damaging business practices. *Id.* at 134:25-135:11. And it ultimately decided to act through the All-In Initiative. *Id.* at 28:10-21, 30:3–31:23, 32:5-10; *see generally* Ex. D, All-In Announcement Transcript.

But aside from the public announcement, to further implement the All-In Initiative, UWM amended the terms of its wholesale broker agreement to add the "All-In Addendum," which created an additional warranty and representation that a Broker Partner must make as to each loan it submits to UWM. *See, e.g.*, Ex. D, All-In Announcement Transcript, at 14–16; ECF No. 1, PageID.6, Compl. at ¶ 21; ECF No. 7, PageID.55, AML Answer & Counter-Compl. at ¶ 21. It required the broker to warrant and represent that it will not submit a mortgage loan or mortgage loan application to a Select Retail Lender:

> **3.03. Broker Warranties & Representations.** Broker hereby warrants, represents and covenants to UWM with regard to each Mortgage Loan submitted to UWM for underwriting, purchase and/or funding that the following are true, complete and correct in all material

respects as of the date of such submission, as if such warranties, representations and covenants are again made by Broker on those dates and shall continue to be valid and accurate throughout the entire lending process:

. . .

(x) Broker will not submit a mortgage loan or mortgage loan application to Rocket Mortgage or Fairway Independent Mortgage for review, underwriting, purchase, and/or funding. This requirement is limited to Rocket Mortgage or Fairway Independent Mortgage. UWM will not add any other mortgage lender . . ..

ECF No. 1-2, PageID.25–28, Wholesale Broker Agreement with All-In Addendum as of September 24, 2021, at ¶ 3.03(x).

UWM notified brokers of the All-In Addendum through not only the March Announcement, but also through web postings, email communications and sales-team touch points. Ex. A, DeCiantis Dep., at 29:13-23, 39:5-11, 56:23-25, 182:7-10, 18-22, 188:14-21. The announcement itself was also widely covered by industry media outlets. *Id.* at 188:17-18. Indeed, AML received notice of the All-In Addendum the next day—at the latest—via email. ECF No. 7, PageID.65, AML Answer & Counter-Compl. at ¶ 34.

### D.   AML Agrees to the All-In Addendum but Submits Loans to the Select Retail Lenders Anyway.

AML submitted mortgage loans to UWM after it was notified of the All-In Addendum. ECF No. 7, PageID.68 at ¶ 44 ("As of June 1, 2021, AML continued to do business with Rocket Pro and UWM . . .."); Ex. E, AML's Resp. to UWM's RFAs at No. 7 ("Admit that AML submitted mortgage loans and mortgage loan

applications to UWM after March 4, 2021. . . . AML admits."); Ex. F, AML's Resp. to UWM's Interrogs. at No. 3 (answering that AML submitted "approximately 1,450" mortgage loans and mortgage loan applications to UWM "[f]or the period March 4, 2021 through March 14, 2022"); Ex. G, AML Submission Log to UWM. Under Section 7.08 of the Agreement, then, AML's submission of loans to UWM after its notification of the All-In Addendum was its "agreement to the [All-In Addendum] without further signature or consent." ECF No. 1-1, PageID.17, at § 7.08. In addition to agreeing to the All-In Addendum through its submission of loans to UWM, AML also renewed its Agreement, including the All-In Addendum, in the summer of 2021. ECF No. 7, PageID.70 at ¶ 53 (acknowledging that AML "execute[d] the Amended AML/UWM Agreement").

Yet, AML submitted approximately 1,700 loans to Rocket Mortgage—one of the Select Retail Lenders to which AML had promised to not send loans—while it maintained its business relationship with UWM under the Agreement, as amended by the All-In Addendum. Ex. F, AML's Resp. to UWM's Interrogs. at No. 3 (answering that AML submitted "approximately 1,450" mortgage loans and mortgage loan applications to UWM and "approximately 1,700" mortgage loans and mortgage loan applications to Rocket between March 4, 2021 and March 14, 2022); Ex. E, AML's Resp. to UWM's RFAs at No. 8 ("Admit that AML submitted mortgage loans and mortgage loan applications to Rocket Mortgage after March 4,

2021. . . . AML admits."), No. 9 ("Admit that AML submitted at least 559 mortgage loans and mortgage loan applications to Rocket Mortgage after March 4, 2021. . . . AML admits."); Ex. H, List of AML Loans Submitted to Rocket, Produced by UWM at UWM-AML000050–62.

