# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE, LLC, a Michigan Limited Liability Company,

      Plaintiff,

v

                                      Case No. 22-cv-10228
                                      Hon. Laurie J. Michelson

AMERICA'S MONEYLINE, INC., a California Company,

      Defendant.

_____/

<table>
<tr><td>

WILLIAM E. McDONALD III (P76709)
ROGER P. MEYERS (P73255)
MAHDE Y. ABDALLAH (P80121)
LANE MORRISON
MOHEEB H. MURRAY (P63893)
BUSH SEYFERTH PLLC
Attorneys for Plaintiff
100 W. Big Beaver Road, Suite 400
Troy, Michigan 48084
(248) 822-7800
mcdonald@bsplaw.com
meyers@bsplaw.com
abdallah@bsplaw.com
morrison@bsplaw.com
murray@bsplaw.com

</td><td>

JEFFREY B. MORGANROTH (P41670)
JASON R. HIRSCH (P58034)
MORGANROTH & MORGANROTH, PLLC
Attorneys for Defendant
344 North Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(248) 864-4000
jmorganroth@morganrothlaw.com
jhirsch@morganrothlaw.com

DAVID A. ETTINGER (P26537)
Co-Counsel for Defendant
HONIGMAN LLP
660 Woodward Avenue, Suite 2290
Detroit, MI 48226
(313) 465-7368
DEttinger@honigman.com

</td></tr>
</table>

_____/

# DEFENDANT, AMERICA'S MONEYLINE, INC.'S, ANSWER TO UNITED WHOLESALE MORTGAGE LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT [ECF NO. 54]

Defendant, America's Moneyline, Inc. ("AML"), by and through its attorneys, Morganroth & Morganroth, PLLC, for its answer to United Wholesale Mortgage LLC's ("UWM") Motion for Partial Summary Judgment [ECF No. 54] states as follows:

1. In answer to Paragraph 1, AML denies for reason untrue.

2. In answer to Paragraph 2, AML denies for reason untrue.

AML further denies for reason untrue that summary judgment on liability is appropriate inasmuch as there exist genuine issues of material fact which preclude summary judgment. In addition, AML denies for reason untrue that UWM has suffered any damages at all.

Finally, AML denies that UWM should be granted leave to amend this Motion or granted leave to file a second motion for summary judgment given that UWM elected to file its motion for summary judgment now.

1

WHEREFORE, AML respectfully requests that this Court DENY the Motion in its entirety.

Respectfully submitted,

MORGANROTH & MORGANROTH, PLLC

By: /s/ Jeffrey B. Morganroth
JEFFREY B. MORGANROTH (P41670)
JASON HIRSCH (P58034)
Attorneys for AML
344 North Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(248) 864-4000
jmorganroth@morganrothlaw.com
Dated: February 28, 2025          jhirsch@morganrothlaw.com

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE, LLC, a Michigan Limited Liability Company,

      Plaintiff,

v

AMERICA'S MONEYLINE, INC., a California Company,

      Defendant.

Case No. 22-cv-10228
Hon. Laurie J. Michelson

| | |
|---|---|
| WILLIAM E. McDONALD III (P76709) | JEFFREY B. MORGANROTH (P41670) |
| ROGER P. MEYERS (P73255) | JASON R. HIRSCH (P58034) |
| MAHDE Y. ABDALLAH (P80121) | MORGANROTH & MORGANROTH, PLLC |
| LANE MORRISON | Attorneys for Defendant |
| MOHEEB H. MURRAY (P63893) | 344 North Old Woodward Avenue, Suite 200 |
| BUSH SEYFERTH PLLC | Birmingham, Michigan 48009 |
| Attorneys for Plaintiff | (248) 864-4000 |
| 100 W. Big Beaver Road, Suite 400 | jmorganroth@morganrothlaw.com |
| Troy, Michigan 48084 | jhirsch@morganrothlaw.com |
| (248) 822-7800 | |
| mcdonald@bsplaw.com | DAVID A. ETTINGER (P26537) |
| meyers@bsplaw.com | Co-Counsel for Defendant |
| abdallah@bsplaw.com | HONIGMAN LLP |
| morrison@bsplaw.com | 660 Woodward Avenue, Suite 2290 |
| murray@bsplaw.com | Detroit, MI 48226 |
| | (313) 465-7368 |
| | DEttinger@honigman.com |

# DEFENDANT, AMERICA'S MONEYLINE, INC.'S, BRIEF IN OPPOSITION TO UNITED WHOLESALE MORTGAGE LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT [ECF NO. 54]

## <u>STATEMENT OF ISSUES PRESENTED</u>

1. Is UWM entitled to summary judgment where:

    a. There are genuine issues of material fact as to the existence of any agreement between the parties which included the Ultimatum;

    b. There are genuine issues of material fact as to whether any breach could have occurred because there is no enforceable agreement which included the sole provision UWM alleges was breached; and

    c. There are genuine issues of material fact as to the existence of any damages?

    AML Answers:                  No.

    The Court Should Answer:      No.


2. Is UWM entitled to summary judgment where it has failed to provide requested discovery which would further support AML's defenses?

    AML Answers:                  No.

    The Court Should Answer:      No.

3. Is UWM entitled to summary judgment where AML has raised numerous defenses which negate UWM's single claim for breach of contract?

AML Answers:                    No.

The Court Should Answer:    No.

