# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE, LLC, a Michigan Limited Liability Company,

      Plaintiff,

v.

AMERICA'S MONEYLINE, INC., MORTGAGE MONEYLINE, INC., SHAWN NEVIN and DEAN LOB,

      Defendants.

Case No. 22-cv-10228
Hon. Laurie J. Michelson

_____/

| | |
|---|---|
| WILLIAM E. McDONALD III (P76709) | JEFFREY B. MORGANROTH (P41670) |
| ROGER P. MEYERS (P73255) | JASON R. HIRSCH (P58034) |
| MAHDE Y. ABDALLAH (P80121) | MORGANROTH & MORGANROTH, PLLC |
| LANE MORRISON | Attorneys for Defendants |
| MOHEEB H. MURRAY (P63893) | 344 North Old Woodward Avenue, Suite 200 |
| BUSH SEYFERTH PLLC | Birmingham, Michigan 48009 |
| Attorneys for Plaintiff | (248) 864-4000 |
| 100 W. Big Beaver Road, Suite 400 | jmorganroth@morganrothlaw.com |
| Troy, Michigan 48084 | jhirsch@morganrothlaw.com |
| (248) 822-7800 | |
| mcdonald@bsplaw.com | DAVID A. ETTINGER (P26537) |
| meyers@bsplaw.com | Co-Counsel for Defendants |
| abdallah@bsplaw.com | HONIGMAN LLP |
| morrison@bsplaw.com | 660 Woodward Avenue, Suite 2290 |
| murray@bsplaw.com | Detroit, MI 48226 |
| | (313) 465-7368 |
| | DEttinger@honigman.com |

_____/

# DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT [ECF NO. 60] PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendants, by and through their attorneys, Morganroth & Morganroth, PLLC, hereby move to dismiss Plaintiff's First Amended Complaint [ECF No. 60] with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) based upon the facts, authority and arguments set forth in the accompanying Brief.

Counsel for Defendants certifies that Jason R. Hirsch communicated with Plaintiff's counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief requested in the instant Motion in accordance with Local Rule 7.1(a). Plaintiff's counsel did not provide concurrence.

WHEREFORE, Defendants respectfully request that this Court GRANT the Motion in its entirety and dismiss Plaintiff's First Amended Complaint with prejudice.

Respectfully submitted,

MORGANROTH & MORGANROTH, PLLC

By: /s/ Jeffrey B. Morganroth
JEFFREY B. MORGANROTH (P41670)
JASON HIRSCH (P58034)
Attorneys for Defendants
344 North Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(248) 864-4000
jmorganroth@morganrothlaw.com
Dated: April 9, 2025          jhirsch@morganrothlaw.com

1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE, LLC, a Michigan Limited Liability Company,

      Plaintiff,

v.

AMERICA'S MONEYLINE, INC., MORTGAGE MONEYLINE, INC., SHAWN NEVIN and DEAN LOB,

      Defendants.

Case No. 22-cv-10228
Hon. Laurie J. Michelson

_____/

| | |
|---|---|
| WILLIAM E. McDONALD III (P76709) | JEFFREY B. MORGANROTH (P41670) |
| ROGER P. MEYERS (P73255) | JASON R. HIRSCH (P58034) |
| MAHDE Y. ABDALLAH (P80121) | MORGANROTH & MORGANROTH, PLLC |
| LANE MORRISON | Attorneys for Defendants |
| MOHEEB H. MURRAY (P63893) | 344 North Old Woodward Avenue, Suite 200 |
| BUSH SEYFERTH PLLC | Birmingham, Michigan 48009 |
| Attorneys for Plaintiff | (248) 864-4000 |
| 100 W. Big Beaver Road, Suite 400 | jmorganroth@morganrothlaw.com |
| Troy, Michigan 48084 | jhirsch@morganrothlaw.com |
| (248) 822-7800 | |
| mcdonald@bsplaw.com | DAVID A. ETTINGER (P26537) |
| meyers@bsplaw.com | Co-Counsel for Defendants |
| abdallah@bsplaw.com | HONIGMAN LLP |
| morrison@bsplaw.com | 660 Woodward Avenue, Suite 2290 |
| murray@bsplaw.com | Detroit, MI 48226 |
| | (313) 465-7368 |
| | DEttinger@honigman.com |

_____/

# DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT [ECF NO. 60] PURSUANT TO FED. R. CIV. P. 12(b)(6)

# TABLE OF CONTENTS

**Page**

INDEX OF AUTHORITIES ............................................................... iii

STATEMENT OF ISSUES PRESENTED ........................................ vi

STATEMENT OF MOST CONTROLLING AUTHORITY ......................... viii

STATEMENT OF FACTS ................................................................1

ARGUMENT ...................................................................................4

I.   Standard of Review ...............................................................4

II.  UWM's Purported Claim for Declaratory Relief (Count IV) Is Not a
     Recognized Cause of Action ......................................................6

III. UWM Has Failed to State A Claim for Breach of Contract Upon Which
     Relief May Be Granted Because the Claim Relies Upon the 2021 Unsigned
     Amendment to the 2020 Wholesale Broker Agreement Which Is
     Unenforceable as a Matter of Law ...........................................7