### E.   Liquidated Damages.

A breach of Section 3.03(x) entitled UWM to liquidated damages:

**7.30 Liquidated Damages.** Broker and UWM agree that the measure of damages in the event of a breach of Broker's representation and warranty under Section 3.03(x) may be difficult, if not impossible, to ascertain. Accordingly, in the event of a violation of Section 3.03(x), Broker shall immediately pay to UWM the greater of: (i) Five Thousand Dollars ($5,000.00) per loan closed with Rocket Mortgage, Fairway Independent Mortgage or subject to Section 3.03(x), an Acquired Lender, or (ii) Fifty Thousand Dollars ($50,000.00), as liquidated damages for such breach without the need for proof of damages by UWM. UWM's right to liquidated damages are in addition to (not in lieu of) any other monetary or other remedies UWM may have under this Agreement and/or applicable law.

ECF No. 1-2, PageID.38–39, Wholesale Broker Agreement with All-In Addendum as of September 24, 2021, at ¶ 7.30.[2] The amount of liquidated damages was

---

[2] The Agreement, both in its original form and as amended by the All-In Addendum, also provides for the recovery of attorney's fees:

**7.16. Attorney's Fees.** In the event a dispute arises under this Agreement between Broker and UWM, which dispute results in legal action being taken by one or both of the parties, the prevailing party shall be entitled to recover its reasonable attorney fees, costs and other expenses associated with the enforcement of its rights under this Agreement, and the non-prevailing party hereby agrees to promptly pay same.

ECF No. 1-1, PageID.17; ECF No. 1-2, PageID.36.

determined through a meeting of UWM's upper management. Ex. A, DeCiantis Dep., at 12:21–13:3; 16:11–17:11. The $5,000 per-loan liquidated-damage amount reflected their best assessment of the damage UWM would sustain if a Broker Partner breached the All-In Addendum by sending loans to the Select Retail Lenders—entities that were actively damaging the wholesale lending channel where UWM subsists—while also still utilizing or otherwise benefiting from the resources that UWM had built and invested into its Broker Partners' businesses. *See id.* at 23:1-6, 45:13–46:2, 59:12-18, 61:2-21, 73:2-15, 76:7-17, 80:9-15, 81:1-4, 97:25–98:3, 102:12-15. The amount included not only the value of these resources that were effectively being invested into entities that were harming the wholesale lending channel but also reflected the harm done, including resulting losses of goodwill, to the wholesale lending channel—and, necessarily, to UWM, given that its business wholly relies on the viability of that channel. *Id.* at 194:10-15. Indeed, UWM would hardly choose to provide such vast resources to brokers that it knew were harming the very channel necessary for its survival. *Id.* at 168:1-5. Even so, this foundational damage to the wholesale lending channel and a per-broker determination of UWM's essentially forfeited invested resources was difficult to calculate. *Id.* at 71:24–72:10, 166:9-168:16.

## LEGAL STANDARD

A court should grant summary judgment for a plaintiff on its claims if "there

is no genuine dispute as to any material fact and [the plaintiff] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where a plaintiff bears the burden of proof on a claim, summary judgment is due where the plaintiff "submits evidentiary materials to establish all of the elements of the claim." *Rouse v. Caruso*, No. CIV 06-10961, 2007 WL 909724, at *3 (E.D. Mich. Mar. 23, 2007).[3]

## ARGUMENT

The undisputed facts show that AML breached the parties' Agreement, as Amended by the All-In Addendum, by sending multiple loans to the Select Retail Lenders. Per those terms, UWM is entitled to recover liquidated damages and its attorney's fees and costs in an amount to be determined later. There is no genuine dispute as to any material fact that AML is liable for breach of contract claim. UWM is entitled to judgment as a matter of law.

### I.   UWM is Entitled to Judgment as a Matter of Law on its Breach-of-Contract Claim.

To prevail on a breach-of-contract claim, a plaintiff must show (1) the existence of a contract, (2) the defendant's breach of that contract, and (3) damages due to the breach. *See El-Khalil v. Oakwood Healthcare, Inc.*, 934 N.W.2d 665, 672 (Mich. 2019); *see also Subramanyam v. KLM Royal Dutch Airlines*, No. 20-11296, 2021 WL 1592664, at *6 (E.D. Mich. Apr. 23, 2021).

---

[3]   Throughout, unless otherwise noted, all emphases and alterations are added, and all internal quotation marks, citations, and footnotes are omitted.