## **Controlling or Most Appropriate Authority**

*Celotex Corp. v. Catrett*,
    477 U.S. 317; 106 S. Ct. 2548 (1986) ...........................................................11

*In Re Constr. Diversification, Inc.*,
    36 B.R. 434 (Bankr. E.D. Mich. 1983)..........................................................21

*Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*,
    469 Mich. 362, 666 N.W.2d 251 (2003) .......................................................18

*Roland v. Kenzie*,
    11 Mich.App. 604; 162 N.W.2d 97 (1968) ...................................................23

*St. Clair Med., P.C. v. Borgiel*,
    270 Mich.App. 260; 715 N.W.2d 914 (2006) ..............................................20

Fed. R. Civ. P. 56 .............................................................................................. 11, 12

iii

# **Table of Contents**

I.   Standard of Review ...................................................................11

II.  The Motion is Premature...........................................................12

III. Genuine Issues of Material Fact Exist as to Each Element of UWM's Claim which Preclude Summary Judgment .............................................13

  A.   There are Genuine Issues of Material Fact as to the Existence of Any Valid Agreement Containing the Ultimatum ......................................13

    1.    The Unsigned Amendment is Invalid on Its Face .........................13

    2. Even if the Unsigned Amendment was Somehow Valid, Which it was Not, AML Terminated this Agreement and Entered into a New Agreement with UWM which Did Not Include the Ultimatum .........18

  B.   Because UWM Cannot Prove the Existence of Any Agreement with AML Containing the Ultimatum, It Cannot Demonstrate Any Breach ...............................................................................................19

  C.    UWM Cannot Demonstrate the Existence of Any Damages ............20

IV. AML Has Raised Defenses Which Preclude Summary Judgment .........24

CONCLUSION.................................................................................25

## Index of Authorities

**Cases**                                                                    **Page(s)**

*Adell Broad. Corp. v. Apex Media Sales, Inc.*,
    269 Mich.App. 6; 708 N.W.2d 778 (2005) ....................................................16

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242; 106 S. Ct. 2505 (1986) ........................................................12

*Celotex Corp. v. Catrett*,
    477 U.S. 317; 106 S. Ct. 2548 (1986) ........................................................11

*Competition, Ltd. v. Mosier, Inc.*,
    1987 U.S. Dist. LEXIS 15378 (W.D. Mich. Sep. 29. 1987) ........................21

*Edoff v. Hecht*,
    270 Mich. 689; 260 N.W. 93 (1935) ..........................................................21

*Holland v. Trinity Health Care Corp.*,
    287 Mich.App. 524; 791 N.W.2d 724 (2010) .............................................13

*In Re Constr. Diversification, Inc.*,
    36 B.R. 434 (Bankr. E.D. Mich. 1983)........................................................21

*In re Exemplar Mfg. Co.*,
    331 B.R. 704 (Bankr. E.D. Mich. 2005)......................................................21

*Matsushita Elec. Indus. v. Zenith Radio Corp.*,
    475 U.S. 574; 106 S. Ct. 1348 (1986) ........................................................11

*Nichols v. Seaks*,
    296 Mich. 154; 295 N.W. 596 (1941) ........................................................22

*Papo v. Aglo Rests.*,
    149 Mich.App. 285; 386 N.W.2d 177 (1986) .............................................21

*Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*,
   469 Mich. 362, 666 N.W.2d 251 (2003) ......................................................18

*Roland v. Kenzie*,
   11 Mich.App. 604; 162 N.W.2d 97 (1968) ..................................................23

*St. Clair Med., P.C. v. Borgiel*,
   270 Mich.App. 260; 715 N.W.2d 914 (2006) ..............................................20

*Tribe v. Snipes*,
   19 F.App'x 325 (6th Cir. 2001) ....................................................................12

*U.S. v. Diebold*,
   369 U.S. 654; 82 S. Ct. 993 (1962) ..............................................................12

*UAW-GM Human Res. Ctr. v KSL Rec. Corp.*,
   228 Mich.App. 486; 579 N.W.2d 411 ..........................................................21

*Woodington v. Shokoohi*,
   288 Mich.App. 352; 792 N.W.2d 63 (2010) ................................................15

*XCO Int'l, Inc. v. Pac. Sci. Co.*,
   369 F.3d 998 (7th Cir. 2004) ........................................................................23

**Rules**

Fed. R. Civ. P. 56 ................................................................................. 11, 12

Fed. R. Civ. P. 56(c)(1) and (2) ...............................................................2

**Other Authorities**

Mich. Comp. Laws Serv. § 566.1 ............................................................16

Restatement (Second) of Contracts §356 cmt (e) ...................................24

**Introduction**

As part of its disingenuous effort to increase its market share through threats, bullying, coercion and intimidation, Plaintiff, United Wholesale Mortgage, LLC ("UWM"), purported to unilaterally implement its so-called "All-In Initiative" in March 2021. Despite UWM's marketing gloss, this initiative was in fact an ultimatum to all independent mortgage brokers who worked with UWM to either surrender their independent status and compromise their fiduciary duties to their clients by agreeing not to send loans to UWM's competitors (Rocket Pro and Fairway) or to cease doing business with UWM. In reality, this was just an extension of UWM's long-standing policy of compelling ostensibly independent mortgage brokers to become a *de facto* sales force for UWM. UWM knew that by preventing *independent* mortgage brokers from working with UWM's competitors, a large volume of loans that would otherwise have gone to those competitors would go to UWM. Thus, UWM's claim of encouraging a thriving market of *truly independent* mortgage brokers was a mere façade – UWM wanted this market for itself.

Indeed, if independent mortgage brokers did *not* agree to UWM's ultimatum, UWM would claim that it had the right to *unilaterally* impose this condition upon the independent brokers regardless and subject any alleged violators to grossly punitive "liquidated damages" that have no nexus to any actual damage suffered by UWM (because there is no such damage at all). UWM would then agree to waive

1

the entirely fabricated liquidated damages if the brokers agreed to stop doing business with UWM's competitors and steered their business to UWM only.