   1.   An Unsigned Amendment to the 2020 Wholesale Broker Agreement
        is Prohibited by Section 7.01...............................................7

   2.   An Unsigned Amendment to the 2020 Wholesale Broker Agreement
        Without Additional Consideration is Prohibited by Michigan Law ...11

   3.   The Unsigned Amendment Makes Clear that It Only Becomes
        Effective When it is Executed By the Parties, Which It Never Was ..12

IV.  UWM Alleged Liquidated Damages are Nothing More than an
     Unenforceable Penalty Provision .............................................15

V.   Because UWM's Breach of Contract Claim Against AML Should Be
     Dismissed as a Matter of Law, UWM's Derivative Claims Against MML,
     Nevin and Lob (Counts II and III) Should Be Dismissed........................19

i

CONCLUSION......................................................................................20

CERTIFICATE OF SERVICE ...........................................................21

# INDEX OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Adell Broad. Corp. v. Apex Media Sales, Inc.*,
    269 Mich. App. 6; 708 N.W.2d 778 (2005) ...................................................11

*Ashcroft v. Iqbal,*
    556 U.S. 662; 129 S.Ct. 1937; 173 L.Ed.2d 868 (2009) ...............................5

*Association of Cleveland Fire Fighters v. City of Cleveland,*
    502 F.3d 545 (6th Cir. 2007) ..............................................................5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544;  127 S.Ct. 1955; 167 L.Ed.2d 929 (2007) ...............................5

*Carter v. Target Corp.*,
    541 Fed. App'x 413 (5th Cir. 2013) ............................................................13

*Cruz v. Capital One, N.A.*,
    192 F. Supp. 3d 832 (E.D. Mich. 2016) ........................................................6

*Curran v. Williams,*
    352 Mich. 278; 89 N.W.2d 602 (1958)) ................................................ 16, 18

*Davis v. United States*,
    499 F.3d 590 (6th Cir. 2007) ..........................................................6

*Devine Grp., Inc. v. Omni Hotels Corp.*,
    2019 U.S. Dist. LEXIS 111393 (S.D.Ohio July 3, 2019) ...........................14

*District Cablevision Ltd. P'shp v. Bassin*,
    828 A.2d 714 (D.C. 2003) ..........................................................19

*Dugan v. State Farm Mut. Auto. Ins. Co.,*
    845 F.Supp.2d 803 (E.D. Mich. 2012) ......................................................5, 13

iii

*Edoff v. Hecht*,
　　270 Mich. 689; 260 N.W. 93 (1935) ............................................................15

*Holland v. Trinity Health Care Corp.*,
　　287 Mich.App. 524; 791 N.W.2d 724 (2010) ...................................................8

*Howard Johnson Int'l, Inc. v. Patel*,
　　2001 U.S. Dist. LEXIS 3168 (E.D.N.Y. 2001) .............................................19

*In re Construction Diversification, Inc.*,
　　36 B.R. 434 (E.D. Mich. 1983) ....................................................................16

*In re Exemplar Mfg. Co.*,
　　331 B.R. 704 (E.D. Mich. 2005) ............................................................ 16, 18

*Jordache Enters., Inc. v. Global Union Bank*,
　　688 F. Supp. 939 (S.D.N.Y. 1988) ...............................................................19

*Leasing Serv. Corp. v. Justice*, 673 F.2d 70 (2d Cir. 1982) ...................................19

*Nichols v. Seaks*,
　　296 Mich. 154; 295 N.W. 596 (1941) ..........................................................16

*Reardon v. Kelly Servs.*,
　　210 F. App'x 456 (6th Cir. 2006) ...................................................................9

*Skelly Oil Co. v. Phillips Petroleum Co.*,
　　339 U.S. 667; 70 S. Ct. 876; 94 L. Ed. 1194 (1950)).....................................6

*St. Clair Med., P.C. v. Borgiel*,
　　270 Mich.App. 260; 715 N.W.2d 914 (2006) ...............................................17

*U.S. v. Swanson*,
　　618 F.Supp. 1231 (E.D. Mich. 1985) ...........................................................16

*UAW-GM Human Res. Ctr. v. KSL Recreation Corp.*,
　　228 Mich.App. 486; 579 N.W.2d 411 (1998) ...............................................16

*Woodington v. Shokoohi*,
    288 Mich.App. 352; 792 N.W.2d 63 (2010) ..................................................10

## **Other Authorities**              **Page(s)**

Mich. Comp. Laws Serv. § 566.1 ..................................................... 11, 15

## **Rules**              **Page(s)**

Rule 12(b)(6).................................................................................4

## <u>STATEMENT OF ISSUES PRESENTED</u>

I.     Whether Plaintiff, United Wholesale Mortgage, LLC's, purported claim for "Declaratory Relief" should be dismissed as a matter of law because declaratory relief is a remedy, not an independent cause of action.

     Defendants Answer:        Yes

     Plaintiff Answers:        No

II.     Whether Plaintiff, United Wholesale Mortgage, LLC, has failed to state a claim for which relief may be granted against Defendants where:

    A. The purported incomplete and unsigned amendment to the 2020 Wholesale Broker Agreement upon which Plaintiff bases its claim was never executed by the Parties at all; and

    B. The existing 2020 Wholesale Broker Agreement between the Parties may only be amended pursuant to a writing executed by the Parties.