**A.     The Agreement, as amended by the All-In Addendum, was a valid contract between UWM and AML.**

**i.  The parties entered into the Agreement in 2020.**

It is undisputed that the Agreement was a valid contract between AML and UWM. AML admits that it entered into a Wholesale Broker Agreement with UWM in 2020. ECF No. 1, PageID.4, Compl. at ¶ 13; ECF No. 7, PageID.54, AML Answer & Counter-Compl. at ¶ 13, PageID.60, ¶ 9. Under that Agreement, AML agreed to offer UWM's mortgage loan products and, when it submitted mortgage loans to UWM, make certain warranties and representations as to each submitted loan. ECF No. 1, PageID.4–5, Compl. at ¶¶ 14, 17; ECF No. 7, PageID.54–55, AML Answer & Counter-Compl. at ¶¶ 14, 17. The Agreement is undisputedly a binding contract between UWM and AML.

**ii.  The Agreement was amended in 2021 with the All-In Addendum.**

The parties then amended the Agreement in 2021 to include the terms of the All-In Addendum. The Agreement's terms provided two ways that the parties could amend it: First, the parties could amend through a "writing executed by authorized representatives of both [AML] and UWM," ECF No. 1-1, PageID.16, at § 7.01. Second, UWM could amend the Agreement from time to time by the methods described in Section 7.08:

> **7.08. UWM Amendments & Website.** This Agreement, and UWM's policies, procedures, requirements and instructions concerning Mortgage Loan Applications and Mortgage Loans, including but not

12

limited to those contained in the UWM Guide, may be amended by UWM from time to time, and UWM will endeavor to provide broker with prompt notice thereof, which may occur by posting any such amendments on UWM's website, which Broker is required to regularly check and monitor as a condition of this Agreement. Broker agrees that the submission of any Mortgage Loan Applications or Mortgage Loans to UWM after such amendment shall be Broker's agreement to the amendment without further signature or consent of any kind. Any such amendment shall apply to pending, and/or future Mortgage Loan Applications submitted by Broker.

*Id.*, PageID.17, at § 7.08.

The Agreement was amended under Section 7.08. That Section applies to UWM's amendments to "th[e] Agreement, and UWM's policies, procedures, requirements and instructions concerning Mortgage Loan Applications and Mortgage Loans, including but not limited to those contained in the UWM Guide." *Id.* The All-In Addendum was clearly an amendment to "th[e] Agreement." But it also was an amendment to "UWM's policies, procedures, requirements and instructions concerning Mortgage Loan Applications and Mortgage Loans." This is because the All-In Addendum added a new warranty and representation (in Section 3.03) by AML that "with regard to each Mortgage Loan submitted to UWM" it will not submit loans to a Select Retail Lender. *See* ECF No. 1-2, PageID.25–28, Wholesale Broker Agreement with All-In Addendum as of September 24, 2021, at ¶ 3.03(x). Then, after UWM announced the All-In Initiative and the All-In Addendum, AML continued to submit mortgage loans to UWM. ECF No. 7, PageID.68 at ¶ 44 ("As of June 1, 2021, AML continued to do business with Rocket

13

Pro and UWM . . . ."); Ex. E, AML's Resp. to UWM's RFAs at No. 7 ("Admit that AML submitted mortgage loans and mortgage loan applications to UWM after March 4, 2021. . . . AML admits."); Ex. F, AML's Resp. to UWM's Interrogs. at No. 3 (answering that AML submitted "approximately 1,450" mortgage loans and mortgage loan applications to UWM "[f]or the period March 4, 2021 through March 14, 2022"); Ex. G, AML Loan Submission Log to UWM. This "submission of [] Mortgage Loan Applications or Mortgage Loans to UWM after [the All-In Addendum] amendment [was AML's] agreement to the [the All-In Addendum] amendment without further signature or consent of any kind." *See* ECF No. 1-1, PageID.17, at § 7.08.