## Statement of Facts[1]

## AML's Original Agreement with UWM

AML executed a Wholesale Broker Agreement with UWM on April 14, 2020 (the "Original AML/UWM Agreement"). ECF No. 1-1. This Agreement did *not* restrict AML from conducting business with wholesale mortgage lenders other than UWM. Pursuant to § 7.01, the Original AML/UWM Agreement could be amended only in a writing signed by both parties except UWM could modify its own conditions for accepting loans pursuant to § 7.08. *Id.*, PageID.16-17 at §§ 7.01, 7.08.

## UWM's Claim that the Original AML/UWM Agreement Was Amended

Although UWM and its primary owner, Mat Ishbia ("Ishbia"), hold themselves out as defenders and self-appointed protectors of the independent broker community, they are actually untrustworthy bullies who only care about UWM's own market share and stock performance and who are obsessed with trying to damage the

---

[1] UWM's alleged "Undisputed Facts" are highly contested. ECF No. 51, PageID.1030-1039. Since UWM has not deposed any of AML's representatives, it is impossible for UWM to even know what portions of its "undisputed facts" are disputed. AML's principals, Shawn Nevin ("Nevin") and Dean Lob ("Lob"), have submitted sworn affidavits which set forth the true facts of this case and demonstrate, at a minimum, that genuine issues of material fact exist. Exhs. 1, 2. Furthermore, UWM's reliance upon mere allegations in its own Complaint as purported support for its "undisputed facts" is improper inasmuch as only admissible evidence may be used as support for a Rule 56 motion. Fed. R. Civ. P. 56(c)(1) and (2).

business and reputation of their primary business rivals by any means. In a desperate attempt to stifle competition, on March 4, 2021, UWM publicly announced an "ultimatum" for its purportedly independent broker partners via a video posted on UWM's Facebook page by Ishbia. ECF No. 54-3.

The ultimatum announced by Ishbia required mortgage brokers who continued to do business with UWM to agree to an amended broker agreement with UWM that restricts and prohibits the ostensibly *independent* mortgage brokers from doing business with two of UWM's major competitors (the "Ultimatum"). *Id*. Any alleged breach of this prohibition would result in the imposition of exorbitant and onerous monetary penalties by UWM under the guise of "liquidated damages" (the "Liquidated Damages Provision").[2] *Id*.

## AML Refuses to Agree to the Ultimatum

Despite UWM's pressure on AML to execute an amendment including the Ultimatum, AML refused to do so. Exhs. 1 at ¶¶ 3-4 (Nevin Aff); 2 at ¶¶ 3-4 (Lob Aff). Indeed, notwithstanding UWM's present assertions, UWM *knew* it could not unilaterally impose the Ultimatum because UWM repeatedly demanded that AML affirmatively *agree* to the inclusion of the Ultimatum, which AML refused to do. *Id*.

---

[2] The irony and hypocrisy of UWM's stated desire to "help[] independent mortgage companies succeed" while *limiting* their independence and *penalizing* them for exercising such independence appears entirely lost on UWM and Ishbia. ECF No. 54-4, PageID.1333, 1345-1346.

Specifically, on March 17, 2021, UWM sent an email to Lob confirming that AML *had* not responded to UWM's demand that it agree to the Ultimatum and claimed that UWM would cease doing business with AML.[3] Exh. 3. On May 14, 2021, UWM yet again demanded that AML execute a "renewal" by May 20, 2021, which AML declined to do because of UWM's insistence upon the Ultimatum. Exh. 4.

### **UWM Assures AML that UWM Will *Not* Enforce the Ultimatum**

On June 1, 2021, Lob spoke to UWM's Director of National Accounts, Bryan A. Miller ("Miller"). Exhs. 1 at ¶ 6; 2 at ¶ 6. During that conversation, Miller "stated that UWM is NOT going to enforce by fine or action the request that we stop utilizing Quicken [Rocket]." *Id*. (capitalization as in original). Miller further told Lob that "UWM has not FINED any of their partners and he insured [sic] me that he will make sure we are NOT fined in the rare case that UWM does in fact change their policy on this issue." *Id*. Miller claimed that "he personally cannot put anything like this in in writing but told me as always he HAS OUR BACK and wants us to remain focused on growing the relationship and crushing the competition." Exh. 5.

---

[3] Notwithstanding its assertion that it would cease doing business with AML, UWM concedes it continued to do business with AML after March 17, 2021, necessarily under the terms of the Original AML/UWM Agreement, because AML had refused to execute any amendment. ECF No. 54, PageID.1036; ECF No. 54-7 (AML loans accepted by UWM during March 2021). At a minimum, UWM could not possibly recover liquidated damages based upon any loans AML sent to Rocket Pro during the time period when UWM *concedes* that AML had *not* agreed to the Ultimatum. This question of fact alone precludes summary judgment.

4

On June 4, 2021, UWM sent an email to AML stating that UWM would "love to welcome [AML] back to the UWM Broker Network," and again asked AML to renew its application. Exh. 6.

Based upon UWM's promises that it would not enforce the Ultimatum, and AML's understanding that it was renewing its relationship with UWM under its existing terms (*i.e.*, *without* the Ultimatum), AML "renewed" online on June 15, 2021. Exhs. 1 at ¶ 7; 2 at ¶ 7; 7. At no time did AML sign any amendment to the Original AML/UWM Agreement that included the Ultimatum.

Within a month after agreeing to the online renewal, AML informed UWM that it was cancelling and terminating the relationship with UWM because AML felt that it had been coerced and manipulated into executing the renewal based upon UWM's threats it would cease processing AML loans already in the UWM pipeline (*i.e.*, that UWM would harm AML's *clients* if AML did not accede to UWM's demand to "renew"). Exhs. 1 at ¶¶ 7-8; 2 at ¶¶ 7-8. After further assurances from UWM that it would not enforce the Ultimatum, AML agreed to continue the relationship with UWM without agreeing to the Ultimatum. Exhs. 1 at ¶ 8; 2 at ¶ 8.