     Defendants Answer:        Yes

     Plaintiff Answers:        No

III.     Whether Plaintiff, United Wholesale Mortgage, LLC, has failed to state a claim for which relief may be granted where its only alleged damage are "liquidated damages" which are really just a thinly disguised and unenforceable penalty provision.

     Defendants Answer:        Yes

     Plaintiff Answers:        No

IV.     Whether Plaintiff, United Wholesale Mortgage, LLC, derivative claims under the Michigan and California voidable transactions acts (Counts II and III) fail to state claims for which relief may be granted because they rise and fall with Plaintiff's claim for breach of contract, which should be dismissed as a matter of law.

Defendants Answer:          Yes

Plaintiff Answers:          No

## STATEMENT OF MOST CONTROLLING AUTHORITY

## **STATEMENT OF FACTS**

On February 3, 2022, Plaintiff, United Wholesale Mortgage, LLC ("UWM"), filed its Complaint against Defendant, America's Moneyline Inc. ("AML"), alleging a single claim of breach of contract against AML only. ECF No. 1. The Complaint was superseded and replaced in its entirety by Plaintiff's First Amended FAC (the "FAC") which UWM filed more than three years later on March 7, 2025. ECF No. 60.

The FAC is now the operative complaint in this matter. ECF No. 60. The FAC names AML, Mortgage Moneyline Inc. ("MML"), Shawn Nevin and Dean Lob ("Lob") as Defendants, and alleges the following claims against all Defendants: (1) breach of contract (Count I); (2) violation of Michigan's Uniform Voidable Transactions Act (Count II); (3) violation of California's Uniform Voidable Transactions Act (Count III); and (4) declaratory relief (Count IV). *Id*.

In its FAC, UWM alleges that it is a wholesale mortgage lender which works with correspondent lenders who UWM refers to as "Broker Partners." *Id*., PageID.1598 at ¶ 14. UWM alleges that its Broker Partners communicate directly with borrowers to originate mortgage loans. *Id*. at ¶ 15.

Specifically, UWM alleges that AML is an independent mortgage broker that entered into a Wholesale Broker Agreement with UWM in 2020 (the "2020 Wholesale Broker Agreement"). *Id*., PageID.1598-1599 at ¶¶ 18, 20. UWM

1

references the 2020 Wholesale Broker Agreement in its FAC. See e.g. *Id*., PageID.1599 at ¶ 20. UWM does *not* allege that the 2020 Wholesale Broker Agreement prohibited AML from submitting mortgage loans to any wholesale mortgage lender of AML's choice and confirms that AML had no obligation to submit any mortgage loans to UWM at all pursuant to the Wholesale Broker Agreement. See e.g., ECF No. 60, PagID.1599 at ¶ 23.

On March 4, 2021, UWM announced its "All-In Initiative" (the "Ultimatum"). *Id*., PageID.1608 at ¶ 58. As part of the Ultimatum, UWM announced that it had decided to end its business relationship with any Broker Partners who chose to continue originating loans with two specific retail lenders (Rocket Mortgage and Fairway Independent Mortgage ("Fairway")), who are major direct competitors of UWM in the wholesale mortgage market. *Id*., PageID.1601-1602 at ¶¶ 29, 31

UWM alleges that AML somehow accepted the Ultimatum unilaterally imposed upon it by UWM by way of submitting mortgage loans to UWM as AML had always done. *Id*., PageID.1602-1603 at ¶¶ 33, 35. UWM further alleges that, in June 2021, AML "reviewed UWM's yearly Agreement renewal package, which contained the All-In Addendum, and approved the renewal through UWM's online broker-facing portal." *Id*., PageID.1603 at ¶ 36.

UWM alleges that the amended terms UWM unilaterally imposed were incorporated into a new agreement, which was not signed by AML at all (the

"Unsigned Amendment to the 2020 Wholesale Broker Agreement"). ECF No. 60, PageID.1601-1602 at ¶¶ 29-30. UWM alleges that, pursuant to the "All-In" provision, which is present only in the Unsigned Amendment to the 2020 Wholesale Broker Agreement, AML somehow agreed that it would not submit loans to Rocket Mortgage and Fairway, UWM's major direct competitors in the wholesale mortgage market. ECF No. 60, PageID.1601-1602 at ¶ 30. UWM alleges that the submission of loans to its major direct competitors (Rocket Mortgage and Fairway) would constitute a breach of the Unsigned Amendment to the 2020 Wholesale Broker Agreement and thereby subject AML to onerous "liquidated damages," which are, in reality, a penalty imposed upon AML which has no connection to any actual damages suffered by UWM (because there are none). *Id.*, PageID.1602 at ¶¶ 31-32.

UWM alleges that AML submitted "at least 559 mortgage loans" to UWM's excluded direct competitors, which UWM alleges is a breach of the Unsigned Amendment to the 2020 Wholesale Broker Agreement. *Id.*, PageID.1604 at ¶ 42.