Notably, "Section 7.08 permits UWM to make unilateral amendments," after which "submission of new loan applications 'shall' be the brokers' acceptance of a unilateral agreement proposed by UWM." *Bhasin v. United Shore Fin. Servs., LLC*, No. 20-13278, 2022 WL 662284, at *10 (E.D. Mich. Mar. 4, 2022);[4] *see* ECF No. 1-1, PageID.17, at § 7.08. That is, as to any amendment UWM makes under Section 7.08, the Agreement requires only that UWM "endeavor to provide broker with

---

[4] To be sure, in *Bhasin*, this Court denied UWM's motion to dismiss a group of brokers' breach-of-contract claims. But the brokers there claimed that UWM breached their wholesale broker agreements by retroactively applying an amendment that was affected under Section 7.08. 2022 WL 662284 at *2. Retroactivity is not at issue here. UWM seeks damages only for breaches of the Agreement that occurred after AML agreed to the All-In Addendum.

prompt notice thereof" and that the broker's "submission of any Mortgage Loan Applications or Mortgage Loans to UWM after such amendment shall be Broker's agreement to the amendment without further signature or consent of any kind." *See* ECF No. 1-1, PageID.17, at § 7.08. UWM notified brokers, including AML, of the All-In Addendum through not only the March Announcement, but also through web postings, email communications, and sales-team touch points. Ex. A, DeCiantis Dep., at 29:13-23, 39:5-11, 56:23-25, 182:7-10, 18-22, 188:14-21, 191:6-16. The announcement itself was also widely covered by industry media outlets. *Id.* at 188:17-18. Then, by submitting loans to UWM after the creation, announcement, and notification of the All-In Addendum, AML accepted the amendment. That AML received actual notice of the All-In Addendum the next day via email, ECF No. 7, PageID.65, AML Answer & Counter-Compl. at ¶ 34, only bolsters that AML actually affirmatively agreed to the All-In Addendum. *See also United Wholesale Mortg., LLC v. Am.'s Moneyline, Inc.*, 647 F. Supp. 3d 587, 596 (E.D. Mich. 2022) (ECF No. 14, Opinion and Order Granting in Part United Wholesale Mortgage's Motion to Dismiss Countercomplaint [11]) (finding that, given that "the public announcement of the ultimatum [occurred] on March 4, 2021, that AML received an email about the Amended agreement on March 5, 2021, and that it continued submitting loans to UWM after that date," AML [] agreed to the ultimatum and

associated damages").[5]

What's more, AML also expressly renewed its Agreement in the summer of 2021. ECF No. 7, PageID.70 at ¶ 53 (acknowledging that AML "execute[d] the Amended AML/UWM Agreement").

The All-In Addendum validly amended the undisputedly binding Agreement between UWM and AML.

### B. AML breached the Agreement by sending loans to the Select Retail Lenders.

After the Agreement was amended to include the All-In Addendum, AML breached it multiple times. After agreeing to the All-In Addendum, AML submitted approximately 1,700 loans to Rocket Mortgage—one of the Select Retail Lenders—all while also submitting loans to UWM. Ex. F, AML's Resp. to UWM's Interrogs. at No. 3 (answering that AML submitted "approximately 1,450" mortgage loans and mortgage loan applications to UWM and "approximately 1,700" mortgage loans and mortgage loan applications to Rocket between March 4, 2021 and March 14, 2022).

There is no dispute that AML breached the terms of the All-In Addendum.

### C. UWM is entitled to recover damages for AML's breach.

The Agreement, as amended by the All-In Addendum, provides for liquidated

---

[5]   "Under the doctrine of the law of the case, a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation." *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990); *see also United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994).

damages for AML's breach of the All-In Addendum's terms. "Michigan law recognizes the ability of parties to a contract to determine reasonable liquidated damages in advance of any breach." *Exar Corp. v. Nartron Corp.*, 89 F.3d 833 (6th Cir. 1996) (table). Indeed, "[i]t is a well settled rule in this State that the parties to a contract can agree and stipulate in advance as to the amount to be paid in compensation for loss or injury which may result in the event of a breach of the agreement." *Curran v. Williams*, 89 N.W.2d 602, 604 (Mich. 1958). Section 7.30 is the Agreement's liquidated-damages clause, under which AML and UWM "agree[d] that the measure of damages in the event of a breach of [AML]'s representation and warranty under Section 3.03(x)" is, relevant here, "Five Thousand Dollars ($5,000.00) per loan closed with Rocket Mortgage." ECF No. 1-2, PageID.38–39, Wholesale Broker Agreement with All-In Addendum as of September 24, 2021, at ¶ 7.30. Though there remains a question about the exact **extent** of damages owed under Paragraph 7.30—i.e., the total number of loans AML closed with Rocket— UWM's **entitlement** to damages under Paragraph 7.30, due to AML's undisputed submission of loans to a Select Retail Lender, can be determined as a matter of law.