### Welty's Visit to AML's Offices in August 2021

On August 12, 2021, UWM's Senior Key Account Executive, Scott Welty ("Welty"), visited AML's office along with two or three other UWM employees. Exh. 1 at ¶ 10; 2 at ¶ 10; 8. The purpose of the visit was to assure AML that it was

5

an important customer and, while UWM wanted more business, it would *not* enforce the Ultimatum nor the Liquidated Damages Provision. *Id*. Welty confirmed that UWM had no intention of damaging its "partners" with fines or penalties for doing business with Rocket Pro just as Miller had so assured AML in June 2021. *Id*.

During Welty's August 12, 2021, he had one meeting with only Lob and another meeting with Lob and Nevin jointly. Exhs. 1 at ¶ 11; 2 at ¶ 11. Welty's representations and assurances confirming that UWM would not seek to enforce the Ultimatum and Liquidated Damages Provision as to AML were consistent and unequivocal at both meetings. *Id*.

Thereafter, Nevin and Lob continued to receive verbal re-assurances from Miller and Welty that AML could continue to do business with Rocket Pro *without any repercussions or negative consequences*. Exhs. 1 at ¶ 12; 2 at ¶ 12. In reliance upon Miller's and Welty's promises and assurances, AML continued to do business with both Rocket Pro and UWM. *Id*.

## **UWM Reneges Upon its Promises and Assurances to AML**

UWM had made clear that it knew about and tracked every file that AML was sending to Rocket Pro. Exhs. 1 at ¶¶ 12-13; 2 at ¶¶ 12-13. Nevertheless, based upon UWM's promises and assurances, AML continued to do business with both Rocket Pro and UWM over the next couple of months without any criticism or objection from UWM. *Id*. In fact, during this time, Welty and Miller brought up AML's funded

6

loan units with Rocket Pro down to exact numbers on multiple occasions confirming that UWM was fully aware that AML was conducting business with Rocket Pro as well as UWM. Exhs. 1 at ¶ 13; 2 at ¶ 13.

Despite UWM's repeated and continuous promises and representations, in December 2021, UWM's posture suddenly and inexplicably changed. During a December 9, 2021 telephone call which only Lob was able to attend on behalf of AML, Miller asked point blank whether AML was ready to end its relationship with Rocket Pro. Exh. 2 at ¶ 14. Lob reiterated the sticking points that AML had previously explained to UWM regarding UWM's uncompetitive pricing and AML's need to offer its clients choice and the best possible pricing. *Id*.

UWM's Senior Legal Counsel, Adam Wolfe ("Wolfe"), who was not initially identified as a participant on the call, unexpectedly introduced himself halfway through the call and stated that he, on behalf of UWM, needed to know exactly what AML's decision was going to be (*i.e.*, whether AML would end its relationship with Rocket Pro). *Id*. Lob, who felt surprised and ambushed at having UWM's senior legal counsel covertly listening in on the call, reiterated to Wolfe everything he had previously expressed to Miller as to why AML was continuing to use Rocket Pro. *Id*. Lob also reiterated that Miller and Welty had expressly represented, promised and assured Lob, Nevin and other representatives of AML on several occasions that UWM would *not* enforce the Ultimatum and no fines nor penalties would be

7

imposed on AML for continuing to work with Rocket Pro. *Id*.

At that point, Miller indicated that AML must immediately stop doing business with Rocket Pro because other brokers were calling UWM and demanding that they too be allowed to do business with Rocket Pro. *Id*. Lob was taken aback by Miller's reversal especially inasmuch as it contradicted all previous assurances by UWM and AML knew that others in the broker community had been working with both UWM and Rocket Pro notwithstanding the Ultimatum without reprisal from UWM. *Id*. Lob indicated that he needed to confer with Nevin regarding the disturbing and disappointing telephone call. *Id*.

On December 13, 2021, Nevin had a telephone conversation with Miller. Exh. 1 at ¶ 14.  During the December 13, 2021 telephone call,

    a. Nevin expressed to Miller that he was extremely upset about the December 9, 2021 telephone call between Miller and Lob. Nevin told Miller that he was extremely upset about all the representations, promises and assurances that had been made by UWM that UWM would not enforce the Ultimatum or Liquidated Damages Provision upon which AML had been relying but which UWM apparently would not be honoring;

    b. Miller told Nevin that AML needed to make a decision as to the Ultimatum and the choice had to be made between UWM and Rocket Pro;

    c. Nevin told Miller that this was not a choice that AML wanted to make, but, if forced to do so, AML had to select Rocket Pro in light of UWM's abrupt pressure to make a decision, the underhandedness of an eavesdropped telephone call, overall dishonesty by UWM and the critical importance of being able to offer the best pricing to AML's clients which was more consistently provided by Rocket

Pro, as well as UWM inability to offer programs for borrowers with less than perfect credit scores;

d. Nevin asked Miller to permit AML to close out AML's active loan pipeline with UWM and to provide 60 days in which to do so in order to avoid consumer harm;

e. Miller stopped Nevin and asked if this was AML's final decision. Miller informed Nevin that, if it was AML's final decision, Miller could no longer protect AML from what would happen next;

f. Nevin indicated that he did not understand what Miller was implying. Miller explained that, as a result of AML's decision to maintain its relationship with Rocket Pro, there would likely be strong repercussions from UWM and specifically indicated that AML would likely be fined based on the Ultimatum and Liquidated Damages Provision in the Unsigned Amendment notwithstanding UWM's prior representations, promises and assurances that AML would not enforce the Ultimatum and Liquidated Damages Provision at all; and

g. Nevin told Miller that this threat was not only contrary to the promises and assurances made by UWM, including those made by Miller himself, but was also tantamount to extortion. *Id.*

On December 15, 2021, AML received a letter from UWM's counsel demanding a payment of liquidated damages in the exorbitant amount of $1.9 million purportedly based upon AML's breach of the Ultimatum. Exh. 9.