UWM also alleges that AML's principals, Nevin and Lob, formed a new entity, MML, in order "to shield AML from being held accountable" for the breach of contract alleged by UWM. ECF No. 60, PageID.1604 at ¶ 44. UWM contends that, in the event it obtains a judgment against AML that it is unable to collect, UWM should then be permitted to collect such judgment against MML, Nevin and Lob directly. *Id.*, PageID.1609, 1612 at ¶¶ 60, 83

Because UWM's breach of contract claim in its FAC is based solely upon AML's alleged breach of the Unsigned Amendment to the 2020 Wholesale Broker Agreement, UWM's FAC should be dismissed with prejudice as a matter of law because the Unsigned Amendment to the 2020 Wholesale Broker Agreement which UWM claims was breached [ECF No. 60-2] was never completed nor executed by the Parties and therefore is unenforceable on its face. All of UWM's other claims are predicated upon its breach of contract claim, and therefore these other claims should likewise be dismissed if UWM's breach of contract claim is dismissed, which it should be. In addition, UWM's purported claim for declaratory relief is not a recognized cause of action at all and therefore it should be dismissed as a matter of law.

## ARGUMENT

### I.    Standard of Review.

A motion brought pursuant to Rule 12(b)(6)  for failure to state a claim upon which relief may be granted tests the legal sufficiency of a plaintiff's claims. "In deciding a motion under Rule 12(b)(6), the court must construe the complaint in favor of the plaintiff, accept the factual allegations as true, and determine whether the allegations present plausible claims … The pleading must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Dugan v. State Farm Mut. Auto. Ins. Co.,* 845 F.Supp.2d 803, 805

(E.D. Mich. 2012) , citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556;  127 S.Ct. 1955; 167 L.Ed.2d 929 (2007) .'"Factual allegations must be enough to raise a right to relief above the speculative level[.]'" *Association of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) , citing *Twombly,* 550 U.S. at 544 .

"The court should first identify any conclusory allegations and bare assertions that are not entitled to an assumption of truth, then consider the factual allegations that are entitled to a presumption of truth and determine if they plausibly suggest entitlement to relief." *Dugan,* 845 F. Supp. 2d at 805 , citing *Ashcroft v. Iqbal,* 556 U.S. 662, 684; 129 S.Ct. 1937; 173 L.Ed.2d 868 (2009) . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678 . The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (internal quotation marks and citation omitted).

Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."

*Id.* (internal citation omitted). If the factual allegations are not "enough to raise a right to relief above the speculative level," the court should grant the motion. *Twombly*, 550 U.S. at 555.

## II.      UWM's Purported Claim for Declaratory Relief (Count IV) Is Not a Recognized Cause of Action.

UWM alleges a claim for "Declaratory Relief Against All Defendants" as Count IV of its FAC. ECF No. 60, PageID.1611. But "declaratory relief" is not a cause of action at all. The Declaratory Judgment Act, 28 U.S.C. § 2201, does *not* provide an independent cause of action. *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671; 70 S. Ct. 876; 94 L. Ed. 1194 (1950)). A declaratory judgment is a *remedy*, not an independent claim. See, e.g., *Cruz v. Capital One, N.A.*, 192 F. Supp. 3d 832, 838 (E.D. Mich. 2016). Indeed, in its general "Prayer for Relief," UWM requests the very same declaratory relief as it purports to request in Count IV. ECF No. 60, PageID.1613 at ¶¶ D, E.

Therefore, UWM's purported independent claim for declaratory relief (Count IV) should be dismissed on its face because it is *not* an independent cause of action as a matter of law.

### III.   UWM Has Failed to State A Claim for Breach of Contract Upon Which Relief May Be Granted Because the Claim Relies Upon the 2021 Unsigned Amendment to the 2020 Wholesale Broker Agreement Which Is Unenforceable as a Matter of Law.

UWM's single claim for breach of contract is premised upon its allegation that the Unsigned Amendment to the 2020 Wholesale Broker Agreement, which UWM alleges is an "amendment" to the 2020 Wholesale Broker Agreement, is enforceable. For the reasons set forth below, the purported "amendment" is not enforceable as a matter of law.[1]

### 1.   An Unsigned Amendment to the 2020 Wholesale Broker Agreement is Prohibited by Section 7.01.

An unsigned amendment is prohibited by Section 7.01 of the 2020 Wholesale Broker Agreement. Specifically, Section 7.01 of the 2020 Wholesale Broker Agreement states:

> **7.01. Amendment of Agreement**. Except as set forth on [sic] Section 7.08, this Agreement may *not* be amended except *in writing executed by authorized representatives of both Broker and UWM*. ECF No. 60-1, PageId.1621 at § 7.01 (italics and footnote added).

Thus, pursuant to Section 7.01 of the 2020 Wholesale Broker Agreement, an "amendment" of the 2020 Wholesale Broker Agreement is itself valid *if and only if*

---

[1] Defendants acknowledge this Court's opinion in *United Wholesale Mortgage, LLC v. Madison Atrinia LLC d/b/a District Lending*, Case No. 23-13176 (ECF No. 23), wherein this Court rejected similar arguments based upon a similar agreement and an alleged amendment thereto between UWM and a different independent mortgage broker. Defendants continue to believe in the merits of these arguments and raise these issues in this case in order to preserve the record in this case.

it is "in writing executed by authorized representatives of both Broker [AML] and UWM." ECF No. 60-1, PageID.1621 at § 7.01. Clear and unambiguous contract language must be enforced as written. *Holland v. Trinity Health Care Corp.*, 287 Mich.App. 524, 527; 791 N.W.2d 724 (2010) .