The Agreement, both in its original form and as amended by the All-In Addendum, also provides for recovery of attorney's fees. Specifically, it provides that in a dispute between UWM and AML that "results in legal action being taken by one or both of the parties," "the prevailing party shall be entitled to recover its

reasonable attorney fees, costs and other expenses associated with the enforcement of its rights under this Agreement, and the non-prevailing party hereby agrees to promptly pay same." ECF No. 1-1, PageID.17; at § 7.16; ECF No. 1-2, PageID.36, Wholesale Broker Agreement with All-In Addendum as of September 24, 2021, at ¶ 7.16. Where parties use the term "prevailing party" but do not define the term, "the parties intend the term 'prevailing party' to have the meaning given it by the case law under Rule 54(d)(1)." *Clarke v. Mindis Metals, Inc.*, 99 F.3d 1138 (6th Cir. 1996) (table). "Cases interpreting Rule 54(d)(1) generally state that the prevailing party is the party in whose favor judgment was entered, even if that judgment does not fully vindicate the litigant's position in the case." *See, e.g.*, *Kissinger, Inc. v. Singh*, 304 F. Supp. 2d 944, 953 (W.D. Mich. 2003). Under Section 7.16 then, UWM is entitled to "recover its reasonable attorney fees, costs and other expenses associated with the enforcement of its rights under this Agreement, and [AML] agrees to promptly pay same." Again, the ***extent*** of UWM's incurred attorney fees, costs, and other expenses can be determined later, but UWM's ***entitlement*** to damages under Paragraph 7.30, due to AML's undisputed submission of loans to a Select Retail Lender, can be determined now as a matter of law.

* * *

In sum, UWM and AML were bound by a contract: the Wholesale Broker Agreement, as amended by the All-In Addendum in 2021, which precluded AML

from submitting loans to Rocket Mortgage. AML breached that contract by submitting loans to Rocket Mortgage. The contract entitles UWM to recover liquidated damages and attorney's fees, costs, and expenses. There is no genuine dispute as to any material fact, and UWM is entitled to judgment as a matter of law on its breach-of-contract claim, with damages amounts to be determined later.

## II.   Section 7.30's Liquidated Damages Provision is Enforceable Because Damages Upon Breach Were Difficult to Estimate at the Time of the All-In Addendum.

Given AML's clear breach, UWM expects that AML will argue that the liquidated damages provision in Section 7.30 is an unenforceable penalty. AML would be wrong.

Whether a liquidated damages provision—which is "simply an agreement by the parties fixing the amount of damages in case of a breach"—is "valid and enforceable or invalid as a penalty is a question of law." *UAW-GM Hum. Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 421 (Mich. Ct. App. 1998). "[C]ourts are to sustain such provisions if the amount is reasonable with relation to the possible injury suffered and not unconscionable or excessive." *Id*. In other words, "courts should give effect to the parties' intent and enforce liquidated-damages provisions unless 'it is obvious from the contract . . . that the principle of compensation has been disregarded,'" *Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692, 706 (6th Cir. 2017), and should ignore such a

provision only "if the parties' agreement is clearly unjust and unconscionable." *Lelli's Inn, Inc. v. Steven Lelli's Inn on the Green, L.L.C.*, No. 13-14766, 2017 WL 6521325, at \*13 (E.D. Mich. Oct. 24, 2017), *report and recommendation adopted*, No. 13-14766, 2017 WL 6513009 (E.D. Mich. Dec. 20, 2017).

Liquidated damages provisions are particularly appropriate "[w]hen it is difficult to determine the actual damages which would be suffered under such circumstances and where the determination of the actual damages for a breach are uncertain in their nature, difficult to ascertain or impossible to estimate with certainty by any pecuniary standard." *Genesee Cnty. Bd. of Rd. Comm'rs v. N. Am. Dev. Co.*, 119 N.W.2d 593, 597–98 (Mich. 1963); *St. Clair Med., P.C. v. Borgiel*, 715 N.W.2d 914, 921 (Mich. Ct. App. 2006) (recognizing that liquidated damages provisions are "particularly appropriate where actual damages are uncertain and difficult to ascertain or are of a purely speculative nature"). When determining whether damages upon breach was difficult to estimate, courts look at the "conditions existing when the contract was signed rather than at the time of the breach." *See Barclae v. Zarb*, 834 N.W.2d 100, 120 (Mich. Ct. App. 2013); *Hemlock*, 867 F.3d at 707 ("[L]iquidated damages are especially appropriate because actual damages would have been difficult to measure when the contract was executed."). It is at the time of contract formation that the parties "are in as good a position as anyone to arrive at a fair amount of damages for a subsequent breach,"