From and after December 15, 2021, AML through its legal counsel attempted to resolve the unfair and extortionate demands made in UWM's demand letter, but UWM refused to be honorable or reasonable. This lawsuit followed.

## **Procedural Posture**

On February 3, 2022, UWM, filed its Complaint against AML alleging a claim of breach of contract based upon AML's alleged breach of an unsigned amendment (the "Unsigned Amendment") to the Original AML/UWM Agreement which UWM claims includes the Ultimatum. ECF No. 1. AML filed its answer, affirmative defenses and counter-complaint on February 25, 2022. ECF No. 7. Following motion practice, AML's counterclaims have been dismissed. ECF Nos. 14, 35, 56.

On June 12, 2024, UWM filed a motion for leave to file an amended complaint, which sought to add entirely new claims and new parties. ECF No. 45. This motion was granted on February 14, 2025, so UWM will be filing an amended complaint which will alter the breadth and scope of this case. ECF No. 56.

On August 6, 2024, AML requested dates for the depositions of five representatives of UWM. Exh. 10. To date, UWM has not provided a single date for any of the requested depositions.[4]

On August 7, 2024, AML issued its first set of written discovery requests to UWM. Exhs. 11; 12. UWM provided its written responses to the AML's Discovery

---

[4] AML refrained from filing a motion to compel the depositions in light of UWM's then-pending request for leave to file an amended complaint, which has now been granted. As a result, discovery should now move forward based upon UWM's amended complaint and AML's defenses thereto, and AML therefore respectfully requests that it be permitted to conduct its requested depositions prior to any ruling by this Court on this Motion.

Requests on October 4, 2024. ECF No. 54-2, PageID.1292-1315; ECF No. 54-3, PageID.1317-30. On October 22, 2024, AML sent a detailed letter identifying numerous deficiencies in UWM's discovery responses. Exh. 13. On November 27, 2024, UWM responded and declined to provide any of the additional information requested. Exh. 14. AML is now pursuing a motion to compel this discovery.

Notwithstanding the pending amended complaint and outstanding discovery, on February 7, 2025, UWM filed this motion seeking summary judgment. UWM's Motion should be denied because it is premature, there remain numerous genuine issues of material fact and AML has raised meriroious defenses, any one of which, if proven, defeats UWM's claim for breach of contract.

## Argument

### I.   Standard of Review.

Under Fed. R. Civ. P. 56 , summary judgment is appropriate only when the moving party, in a properly supported motion, conclusively demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment in its favor as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323; 106 S. Ct. 2548 (1986) . In deciding the motion, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587; 106 S. Ct. 1348 (1986) . Where different ultimate inferences between the parties may properly be drawn, the case is not one

11

for summary judgment. *U.S. v. Diebold*, 369 U.S. 654, 655; 82 S. Ct. 993 (1962) . In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence or resolve factual disputes; so long as the evidence in the record is such that a reasonable fact-finder, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the court must deny the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242; 106 S. Ct. 2505 (1986) .

## II.   The Motion is Premature.

Fed. R. Civ. P. 56(d) states:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1)   *defer considering the motion or deny it*;
>
> (2)   allow time to obtain affidavits or declarations or to *take discovery*; or
>
> (3)   issue any other appropriate order. (emphasis added).

This Motion is premature in light of the facts that:

1. UWM will be filing an amended complaint that will alter the breadth and scope of this case. ECF No. 56; and

2. UWM has not complied with its discovery obligations in that it has not fully responded to AML's written discovery and has failed to provide any dates at all for depositions requested by AML on August 6, 2024 (Exhs. 10; 15). Summary judgment is improper where the non-moving party has not been granted access to

discovery it could use to oppose a motion for summary judgment. *Tribe v. Snipes*, 19 F.App'x 325, 327 (6th Cir. 2001).

### III.   Genuine Issues of Material Fact Exist as to Each Element of UWM's Claim which Preclude Summary Judgment.

In order to prevail, UWM must show there are no genuine issues of material fact as to: (1) the existence of a contract; (2) the defendant's breach of *that* contract; and (3) damages due to the breach. Because there are genuine issues of material fact as to each of these elements, summary judgment is improper.

#### A. There are Genuine Issues of Material Fact as to the Existence of Any Valid Agreement Containing the Ultimatum.

UWM's claim for breach of contract is premised upon its allegation that the Unsigned Amendment to the Original AML/UWM Agreement is somehow valid and thereby subject to being breached. In fact, the Unsigned Amendment is *not* valid and therefore the Ultimatum could not serve as the basis for any alleged breach.

#### 1.  The Unsigned Amendment is Invalid on Its Face.

First, the Original AML/UWM Agreement prohibits its amendment except via a writing signed by both parties. ECF No. 1-1, PageID.18 at § 7.01. Specifically, § 7.01 of the Original AML/UWM Agreement states:

> **7.01. Amendment of Agreement**. Except as set forth on [sic] § 7.08, this Agreement may *not* be amended except *in writing executed by authorized representatives of both Broker and UWM*. *Id*. (emphasis added).

Clear and unambiguous contract language must be enforced as written. *Holland*

13

*v. Trinity Health Care Corp.*, 287 Mich.App. 524, 527; 791 N.W.2d 724 (2010) .

Although UWM had contemporaneously contended that AML's consent was required for the amendment which purported to add the Ultimatum (because UWM had repeatedly demanded AML's consent) (Exhs. 3; 4), UWM has now reversed course and claims that it could unilaterally bind AML to the Ultimatum merely by announcing this change pursuant to § 7.08. UWM is wrong.