The purported "amendment" to the 2020 Wholesale Broker Agreement attached by UWM as Exhibit B to its FAC is undisputedly *not* signed by either Party and UWM does not even *allege* that the purported "amendment" was ever signed. ECF No. 60-2, PageID.1644 (Unsigned Amendment to the 2020 Wholesale Broker Agreement); ECF No. 60, PageID.1603 at ¶ 36 (UWM vaguely alleges that the AML agreed to the Ultimatum by approving a renewal with UWM "through UWM's online broker-facing portal."). Thus, because UWM does not even allege that AML ever agreed to the purported "amendment" in a signed writing, as required by the clear and unambiguous terms of Section 7.01 of the 2020 Wholesale Broker Agreement, and the document attached to the FAC by UWM which purports to be the "amendment" is undisputedly not signed, the purported "amendment" is unenforceable and could not have modified the 2020 Wholesale Broker Agreement. ECF No. 60-1, PageID.1621 at § 7.01.

Tellingly, in its FAC, UWM disingenuously fails to mention Section 7.01 at all and instead only mentions Section 7.08. ECF No. 60, PageID.1600, ¶ 26. But it is well settled under Michigan law that

8

[a] court must consider the entirety of the contractual text whenever construing any portion of a contract. *Wilkie [v. Auto-Owners Ins. Co.]*, 664 N.W.2d [776,] 781 n.11 ("We read contracts as a whole, giving harmonious effect, if possible, to each word and phrase.") (citing *Singer v. Goff*, 334 Mich. 163, 54 N.W.2d 290, 292 (Mich. 1952)); *Allstate Ins. Co. v. Tomaszewski*, 180 Mich. App. 616, 447 N.W.2d 849, 850 (Mich. Ct. App. 1989)("[T]he contract must be read and interpreted as a whole."). An interpretation derived from a reading of the contract as a whole is preferred to an interpretation taken from a reading of a single provision in isolation. See *Turner v. Bituminous Cas. Co.*, 397 Mich. 406, 244 N.W.2d 873, 896 (Mich. 1976) ("[T]he literal sense of certain words should not interfere with interpretation of the contract as a whole."); *Staebler-Kempf Oil Co. v. Mac's Auto Mart, Inc.*, 329 Mich. 351, 45 N.W.2d 316, 318 (Mich. 1951) ("The meaning of any particular part of an instrument can only be found by an examination of the whole."); see also 5A Stephen Lease, Mich. Civ. Jur. Contracts § 150 (2002) ("[I]n construing the contract as a whole, the court takes into consideration, reconciles, and gives meaning to all of its parts or clauses as far as possible, including recitals as well as operative clauses. When considered in this manner, language that has a distinct meaning standing alone may, in the connection used, become doubtful, or its meaning modified by other parts of the instrument …") (footnotes omitted).

*Reardon v. Kelly Servs.*, 210 F. App'x 456, 459-460 (6th Cir. 2006).

But Section 7.08 does not support UWM's position that it could unilaterally alter any provision of the 2020 Wholesale Broker Agreement, and UWM's purported reading of Section 7.08 would completely and impermissibly nullify Section 7.01. Section 7.08 of the 2019 Wholesale Broker Agreement, upon which UWM relies, states:

> **7.08. UWM Amendments & Website.** This Agreement, and *UWM's policies, procedures, requirements and instructions concerning Mortgage Loan Applications and Mortgage Loans*, including but not limited to those contained in the UWM Guide, may be amended by

> UWM from time to time, and UWM will endeavor to provide broker
> with prompt notice thereof, which may occur by posting any such
> amendments on UWM's website, which Broker is required to regularly
> check and monitor as a condition of this Agreement. Broker agrees that
> the submission of any Mortgage Loan Applications or Mortgage Loans
> to UWM after such amendment shall be Broker's agreement to the
> amendment without further signature or consent of any kind. Any such
> amendment *shall apply to pending, and/or future Mortgage Loan
> Applications* submitted by Broker. ECF No. 60-1, PageID.1622 at
> § 7.08 (italics added).

Thus, Section 7.08's *limited* exception to Section 7.01's requirement that any

modification to the 2020 Wholesale Broker Agreement must be in a writing executed

by both parties *applies only to amendments concerning Mortgage Loan Applications

and Mortgage Loans submitted to UWM*, *not* the general terms of the agreement

between UWM and AML. *Id*. In fact, Section 7.08 cannot, as a matter of law, be

read to apply to all amendments to the 2020 Wholesale Broker Agreement because

every word, phrase, and clause in a contract must be given effect, and a contract

interpretation that would render *any* part of the contract surplusage or nugatory must

be avoided. *Woodington v. Shokoohi*, 288 Mich.App. 352, 374; 792 N.W.2d 63

(2010) . Applying Section 7.08 to *every* type of amendment to the 2019 Wholesale

Broker Agreement would completely gut Section 7.01 and render Section 7.01 as

mere surplusage, which would be a legally impermissible reading of the 2020

Wholesale Broker Agreement.