and are able "to render certain and definite that which appears to be uncertain and not easily proven." *Curran*, 89 N.W.2d at 604. Thus, where actual damages upon breach are difficult to ascertain, courts "permit the parties to ascertain the damages for themselves and to provide in the contract the amount of damages which will be paid for the breach" and "respect the honest attempt of the parties themselves to compute as best they can then just compensation from loss of the bargain by breach." *Lelli's Inn*, 2017 WL 6521325, at *12, 14.

The party challenging a liquidated damages provision bears the burden of proving that the provision is unreasonable. *See Hemlock*, 867 F.3d at 706–07; *Lelli's Inn*, 2017 WL 6521325, at *13 (recognizing that "the burden of establishing the unconscionability of the [liquidated damages] provision lies with the party challenging the provision" because "the burden is on the party seeking to avoid the operation of a contract provision it knowingly agreed to").

The All-In Addendum's liquidated damages clause is enforceable because at the time of contracting, it was difficult to estimate—despite UWM's efforts to do so—the damages UWM would sustain upon breach. The amount of liquidated damages was determined through a meeting of UWM's upper management. Ex. A, DeCiantis Dep., at 12:21–13:3; 16:11–17:8. The $5,000 per-loan amount reflected their best assessment of the damage UWM would sustain if a Broker Partner breached the All-In Addendum by sending loans to the Select Retail Lenders—

21

entities that were actively damaging the wholesale lending channel where UWM subsists—but also still utilized the resources that UWM had built and invested into its Broker Partners' businesses. *See id.* at 23:1-6, 45:13–46:2, 59:12-18, 61:2-21, 73:2-15, 76:7-17, 80:9-15, 81:1-4, 97:25–98:3, 102:12-18. The $5,000 per-loan factored in not only the value of these resources that were effectively being invested into entities that were harming the wholesale lending channel, but also reflected the harm done, including resulting losses of goodwill, to the wholesale lending channel generally—and, necessarily, to UWM, given that its business model wholly relies on the viability of that channel. *Id.* at 194:10-15. The value of this foundational damage to the wholesale lending channel and a per-broker determination of UWM's essentially forfeited invested resources was difficult to calculate at the time the All-In Addendum was created. *Id.* at 71:24-72:10, 166:9–167:1, 167:3–168:16.

The Sixth Circuit has upheld liquidated damages clauses like the one in Section 7.30—crafted in light of difficult-to-estimate actual damages. In *Hemlock*, the court upheld the district court's award of a more than $585 million liquidated damages award (plus more than $200 million in prejudgment interest), which represented the entire outstanding balance due for the remaining seven-year term of the breached 13-year long-term supply agreement. *See* 867 F.3d at 695–96, 707–08. The court noted that liquidated damages were "especially appropriate" because actual damages—lost profits in that case—"would have been difficult to measure

when the contract was executed." *Id.* at 707–08. The court specifically pointed to the various factors that go into lost profit calculations—"including, among other things, [] costs of raw materials, utilities, and labor, as well as an analysis of the 'discount rate," all of which "requires that a number of assumptions be made." *Id.* For that and other reasons, the court concluded that the liquidated damages award—which exceeded the breaching party's estimate of actual damages by more than $200 million—was enforceable. *Id.* at 706, 708; *see also St. Clair Med.*, 715 N.W.2d at 271 ("The $40,000 in liquidated damages does not strike this Court as unconscionable or excessive in relation to potential patient loss; consequently, the trial court did not err in enforcing the parties' agreement.").

So too here. UWM determined the $5,000 per-loan amount by evaluating not only the value of the substantial resources that—in the event of breach—it was effectively investing into entities that began harming its lifeline (the wholesale lending channel) but also reflected the harm done, including resulting losses of goodwill, to the wholesale lending channel and, in turn, to UWM. Ex. A, DeCiantis Dep., at 194:10-15. The value of this foundational damage to the wholesale lending channel, including loss of goodwill, and a per-broker determination of UWM's essentially forfeited invested resources was difficult to calculate at the time the All-In Addendum was created. *Id.* at 71:24–72:10, 166:9–167:1, 167:3–168:16.