§ 7.08 of the Original AML/UWM Agreement states:

> **7.08. UWM Amendments & Website.** This Agreement, and *UWM's policies, procedures, requirements and instructions concerning Mortgage Loan Applications and Mortgage Loans* … may be amended by UWM from time to time, and UWM will endeavor to provide broker with prompt notice thereof …. Broker agrees that the submission of any Mortgage Loan Applications or Mortgage Loans to UWM after such amendment shall be Broker's agreement to the amendment without further signature or consent of any kind. Any such amendment *shall apply to pending, and/or future Mortgage Loan Applications* submitted by Broker. ECF No. 1-1, PageID.18 at § 7.08 (italics added).

§ 7.08's *limited* exception to § 7.01's requirement that any modification must be in a writing executed by both parties *applies only to amendments concerning Mortgage Loan Applications and Mortgage Loans submitted to UWM*, *not* to purported restrictions on AML's right to submit mortgage loans to other lenders. *Id.* In fact, § 7.08 cannot, as a matter of law, be read to permit UWM to make any amendment of any kind to the Original AML/UWM Agreement in its sole discretion because such a reading would completely negate § 7.01. Every word, phrase, and clause in a contract must be given effect, and a contract interpretation that would

14

render *any* part of the contract surplusage or nugatory must be avoided. *Woodington*

*v. Shokoohi*, 288 Mich.App. 352, 374; 792 N.W.2d 63 (2010) .

In any event, § 7.08, by its terms, applies only to pending and/or future Mortgage

Loan Applications submitted by AML to UWM. To read this § as *carte blanche*

authorization to allow UWM to unilaterally add any restriction it wishes upon

AML's general business practices stretches the bounds of reasonableness beyond

their breaking point. To the extent there is any ambiguity in the language of § 7.08,

summary judgment is not proper because Nevin and Lob have both averred that they

understood that UWM could *not* unilaterally make any change that impacted AML's

relationship with other mortgage lenders unless such change was agreed to in a

signed writing. Exhs. 1 at ¶ 16; 2 at ¶ 16.

Nevertheless, UWM contends that it could unilaterally add the Ultimatum

because it implemented this change as a new warranty that AML was purportedly

required to make with each loan it sent to UWM. UWM's position makes no sense

for two reasons: (1) UWM knew it required AML's consent in writing to this

amendment because it had continually sought AML's consent and never once

contemporaneously suggested that it could unilaterally implement this change. Exhs.

3; 4. After all, if UWM could do so, why bother to ask for AML's consent at all?;

and (2) Regardless of UWM's characterization, the Ultimatum is *not* similar to the

other representations and warranties provided by AML with each loan it submitted

to UWM. The Ultimatum does not apply to a particular loan being submitted to UWM at all but rather restricts AML's business relationships with *other* lenders. For example, other representations and warranties that *do* relate to the loan being submitted include promises by AML that: (i) it is licensed in the jurisdiction where the loan was originated ((ECF No. 54-2, PageID.25 at § 3.30(a)); (ii) all appraisals in connection with the submitted loan were performed by licensed appraisers (*Id.*, PageID.26 at § 3.30(e)), (iii) no legal actions are pending that might affect the submitted loan (*Id.* at § 3.03(g)); and (iv) all information submitted by AML regarding the loan is accurate (*Id.* at § 3.303(i)).

Second, Michigan law expressly prohibits UWM's Unsigned Amendment because UWM did not provide any additional consideration therefor. Mich. Comp. Laws Serv. § 566.1 ("§ 566.1") . Specifically, although § 566.1 permits amendments to contracts without additional consideration, an amendment made *without* additional consideration is valid *only* where the amendment is *memorialized in a signed writing*. § 566.1 states:

> An agreement hereafter made to change or modify … any contract … shall not be invalid because of the absence of consideration: Provided, That the agreement changing, modifying, or discharging such contract …. shall not be valid or binding *unless it shall be in writing and signed by the party against whom it is sought to enforce the change*, modification, or discharge. (emphasis added).

The Michigan Court of Appeals has held that § 566.1 applies to *all types* of contracts. *Adell Broad. Corp. v. Apex Media Sales, Inc.*, 269 Mich.App. 6, 10; 708

N.W.2d 778, 781 (2005) .

UWM does *not* contend that it provided any *additional* consideration for the Unsigned Amendment and clearly did not do so. To the extent UWM contends that its continued business relationship with AML amounts to sufficient consideration for an unsigned amendment, this would, at most, present a genuine issue of material fact because UWM's business relationship with AML already existed pursuant to the Original AML/UWM Agreement, and would have continued to exist regardless of the alleged Unsigned Amendment.

Third, the Unsigned Amendment itself clearly contemplates that it would *not* become effective unless and until it is executed by the Parties. Specifically, the Unsigned Amendment contains signature blocks for both parties and § 7.19 of the Unsigned Amendment acknowledges that it could be executed in counterparts or via electronic signature. ECF No. 1-2, PageID.39 (blank signature blocks), PageID.36 at § 7.19. But the Unsigned Amendment is not signed, electronically or otherwise. Tellingly, UWM cannot and does not contend that a signed copy of the Unsigned Amendment exists at all and has not produced such a document in this litigation.

**2. Even if the Unsigned Amendment was Somehow Valid, Which it was Not, AML Terminated this Agreement and Entered into a New Agreement with UWM which Did Not Include the Ultimatum.**

Even if this Court were to conclude that Unsigned Amendment was somehow valid when UWM claims it was unilaterally implemented in March 2021, AML's representatives have testified that AML terminated any such agreement within a month after AML's online renewal in June 2021. Exhs. 1 at ¶ 8; 2 at ¶ 8. Any subsequent agreement entered into by the parties after the termination did not include the Ultimatum because AML never agreed to the inclusion of the Ultimatum.