**2. An Unsigned Amendment to the 2020 Wholesale Broker Agreement Without Additional Consideration is Prohibited by Michigan Law.**

No additional consideration was provided for the purported "amendment" of the 2020 Wholesale Broker Agreement and therefore it is void as a matter of law pursuant to Mich. Comp. Laws Serv. § 566.1 . Specifically, although Mich. Comp. Laws Serv. § 566.1   permits amendments to contracts without additional consideration,[2] an amendment made *without* additional consideration is valid *only* where the amendment is *memorialized in a signed writing*. Mich. Comp. Laws Serv. § 566.1  states:

> An agreement hereafter made to change or modify, or to discharge in whole or in part, any contract, obligation, or lease, or any mortgage or other security interest in personal or real property, shall not be invalid because of the absence of consideration: Provided, That the agreement changing, modifying, or discharging such contract, obligation, lease, mortgage or security interest shall not be valid or binding *unless it shall be in writing and signed by the party against whom it is sought to enforce the change*, modification, or discharge. (emphasis added).

The Michigan Court of Appeals has held that Section 566.1 applies to *all types* of contracts. In *Adell Broad. Corp. v. Apex Media Sales, Inc.*, 269 Mich. App. 6, 10; 708 N.W.2d 778, 781 (2005) , the Michigan Court of Appeals held:

> Defendants argue that MCL 566.1  only applies to contracts involving real or personal property. *We disagree*. It is a common grammatical rule of construction that *a modifying clause will be construed to modify only the last antecedent* unless some language in the statute requires a

---

[2] UWM does *not* allege that it provided any additional consideration for the purported "amendment" and clearly did not do so because the parties were already performing in accord with the terms of the 2020 Wholesale Broker Agreement.

different interpretation. MCL 566.1 addresses the amendment, modification, or discharge of several different legal documents, the last of which is "any mortgage or other security interest in personal or real property." The phrase "in personal or real property" grammatically modifies "mortgage or other security interest." *It would be contrary to the plain meaning of the statute and rules of statutory construction to read the modifying phrase "in personal or real property" to modify "any contract, obligation or lease."* (emphasis added, internal citation omitted).

### 3. The Unsigned Amendment Makes Clear that It Only Becomes Effective When it is Executed By the Parties, Which It Never Was.

The Unsigned Amendment to the 2020 Wholesale Broker Agreement clearly contemplates that it does *not* become effective unless and until it is executed by the Parties. Specifically, the Unsigned Amendment to the 2020 Wholesale Broker Agreement contains signature blocks for both Parties and Section 7.19 of the Unsigned Amendment to the 2020 Wholesale Broker Agreement acknowledges that it could be executed in counterparts or via electronic signature. ECF No. 60-2, PageID.1644 (blank signature blocks), PageID.1641 at § 7.19. But the Unsigned Amendment to the 2020 Wholesale Broker Agreement is not signed at all, electronically or otherwise.

Tellingly, UWM cannot and does not even allege that it has a signed copy of the Unsigned Amendment to the 2020 Wholesale Broker Agreement. Instead, UWM merely vaguely alleges that AML "reviewed UWM's yearly Agreement renewal package, which contained the [Ultimatum], and approved the renewal through UWM's online broker-facing portal." ECF No. 60, PageID.1603 at ¶ 36. But

12

UWM's only citation to any document purportedly including the Ultimatum is a citation to the *Unsigned Amendment to the 2020 Wholesale Broker Agreement* which does not indicate that AML agreed to at all. ECF No. 60, PageID.1601-1602 at ¶¶ 29, 30; ECF No. 60-2. This Court is not required to accept the plaintiff's allegations as true where, as here, they are *contradicted* by a document attached to the FAC. See e.g., *Carter v. Target Corp.*, 541 Fed. App'x 413, 417 (5th Cir. 2013)  (refusing to accept as true factual allegations that were contradicted by the plaintiff's EEOC charging documents, which the defendant had attached to its motion to dismiss).

Here, UWM's bald, conclusory allegation that AML somehow "agreed" to the 2021 Unsigned Amendment to the 2020 Wholesale Broker Agreement as a complete and total replacement for the 2020 Wholesale Broker Agreement merely by submitting loans (which were submitted under the terms of the existing 2020 Wholesale Broker Agreement), or by purportedly agreeing to a yearly *renewal* which was never signed at all, is entirely implausible as a matter of law. *Dugan*, 845 F.Supp.2d at 805  (allegations must, at a minimum, present legally plausible claims); ECF No. 60, PageID.1600 at ¶ 25. Indeed, such an assertion is entirely belied by the Unsigned Amendment to the 2020 Wholesale Broker Agreement, which UWM attaches to its FAC (ECF No. 60-2), and which, on its face, confirms that the Unsigned Amendment to the 2020 Wholesale Broker Agreement was never signed by the Parties even though it expressly contemplates execution by way of the Parties

affixing their authorized signatures. ECF No. 60-2, PageID.1644 (blank signature block), PageID.1641 at § 7.19 (identifying the acceptable methods for executing the Unsigned Amendment to the 2020 Wholesale Broker Agreement).