*Hemlock* also illustrates that seemingly intangible damages, such as loss of

goodwill, properly can be considered when setting liquidated damages. In evaluating the provision, the district court also noted that the breaching party's estimate of actual damages failed to "take into consideration potential harm to [the other party] as a result of breach that is not directly reflected in the contracts," which included "capital investments in expanded capacity and loss of good will with customers, suppliers, and employees, amongst other things." *Hemlock Semiconductor Corp. v. Deutsche Solar GmbH*, No. 13-CV-11037, 2016 WL 3743130, at *19 (E.D. Mich. July 13, 2016), *aff'd sub nom. Hemlock*, 867 F.3d 692; *see also Exar*, 89 F.3d 833 ("We agree with the district court's conclusion that this figure 'is reasonable and not punitive in light of the anticipated lost opportunity of engineering charges that could have been devoted to projects resulting in production quantity orders.'"); *Owens-Brockway Glass Containers Inc. v. State Tax Comm'n*, No. 314190, 2014 WL 5358350, at *6 (Mich. Ct. App. Oct. 21, 2014) (finding that the unpredictable "ripple effect of plaintiff's breach made the possible injury to defendant very difficult to calculate").

Other courts in this district have also upheld per-violation liquidated damages clauses like the one here. In *Lelli's Inn*, the court upheld a $10,000 per-violation liquidated damages provision in the parties' settlement agreement that arose from an underlying trademark infringement suit. 2017 WL 6521325. Because the defendant "offered no evidence that the liquidated damages clause [was] anything other than

an 'honest attempt' of the parties to compute just compensation," it was due to be enforced. *Id.* at *14. The $5,000 per-loan liquidated damages clause here is equally enforceable given that it reflected UWM's upper-management's best assessment of the damage UWM would sustain if a Broker Partner breached the All-In Addendum by sending loans to the Select Retail Lenders. *See* Ex. A, DeCiantis Dep., at 12:21–13:3, 16:11–17:8, 23:1-6, 45:13–46:2, 59:12-18, 61:2-21, 73:2-15, 76:7-17, 80:9-15, 81:1-4, 97:25–98:3, 102:12-18.

In sum, Section 7.30 is enforceable, and AML is liable for liquidated damages.

## CONCLUSION

UWM is entitled to judgment as a matter of law that AML breached the parties' contract and that UWM is entitled to recover liquidated damages and its attorney's fees, costs, and expenses, the extent of which can be determined at a later date.

Respectfully submitted,

By: */s/ Moheeb H. Murray*
Moheeb H. Murray (P63893)
William E. McDonald, III (P76709)
Mahde Y. Abdallah (P80121)
**BUSH SEYFERTH PLLC**
100 West Big Beaver Road, Suite 400
Troy, MI 48084
T/F: (248) 822-7800
murray@bsplaw.com
mcdonald@bsplaw.com
abdallah@bsplaw.com

Dated: February 7, 2025

A. Lane Morrison (P87427)
**BUSH SEYFERTH PLLC**
5810 Wilson Road, Suite 125
Humble, TX 77396
T/F: (281) 930-6853
morrison@bsplaw.com

*Attorneys for United Wholesale Mortgage, LLC*

25

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE, LLC

     *Plaintiff,*

v.

AMERICA'S MONEYLINE, INC.

     *Defendant.*

Case No. 2:22-cv-10228

Honorable Laurie J. Michelson
Magistrate Judge Elizabeth A. Stafford

---

## BRIEF FORMAT CERTIFICATION FORM

I, <u>Moheeb H. Murray</u>, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true:

    ☒ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

    ☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

    ☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

    ☒ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

    ☒ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

    ☒ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

1

☒ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

Respectfully submitted,

Dated: February 7, 2025

By: */s/ Moheeb H. Murray*
Moheeb H. Murray (P63893)
William E. McDonald, III (P76709)
Mahde Y. Abdallah (P80121)
**BUSH SEYFERTH PLLC**
100 West Big Beaver Road, Suite 400
Troy, MI 48084
T/F: (248) 822-7800
murray@bsplaw.com
mcdonald@bsplaw.com
abdallah@bsplaw.com

A. Lane Morrison (P87427)
**BUSH SEYFERTH PLLC**
5810 Wilson Road, Suite 125
Humble, TX 77396
T/F: (281) 930-6853
morrison@bsplaw.com
*Attorneys for United Wholesale Mortgage, LLC*

2