Michigan law is clear that

> *parties to a contract are free to mutually waive or modify their contract notwithstanding a written modification or anti-waiver clause because of the freedom to contract.* However, with or without restrictive amendment clauses, the principle of freedom to contract does not permit a party unilaterally to alter the original contract. Accordingly, mutuality is the centerpiece to waiving or modifying a contract, just as mutuality is the centerpiece to forming any contract.

*Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 364, 666 N.W.2d 251, 253 (2003) (emphasis added).

Here, AML has presented evidence that the parties mutually agreed to modify any alleged Ultimatum contained in the Unsigned Amendment. Specifically, within a month after AML's online renewal, AML informed UWM that it was cancelling and terminating its relationship with UWM. Exhs. 1 at ¶ 8; 2 at ¶ 8. Pursuant to § 7.06 of the Original AML/UWM Agreement (which is identical to § 7.06 of the

Unsigned Amendment), the agreement could be terminated immediately "if any warranty, representation or statement made by a party to this Agreement was false in any material respect when made or furnished." ECF No. 1-1, PageID.34 at § 7.06. Here, Nevin and Lob testified that UWM's representation that it would not enforce the Ultimatum was false, and therefore the agreement terminated immediately when AML informed UWM it was ending the relationship in June 2021. *Id*. AML agreed to enter into a new relationship with UWM only after receiving assurances from UWM that the new relationship would *not* include the Ultimatum. *Id*. Thus, even if the Unsigned Amendment had become effective, which it did not, AML terminated it and the subsequent relationship it entered into with UWM did *not* include the Ultimatum because the parties never agreed. *Quality Prods.*, 469 Mich. at 364.

### B. Because UWM Cannot Prove the Existence of Any Agreement with AML Containing the Ultimatum, It Cannot Demonstrate Any Breach.

As explained fully above, UWM has and cannot demonstrate the existence of any agreement with AML containing the Ultimatum or, at a minimum, there exist genuine issues of material fact as to the existence of such an agreement. Since the only breach alleged by UWM relates to an alleged breach of the Ultimatum provision, UWM cannot carry its burden to conclusively prove that any breach occurred at all.

### C. UWM Cannot Demonstrate the Existence of Any Damages

As a threshold matter, UWM concedes that it cannot demonstrate the existence of any actual damages, which it claims is the reason for its Liquidated Damages Provision. Because UWM's Liquidated Damages Provision is unenforceable as a matter of law, UWM cannot show the existence of any damages at all. At a minimum, there are genuine issues of material fact as to whether the Liquidated Provisions is enforceable since it is, in reality, an impermissible penalty provision.

Valid liquidated damages provisions represent agreed upon formulas between the parties. But the parties never negotiated nor agreed to the Liquidated Damages Provision UWM is seeking to enforce here. Exh. 1 at ¶ 15; 2 at ¶ 15.

Courts only enforce liquidated damages provisions when the court can see that the parties actually agreed upon a formula that to compute uncertain damages in case of breach. "A liquidated damages provision is simply an agreement by the parties fixing the amount of damages in the event of a breach and is enforceable *if the amount is reasonable with relation to the possible injury suffered and not unconscionable or excessive*." *St. Clair Med., P.C. v. Borgiel*, 270 Mich.App. 260, 270-271; 715 N.W.2d 914 (2006) (emphasis added).

The reasonableness of a liquidated damages clause "is a function, at least in part of the accuracy with which such stipulated damages approximate the actual damages incurred by the parting seeking enforcement of the liquidated damages provision."

*In Re Constr. Diversification, Inc.*, 36 B.R. 434, 436 (Bankr. E.D. Mich. 1983); *Papo v. Aglo Rests.*, 149 Mich.App. 285, 294; 386 N.W.2d 177 (1986). In making this comparison, it is not necessary for the court or the parties to estimate actual damages with certainty; however, the court must make some estimate from the available evidence to determine whether the liquidated damages clause was a *reasonable* approximation of actual damages. *Competition, Ltd. v. Mosier, Inc.*, 1987 U.S. Dist. LEXIS 15378 (W.D. Mich. Sep. 29. 1987); *Constr. Diversification*, 36 B.R. at 436.

As UWM tacitly acknowledges, its liquidated damages provision is really an unenforceable penalty provision, which is clear from the very evidence relied upon by UWM itself. Unlike genuine liquidated damages, a penalty is a sum inserted in a contract *not* as the measure of compensation for breach, but rather as a *punishment* for breach. *Edoff v. Hecht*, 270 Mich. 689, 697; 260 N.W. 93 (1935). Liquidated damages provisions that do not attempt to approximate actual damages in the event of a breach are penalties and unenforceable. *UAW-GM Human Res. Ctr. v KSL Rec. Corp.*, 228 Mich.App. 486, 508; 579 N.W.2d 411. "A liquidated damage clause is *void as a penalty* if it provides for an amount of damages that is *unreasonable* in light of the possible injury suffered in the event of a breach." *In re Exemplar Mfg. Co.*, 331 B.R. 704, 711-12 (Bankr. E.D. Mich. 2005) (emphasis added, internal citation omitted). UWM concedes it made no attempt to calculate its compensatory damages. ECF No. 54-2, PageID.1308.

21

Before accepting and enforcing a liquidated damages provision, the court must examine it and determine whether the "figure is really in the nature of an attempted computation of the actual damages likely to result, or whether it has the effect of exacting a penalty from the contract breaker." *Nichols v. Seaks*, 296 Mich. 154, 161; 295 N.W. 596 (1941). Use of the terms "liquidated" or "stipulated" damages does not prove that the clause is valid and not a penalty. *Id*. at 161-162.