In any event, a renewal would merely continue the relationship under the existing terms of the 2020 Wholesale Broker Agreement and cannot be used as a method to insert entirely new substantive terms into an existing agreement. In *Devine Grp., Inc. v. Omni Hotels Corp.*, 2019 U.S. Dist. LEXIS 111393, at *13 n.14 (S.D. Ohio July 3, 2019), the United States District Court for the Southern District of Ohio, relying upon the Oxford English Dictionary, held that

> A "renewal" is defined as "[t]he action of renewing or re-establishing something"; for example, "the action of extending the period of validity of a lease, licence, etc.".

This definition simply does not encompass the addition of entirely new terms under the guise of a "renewal" of an existing agreement. Therefore, any purported online "renewal" by AML could only be understood as a renewal of the 2020 Wholesale Broker Agreement which does *not* include the Ultimatum or Liquidated Damages Provision.

The unsigned "amendment" is void because: (1) it does not comply with Section 7.01 of the 2020 Wholesale Broker Agreement; (2) UWM never provided any additional consideration for the purported "amendment" which is required pursuant to Mich. Comp. Laws Serv. § 566.1 ; and (3) the Unsigned Amendment to the 2020

Wholesale Broker Agreement on its face confirms that it is not effective unless and until it is signed by the Parties. Because the Unsigned Amendment to the 2020 Wholesale Broker Agreement is not signed, UWM's claim for breach of the Unsigned Amendment to the 2020 Wholesale Broker Agreement fails as a matter of law and should be dismissed with prejudice.

## IV.   UWM Alleged Liquidated Damages are Nothing More than an Unenforceable Penalty Provision.

Even assuming that the Unsigned Amendment is somehow enforceable, which it is not, the Liquidated Damages Provision, which represents UWM only claim of damages, is, on its face, nothing more than an unenforceable penalty provision. Because UWM has not and could not claim any actual damages, and the Liquidated Damages Provision is unenforceable, UWM cannot show the existence of *any damages* which is a requisite element of a claim for breach of contract. As a result, UWM's claim for breach of contract should be dismissed as a matter of law.

Unlike a true liquidated damages provision, a penalty is a sum inserted in a contract *not* as the measure of compensation for breach, but rather as a *punishment* for breach. *Edoff v. Hecht*, 270 Mich. 689, 697; 260 N.W. 93 (1935). Liquidated damages provisions that do not attempt to approximate actual damages in the event of a breach are *penalties* and therefore unenforceable. *UAW-GM Human Res. Ctr. v. KSL Recreation Corp.*, 228 Mich.App. 486, 508; 579 N.W.2d 411 (1998). "A liquidated damage clause is void as a penalty if it provides for an amount of damages

that is unreasonable in light of the possible injury suffered in the event of a breach." *In re Exemplar Mfg. Co.*, 331 B.R. 704, 711-712 (E.D. Mich. 2005) (citing *Curran v. Williams*, 352 Mich. 278; 89 N.W.2d 602, 604 (1958)).

Before accepting and enforcing a liquidated damages provision, the court must examine the provision and determine whether the "figure is really in the nature of an attempted computation of the actual damages likely to result, or whether it has the effect of exacting a penalty from the contract breaker." *Nichols v. Seaks*, 296 Mich. 154, 161; 295 N.W. 596 (1941). Use of the terms "liquidated" or "stipulated" damages does not mean that the clause is valid and not a penalty. *Nichols*, 296 Mich. at 161-162. Liquidated amount must be a reasonable pre-estimate of actual damages. *In re Exemplar Mfg. Co.*, 331 B.R. at 711-712.

Whether a liquidated damages provision is unconscionable or an unenforceable penalty is a matter of law to be determined by the court in light of all the circumstances. *U.S. v. Swanson*, 618 F.Supp. 1231, 1243 (E.D. Mich. 1985) (applying New York law); *In re Construction Diversification, Inc.*, 36 B.R. 434, 436 (E.D. Mich. 1983) (applying Michigan law).

For UWM's liquidated damages provision to be enforceable, UWM must show its actual damages at the time of time contracting "were uncertain and difficult to ascertain or are of a purely speculative nature." *St. Clair Med., P.C. v. Borgiel*, 270 Mich.App. 260, 271; 715 N.W.2d 914 (2006). UWM, however, cannot meet its

burden because it does not even allege that had any actual damages at all. Specifically, UWM alleges only damages computed based on its alleged liquidated damages provision (559 loans x $5,000/loan = $2,795,000 are UWM's *only* alleged damages). ECF No. 60, PageID.1613 at ¶ B.

Furthermore, the $5,000 per loan liquidated damages amount (for each loan over 10) cannot be an approximate estimate of damages as a matter of law because UWM concedes that AML would not owe any amount to UWM if AML closed any given loan with a lender *other than* Rocket or Fairway. ECF No. 60, PageID.1601-1602 at ¶ 28 (AML was only precluded from originating loans with "Select Retail Lenders"), ¶ 30 (only the submission of a loan to one of the "Select Retail Lenders" constitutes a breach subject to liquidated damages). Simply put, UWM has confirmed that its purported liquidated damages are not and could not be any approximation of actual damages, because UWM admits it has no actual damages when AML originates a loan with anyone other than Rocket or Fairway. In both situations, AML would be closing a loan with someone other than UWM, but in one case (AML using Rocket Mortgage or Fairway), UWM claims it has $50,000 in damages for a single loan, but in the other case (when AML uses any lender other than Rocket Mortgage or Fairway), UWM concedes that it suffers no damages at all.