The purported explanation of how UWM's "liquidated damages" provision came to be reveals its true nature – it is a penalty to punish brokers who do not "play ball" with UWM. After Ishbia's March 2021 announcement of the Ultimatum, UWM claimed to unilaterally amend its existing agreements to add the Ultimatum and the Liquidated Damages Provision that obligated a broker who breached the Ultimatum to pay liquidated damages of $5,000 per loan or a minimum of $50,000.

The liquidated damages provision was never discussed with AML before UWM purported to unilaterally add it via the Unsigned Amendment. Exh. 1 at ¶ 15; 2 at ¶ 15. Rather, UWM's upper management spun these figures from whole cloth after sitting in a room for a couple of hours. ECF No. 54-1, PageID.1172-1173. UWM's admission that the liquidated damages amount is nothing more than a number that UWM alone concocted to punish brokers at a minimum raises genuine issues of material fact as to whether the provision is in fact an unenforceable penalty.

Moreover, under UWM's view, AML must pay at least $50,000 regardless of the severity of the breach. Thus, a breach based on sending 1-10 loans to Rocket Pro equals a $50,000 penalty, with an additional $5,000 per additional loan thereafter. It is unclear why the damages for the first loan sent to Rocket Pro is ten times more severe than the damages for any loan after the tenth loan and UWM offers no explanation for this nonsensical incongruity. "[I]f a contract provides that breaches of different gravity shall be sanctioned with equal severity, it is highly likely that the sanction specified for the mildest breach is a penalty (that, or the sanctions for all the other possible breaches must be inadequate)." *XCO Int'l, Inc. v. Pac. Sci. Co.*, 369 F.3d 998, 1004 (7th Cir. 2004). Stated plainly, UWM sought to punish a one-loan violator with equal severity as a ten-loan violator, and this supports the conclusion that the alleged "liquidated damages" are nothing more than a thinly disguised and unenforceable penalty.

UWM contends that its liquidated damages are proper because its actual damages were difficult to ascertain. But UWM's representative could not explain what UWM's actual damages even were. ECF No. 54-1, Page ID.1168-1169. Liquidated damages *must* be reasonably related to the injuries *actually suffered. Roland v. Kenzie*, 11 Mich.App. 604, 611; 162 N.W.2d 97 (1968). Here, there are none.

Because the purpose of a liquidated damages clause is to compensate for loss, not to punish, such a provision is enforceable *only when a loss has been sustained*;

23

otherwise, a liquidated damages provision amounts to an unenforceable penalty. *Howarth v. Feeney*, 1992 R.I. Super. LEXIS 18, 1992 WL 813502 at*3 (R.I. Super. Jan. 15, 1992); Restatement (Second) of Contracts §356 cmt (e) ("If ... it is clear that no loss at all has occurred, a provision fixing a substantial sum as damages is unenforceable.").[5] UWM has failed to provide any evidence it sustained any actual loss (much less undisputed evidence), and therefore the liquidated damages provision it seeks to enforce is clearly an unenforceable penalty.

## IV.   AML Has Raised Defenses Which Preclude Summary Judgment.

AML has raised numerous defenses which, if proven, entirely defeat UWM's claim. Because UWM does not and could not claim that these defenses should be dismissed as a matter of law, summary judgment in UWM's favor is improper.

For example, UWM has unclean hands and is estopped from bringing its claim against AML because it has selectively enforced the Ultimatum against certain mortgage brokers and not others.[6] AML expressly sought discovery on this issue,

---

[5] It is also clear as a matter of law and logic that UWM could not prove that it suffered any actual damages as a result of any loan AML sent to Rocket Pro. UWM does not even attempt to prove that any loan that AML sent to Rocket Pro would otherwise have gone to UWM instead of any of the many other lenders who UWM concedes AML was free to deal with *even if the Ultimatum was enforceable*, which it was not.

[6] UWM has refused to produce any documents related to its enforcement and lack of enforcement of the Ultimation and Liquidated Damages Provision. ECF No. 54-2, PageID.1299-1301 (UWM's Obj. to AML Doc. Req. Nos. 11, 12, 15).

which UWM refused to provide and which will be the subject of an upcoming motion to compel. Even without such discovery, AML has adduced evidence that other mortgage brokers who have not been sued by UWM have in fact been conducting business with both Rocket and UWM *after* UWM allegedly implemented its Ultimatum. Exhs. 1 at ¶ 17; 2 at ¶ 17. As some examples, (1) Top Mortgage sent 43 loans to Rocket Pro and 170 loans to UWM during the same time period (Exh. 15); (2) Arboretum Mortgage sent 58 loans to Rocket Pro and 92 loans to UWM during the same time period (Exh. 16); and (3) Compass Lending sent 49 loans to Rocket Pro and 113 loans to UWM during the same time period (Exh. 17). None of these companies have faced any repercussions for violations of the Ultimatum.[7]

## CONCLUSION

AML respectfully requests that this Court DENY the Motion in its entirety.

Respectfully submitted,
MORGANROTH & MORGANROTH, PLLC
By: /s/ Jeffrey B. Morganroth
JEFFREY B. MORGANROTH (P41670)
JASON HIRSCH (P58034)
Attorneys for AML
344 North Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(248) 864-4000
jmorganroth@morganrothlaw.com
Dated: February 28, 2025       jhirsch@morganrothlaw.com

---

[7] UWM concedes that any information about its enforcement of the Ultimatum or Liquidated Damages Provision is "public record." ECF No. 54-3, PageID.1323-24.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED WHOLESALE
MORTGAGE, LLC,

     Plaintiff(s),

     v.

AMERICA'S MONEYLINE, INC.,

     Defendant(s).

Case No. 22-cv-10228
Honorable Laurie J. Michelson

## BRIEF FORMAT CERTIFICATION FORM

I, Jason R. Hirsch, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

☒ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

☒ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

☒ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

☒ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

26

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

/s/ Jason R. Hirsch
Dated: February 28, 2025