Liquidated damages provisions are not enforceable where, as here, "it is obvious from the contract … that the principle of compensation has been disregarded."

17

*Curran v. Williams*, 352 Mich. 278, 284; 89 N.W.2d 602 (1958). "The violation, or disregard of this principle of compensation, may appear to the court in various ways, --from the contract, the sum mentioned, and the subject matter." *Id*. See also *Exemplar Mfg.*, 331 B.R. at 718 (where a party "did not intend for that payment amount to be *just* compensation for actual damages it was likely to sustain," it has violated the just compensation principle. (emphasis added)).

Here, it is clear that the alleged liquidated damages provision violates the principle of compensation because it purports to award $50,000 for a single loan sent to Rocket Mortgage or Fairway, but only an additional $5,000 for loans above the first 10 sent to Rocket Mortgage or Fairway.[3] ECF No. 60-2, PageID.1643-1644, § 7.30.

Finally, where, as here, "there is a disparity of bargaining power and one party unilaterally imposes a liquidated damages provision in an adhesion contract, the skepticism (bordering, it has been suggested, on outright hostility) shown by the common law to liquidated damages is at its height." *District Cablevision Ltd. P'shp v. Bassin*, 828 A.2d 714, 724 (D.C. 2003); *Howard Johnson Int'l, Inc. v. Patel*, 2001 U.S. Dist. LEXIS 3168 (E.D.N.Y. 2001); *Jordache Enters., Inc. v. Global Union*

---

[3] In other words, UWM's utterly improper purported liquidated damages provision actually incentivizes an allegedly breaching broker to send loans 2 through 10 to Rocket Mortgage or Fairway, because the penalty remains the same for these additional loans as the penalty for sending a single loan to Rocket Mortgage or Fairway.

*Bank*, 688 F. Supp. 939, 944 (S.D.N.Y. 1988); *Leasing Serv. Corp. v. Justice*, 673

F.2d 70, 73 (2d Cir. 1982).

Here, UWM's FAC confirms that the liquidated damages provision was never

negotiated or discussed with AML before UWM tried to insert it. Specifically, UWM

alleges that it announced the Ultimatum on March 4, 2021. ECF No. 60,

PageID.1601 at ¶ 28. UWM alleges that it unilaterally amended certain terms of the

wholesale broker agreements in order to implement the Ultimatum and Liquidated

Damages Provision. *Id*. at ¶ 29. UWM alleges that AML was bound to the

Liquidated Damages Provision by submitting loans to UWM. ECF No. 60,

PageID.1603 at ¶ 35. Thus, UWM concedes there was no negotiation as to the

inclusion or amount of the Liquidated Damages Provision and it is therefore

unenforceable as a matter of law.

### V. Because UWM's Breach of Contract Claim Against AML Should Be Dismissed as a Matter of Law, UWM's Derivative Claims Against MML, Nevin and Lob (Counts II and III) Should Be Dismissed.

UWM has brought claims against MML, Nevin and Lob under the Michigan

Voidable Transactions Act (Count II) and the California Voidable Transactions

Act (Count III) based upon the alleged alter ego relationship between MML,

Nevin and Lob, and AML. Because each of these claims is necessarily derivative

of UWM's breach of contract claim (*i.e.*, there can be no fraudulent transfer of

AML's assets which prejudiced UWM if AML is not liable to UWM for breach

19

of contract at all), these derivative claims necessarily rise and fall with UWM's breach of contract claim, which should be dismissed for the reasons stated *supra*. Therefore, if UWM's breach of contract claim is dismissed, its other claims should be dismissed as well as a matter of law.

## **CONCLUSION**

For all of the foregoing reasons, AML respectfully requests that this Court GRANT the instant Motion and dismiss the FAC with prejudice.

Respectfully submitted,

MORGANROTH & MORGANROTH, PLLC

By: /s/ Jeffrey B. Morganroth
JEFFREY B. MORGANROTH (P41670)
JASON HIRSCH (P58034)
Attorneys for Defendant
344 North Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(248) 864-4000
jmorganroth@morganrothlaw.com
Dated:  April 9, 2025          jhirsch@morganrothlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 9, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification of such filing to all counsel of record.

MORGANROTH & MORGANROTH, PLLC

By: /s/ Jason R. Hirsch
JEFFREY B. MORGANROTH (P41670)
JASON HIRSCH (P58034)
Attorneys for Defendant
344 N. Old Woodward Ave., Suite 200
Birmingham, MI 48009
(248) 864-4000
Email: jhirsch@morganrothlaw.com

21

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED WHOLESALE
MORTGAGE, LLC,

     Plaintiff(s),

     v.

AMERICA'S MONEYLINE, INC.,

     Defendant(s).

Case No. 22-cv-10228
Honorable Laurie J. Michelson

---

## BRIEF FORMAT CERTIFICATION FORM

I, Jason R. Hirsch, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

☒ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

☒ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

☒ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

☒ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

22

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

/s/ Jason R. Hirsch
Dated: April 9, 2025